

**RECEIVED**
JM
8/3/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

DEMETRIS HILL,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

Civil Action No. _____

1:26-cv-9237
Judge Lindsay C. Jenkins
Magistrate Judge Gabriel A. Fuentes
Random/ Cat 1

**COMPLAINT**

Plaintiff, Demetris Hill ("Plaintiff"), appearing pro se, for his Complaint against Defendant, the United States of America, alleges as follows:

1

## TABLE OF CONTENTS

I. NATURE OF THE ACTION..................................................................................................5

II. JURISDICTION AND VENUE..........................................................................................6

III. PARTIES............................................................................................................................9

IV. ADMINISTRATIVE EXHAUSTION...............................................................................10

V. FACTUAL ALLEGATIONS..............................................................................................11

    A. Plaintiff's Disability History and Initial Disability Determinations.................................11

    B. Administration of Plaintiff's Disability Claim.................................................................11

    C. Reinstatement of Plaintiff's Disability Benefits...............................................................12

    D. Plaintiff's Underlying Criminal Case and the Reliability of the Evidence Underlying the September 18, 2025 Reversal...............................................................................................13

COUNT I — NEGLIGENCE..................................................................................................15

    *Negligent Performance of Operational Benefit Administration*

COUNT II — NEGLIGENCE.................................................................................................20

    *Negligent Interagency Coordination and Benefit Implementation*

COUNT III — NEGLIGENCE................................................................................................25

    *Negligent Operational Evidentiary Development and Document Verification*

COUNT IV — NEGLIGENCE................................................................................................33

    *Negligent Implementation of Administrative Determinations*

COUNT V — NEGLIGENCE.................................................................................................37

    *Negligent Operational Accounting and Financial Administration*

COUNT VI — NEGLIGENCE...............................................................................................41

    *Negligent Operational Preservation, Management, and Handling of Administrative Evidence*

VII. STATUTORY EXCEPTIONS TO FTCA LIABILITY DO NOT APPLY................................46

    A. The Discretionary-Function Exception Does Not Apply..................................................46

    B. The Misrepresentation Exception Does Not Apply..........................................................47

VIII. DAMAGES......................................................................................................................48

    A. Past Economic Damages...................................................................................................48

    B. Future Economic Damages................................................................................................49

    C. Medical Damages..............................................................................................................49

    D. Non-Economic Damages...................................................................................................49

    E. Continuing and Consequential Damages..........................................................................50

    F. Proximate Cause...............................................................................................................50

    G. Causal Nexus Between Each Count and Plaintiff's Damages..........................................50

    H. No Double Recovery; Scope of Damages........................................................................52

IX. PRAYER FOR RELIEF....................................................................................................52

X. CERTIFICATE OF SERVICE...........................................................................................53

XI. EXHIBIT INDEX..............................................................................................................54

XII. APPENDIX.......................................................................................................................59

EXHIBIT A — RAILROAD RETIREMENT BOARD ADMINISTRATIVE RECORDS (Excerpted from the Certified Administrative Record, AR A016–A024, A027–A053).........................66

2

**EXHIBIT B — STANDARD FORM 95 ADMINISTRATIVE CLAIM AND RAILROAD RETIREMENT BOARD FINAL DENIAL LETTER (Cover Letter, Continuation Sheets, and SF-95 Form, Dec. 13, 2025; Final Denial Letter, Mar. 4, 2026)**............................................................**103**

**EXHIBIT C — OFFICE OF GENERAL COUNSEL FOIA PRODUCTION (Sub-Exhibits C-1 through C-22)**......................................................................................................................**112**

**EXHIBIT D — ADMINISTRATIVE RECORD EXCERPTS, HEARING TRANSCRIPTS, HEARING OFFICER DECISIONS, BOARD DECISIONS, AND APPEAL DOCUMENTS CONCERNING ADMINISTRATION OF PLAINTIFF'S DISABILITY CLAIM (confirmed in the certified companion Administrative Record, AR A001–A300; cited by pin cite rather than duplicated as a separate appendix)**........................................................................................**N/A**

**EXHIBIT E — MEDICAL RECORDS, DISABILITY EVALUATIONS, CONSULTATIVE EXAMINATIONS, AND RELATED MEDICAL EVIDENCE (confirmed in the certified companion Administrative Record, AR A035–A036, A037–A043; cited by pin cite rather than duplicated as a separate appendix)**......................................................................**N/A**

**EXHIBIT F — RAILROAD RETIREMENT BOARD ACCOUNTING AND RESTITUTION-RECOVERY RECORDS (November 13, 2024 Reinstatement Letter, "Janice Epstein for Sherita Boots," AR A161–A162 (Ex. 12))**......................................................................................**136**

**EXHIBIT G — SOCIAL SECURITY ADMINISTRATION RECORDS (Detailed Earnings Statement, secure.ssa.gov, Work Years 1985–2025; and April 2013 Hill/Barto Email Correspondence)**..............................................................................................................**139**

**EXHIBIT H — SUPPORTING EVIDENCE OF DAMAGES (Sub-Exhibits H-1 through H-9)**.....**145**

**EXHIBIT I — UNITED STATES V. HILL, ELEVENTH CIRCUIT OPINION AFFIRMING CONVICTIONS (No. 23-10289, 119 F.4th 862 (11th Cir. Oct. 4, 2024))**.............................................**166**

# TABLE OF AUTHORITIES

**Cases**

*Bell v. Hutsell, 2011 IL 110724*..................................................................................................16, 21, 38, 42

*Berkovitz v. United States, 486 U.S. 531 (1988)*.......................................................................21, 26, 34, 47

*Block v. Neal, 460 U.S. 289 (1983)*........................................................................................................ 47, 48

*Boyd v. Travelers Ins. Co., 166 Ill. 2d 188, 652 N.E.2d 267 (1995)*.........................................................43

*Broudy v. Mather, 460 F.3d 106 (D.C. Cir. 2006)*......................................................................................8

*Dardeen v. Kuehling, 213 Ill. 2d 329, 336, 821 N.E.2d 227 (2004)*.........................................................43

*Heckler v. Ringer, 466 U.S. 602 (1984)*......................................................................................................8

*Indian Towing Co. v. United States, 350 U.S. 61 (1955)*..........................................................................16

*Jones v. United States, 727 F.3d 844 (8th Cir. 2013)*.................................................................................7

*Jude v. Commissioner of Social Security, 908 F.3d 152 (6th Cir. 2018)*..................................................27

*Marshall v. Burger King Corp., 222 Ill. 2d 422, 436, 856 N.E.2d 1048 (2006)*...............................21, 34

*Overton v. United States, 619 F.2d 1299 (8th Cir. 1980)*..........................................................................52

*Palay v. United States, 349 F.3d 418 (7th Cir. 2003)*..............................................................21, 34, 38, 42

*Roman Cancel v. United States, 598 F. Supp. 2d 227 (D.P.R. 2008)*.........................................................8

*United States v. Alan Childs, No. 5:25-cr-00013-MTT-CHW (M.D. Ga. Sept. 15, 2025)…14, 30, 31, 64*

*United States v. Gaubert, 499 U.S. 315 (1991)*.........................................................................................47

*United States v. Hill, 119 F.4th 862 (11th Cir. 2024)*........................................................13, 14, 31, 58, 63

*United States v. Neustadt, 366 U.S. 696 (1961)*........................................................................................47

*United States v. Olson, 546 U.S. 43 (2005)*...............................................................................................17

*Wakulich v. Mraz, 203 Ill. 2d 223, 241 (2003)*.......................................................................16, 21, 38, 42

*Watson v. United States, 865 F.3d 123 (2d Cir. 2017)*..............................................................................27

*Weinberger v. Salfi, 422 U.S. 749 (1975)*...................................................................................................8

**Statutes**

18 U.S.C. § 287...................................................................................................................................13, 58

18 U.S.C. § 641...................................................................................................................................13, 58

28 U.S.C. § 1346(b)(1)................................5, 6, 9, 10, 15, 16, 17, 20, 22, 25, 27, 33, 34, 37, 38, 41, 43

28 U.S.C. §§ 2671–2680...................................................................................5, 7, 15, 20, 25, 33, 37, 41

28 U.S.C. § 1402(b)..................................................................................................................................9

28 U.S.C. § 1920.....................................................................................................................................53

28 U.S.C. § 1961.....................................................................................................................................53

28 U.S.C. § 2401(b)......................................................................................................................... 6, 9, 11

28 U.S.C. § 2674.........................................................................................................................5, 6, 9, 10, 16

28 U.S.C. § 2675(a)..................................................................................................................6, 9, 10, 55, 63

28 U.S.C. § 2675(b)......................................................................................................20, 25, 33, 37, 41, 46, 52

28 U.S.C. § 2680.....................................................................................................................................46

28 U.S.C. § 2680(a)...........................................................................................................................46, 47

28 U.S.C. § 2680(h)...........................................................................................................................47, 48

45 U.S.C. § 231 et seq...............................................................................................................................8

45 U.S.C. § 231g.....................................................................................7, 14, 16, 20, 25, 34, 37, 42

45 U.S.C. § 355(f)................................................................................5, 7, 14, 16, 20, 25, 34, 37, 42

**Regulations**

4

20 C.F.R. §§ 220.170–.171.................................................................................................26
32 C.F.R. § 750.33(c)........................................................................................................52
**Administrative Materials**
U.S. Railroad Retirement Bd., Disability Claims Manual pt. 7, § 7.3.1.....................................29, 30, 32
U.S. Railroad Retirement Bd., Disability Claims Manual pt. 10, § 10.6.2(C).................................30, 31
**Other Authorities**
Restatement (Second) of Torts § 323...........................................................................16, 21, 26, 38, 42

## I. NATURE OF THE ACTION

1.   This is a civil action against the United States of America brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1) and 2671–2680. Plaintiff seeks compensatory damages for injuries proximately caused by the negligent operational acts and omissions of employees of the Railroad Retirement Board ("RRB"), acting within the course and scope of their federal employment, during the administration of Plaintiff's disability claim and the performance of related operational functions.

2.   This action is separate and distinct from Plaintiff's pending Petition for Review before the United States Court of Appeals for the Seventh Circuit pursuant to 45 U.S.C. § 355(f). Plaintiff does not seek judicial review, reversal, or modification of the Railroad Retirement Board's final administrative decision in this proceeding. Instead, Plaintiff seeks damages arising from independent tortious conduct actionable under the FTCA, with liability determined in accordance with the law of the State of Illinois, as required by 28 U.S.C. § 1346(b)(1). See 28 U.S.C. §§ 1346(b)(1), 2674.

3.   Plaintiff's claims arise from the negligent performance of operational functions, including the investigation and administration of his disability claim, the maintenance and use of official agency records, benefit administration, financial accounting, interagency communications, and supervision of personnel responsible for administering Plaintiff's disability claim. The supporting factual allegations are set forth in the Statement of Facts and incorporated by reference into the Counts below.

4.   Plaintiff alleges that Railroad Retirement Board employees failed to exercise the ordinary care required in performing these operational responsibilities. Those failures foreseeably resulted in administrative errors in the processing of Plaintiff's disability claim and other

negligent conduct that directly and proximately caused substantial injury to Plaintiff, for which the United States is liable in the same manner and to the same extent as a private person under like circumstances. See 28 U.S.C. § 2674.

5. As a direct and foreseeable consequence of these negligent acts and omissions, Plaintiff sustained interruption of Medicare coverage, denial and delay of necessary medical care, substantial out-of-pocket medical expenses, financial hardship, emotional distress, and other compensable damages recoverable under the Federal Tort Claims Act — independent of, and exclusive of, the value of the disability-annuity benefits themselves, which are not sought as damages in this action and are instead the subject of Plaintiff's pending Petition for Review, Hill v. Railroad Retirement Board, No. 26-2060 (7th Cir.).

6. Plaintiff timely presented his administrative tort claim to the Railroad Retirement Board by submitting a Standard Form 95 and supporting documentation in accordance with 28 U.S.C. § 2675(a). The agency issued a final written denial of that claim, thereby satisfying the administrative exhaustion requirement of 28 U.S.C. § 2675(a). This action has been timely commenced within the limitations period prescribed by 28 U.S.C. § 2401(b).

7. Plaintiff therefore seeks judgment against the United States of America for compensatory damages authorized by the Federal Tort Claims Act, together with costs recoverable by law and such other relief as this Court deems just and proper.

## II. JURISDICTION AND VENUE

8. This Court has exclusive subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1346(b)(1), which confers jurisdiction upon the United States district courts over civil actions seeking money damages against the United States for personal injury or loss of property caused by the negligent or wrongful acts or omissions of federal employees acting within the course and scope of their employment under circumstances in which a private person would be liable under the law of the place where the act or omission occurred.

9. Plaintiff's claims are brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680. At all times relevant to this Complaint, the employees whose conduct is alleged herein were employees of the United States acting within the course and scope of their federal employment with the Railroad Retirement Board.

10. The claims asserted in this Complaint are ordinary tort claims for money damages arising from the negligent operational, administrative, and evidentiary conduct of Railroad Retirement Board personnel. They are not, and do not require this Court to adjudicate, a challenge to the correctness, adequacy, or evidentiary sufficiency of any Railroad Retirement Board entitlement determination, including the September 18, 2025 Hearing Officer decision or the March 24, 2026 Board Order No. 2026-28 affirming it. Plaintiff does not ask this Court to decide whether he is, or was, entitled to a disability annuity, does not ask the Court to determine whether Plaintiff engaged in substantial gainful activity, and does not seek reinstatement, recalculation, or reversal of any Railroad Retirement Board benefits decision—relief that lies, if at all, exclusively through the Petition for Review Plaintiff has separately and timely filed with the United States Court of Appeals for the Seventh Circuit pursuant to 45 U.S.C. §§ 231g, 355(f). See supra ¶ 2. Rather, Plaintiff seeks damages for Defendant's independent, non-discretionary failures—in the operational administration, interagency coordination, ministerial implementation, financial accounting, evidentiary development, and preservation of administrative evidence pleaded in Counts I through VI—that are actionable regardless of, and without requiring this Court to determine, whether the underlying substantial-gainful-activity finding was ultimately correct. Each Count identifies a specific ministerial or operational failure that would give rise to liability whichever way the Seventh Circuit resolves the pending Petition for Review, because the duty alleged in each Count is independent of, and does not depend on the outcome of, the merits question there presented. See infra ¶¶ 44, 56, 68, 80, 92, 104 (per-count no-merits-review stipulations). Plaintiff is aware that the Eighth Circuit rejected a materially similar attempt to recast a benefits-withholding dispute as ordinary negligence in Jones v. United States, 727 F.3d 844 (8th Cir. 2013), where the court held that, because the agency had not conceded any error in the underlying benefits decision, "resolving [the] case require[d] the district court to evaluate that decision," id. at 846–47, and dismissed for lack of subject-matter jurisdiction. Jones is distinguishable and does not control here for two independent reasons. First, Jones's plaintiff alleged that the agency's withholding decision was itself wrong—the negligence theory was inseparable from, and could only be proven by disproving, the correctness of the benefits determination. By contrast, each Count here alleges a free-standing procedural, recordkeeping, coordination,

implementation, evidentiary-development, or accounting failure—e.g., the failure to reconcile the twice-confirmed $58,529 accrual against the reversal (Count V), and the omission of the Medicare-eligibility records and related correspondence from the certified Administrative Record (Count VI)—that would constitute a breach of Defendant's operational duties irrespective of whether the September 18, 2025 substantial-gainful-activity finding is ultimately upheld or set aside by the Seventh Circuit. Second, unlike the plaintiff in Jones, Plaintiff does not ask this Court to find that Defendant's benefits determination was substantively incorrect as a predicate for any Count; Plaintiff instead accepts, for purposes of this action only, that the correctness of that determination is a question committed exclusively to the Seventh Circuit, and pleads each Count so that liability can be resolved without disturbing or duplicating that determination. Because the Railroad Retirement Act does not supply either the standing or the substantive basis for the duties alleged in Counts I through VI—Plaintiff's standing to sue rests on ordinary tort principles of duty and injury, not on any right created by 45 U.S.C. § 231 et seq., and the substantive content of each duty derives from generally applicable recordkeeping, coordination, and accounting obligations rather than from the SGA/entitlement determination itself—Plaintiff's claims do not "aris[e] under" the Railroad Retirement Act within the meaning of Weinberger v. Salfi, 422 U.S. 749, 760–61 (1975), and are not "inextricably intertwined" with, nor "at bottom," a claim for benefits within the meaning of Heckler v. Ringer, 466 U.S. 602, 614 (1984). Because these claims can be resolved using ordinary negligence principles—duty, breach, causation, and damages—"without reviewing the [Board's] factual or legal determinations upon which it based its benefits decision," Roman Cancel v. United States, 598 F. Supp. 2d 227, 232 (D.P.R. 2008), and do not require the Court to "second-guess" the Board's substantive eligibility conclusion, id.; Broudy v. Mather, 460 F.3d 106, 114 (D.C. Cir. 2006), the Railroad Retirement Act's exclusive review scheme does not divest this Court of subject-matter jurisdiction over Plaintiff's claims.

11. Plaintiff satisfied the administrative exhaustion requirement of 28 U.S.C. § 2675(a) by timely presenting an administrative tort claim to the Railroad Retirement Board through a Standard Form 95 and supporting documentation. The Railroad Retirement Board issued

8

its final written denial on March 4, 2026. This action was commenced within the limitations period prescribed by 28 U.S.C. § 2401(b).

12. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1402(b) because a substantial portion of the operational acts and omissions giving rise to Plaintiff's claims occurred within this District. The Railroad Retirement Board's headquarters, Office of General Counsel, Bureau of Hearings and Appeals, and other administrative offices responsible for the investigation, administration, review, and supervision of Plaintiff's disability claim are located in Chicago, Illinois.

13. The operational acts and omissions alleged in this Complaint include the investigation and administration of Plaintiff's disability claim, maintenance of official agency records, benefit administration, financial accounting, interagency communications, and supervision of personnel performing those functions within this District. These allegations establish a sufficient nexus between Defendant's conduct and this judicial district to support venue under 28 U.S.C. § 1402(b).

## III. PARTIES

14. Plaintiff, Demetris Hill, is a natural person and citizen of the State of Georgia. Plaintiff is the claimant whose disability claim and related benefit proceedings, administered by the Railroad Retirement Board, are the subject of this action, and Plaintiff was the recipient of disability benefits affected by the negligent acts and omissions alleged herein.

15. Defendant, United States of America, is the only proper defendant in this action pursuant to the Federal Tort Claims Act. See 28 U.S.C. §§ 1346(b)(1), 2674, 2679(a). Plaintiff asserts no Federal Tort Claims Act claim against the Railroad Retirement Board or any federal employee in an individual capacity.

16. At all times relevant to this Complaint, the Railroad Retirement Board was an agency of the United States. The Railroad Retirement Board employees whose conduct is alleged herein were acting within the course and scope of their federal employment while performing the operational duties at issue in this action.

17. The acts and omissions alleged in this Complaint were committed by Railroad Retirement Board employees acting within the course and scope of their federal employment while

performing operational responsibilities relating to the investigation and administration of Plaintiff's disability claim, maintenance of official agency records, benefit administration, financial accounting, interagency communications, and supervision of personnel responsible for those functions.

18. Pursuant to 28 U.S.C. §§ 1346(b)(1) and 2674, the United States is liable, to the extent provided by the Federal Tort Claims Act, for the negligent acts and omissions of its employees acting within the course and scope of their federal employment under circumstances in which a private person would be liable under the law of the State of Illinois.

## IV. ADMINISTRATIVE EXHAUSTION

19. Plaintiff has fully complied with the administrative exhaustion requirements of the Federal Tort Claims Act as a prerequisite to maintaining this action. See 28 U.S.C. § 2675(a).

20. On or about December 13, 2025, Plaintiff timely presented an administrative tort claim to the Railroad Retirement Board by submitting a completed Standard Form 95 together with supporting documentation identifying the factual basis of the claim and demanding a sum certain in accordance with the Federal Tort Claims Act and its implementing regulations.

21. During the administrative review process, Plaintiff supplemented his claim with additional documentary evidence and supporting materials for the Railroad Retirement Board's consideration prior to the agency's final disposition.

22. On March 4, 2026, the Railroad Retirement Board issued its final written denial of Plaintiff's administrative tort claim. The denial constituted a final agency disposition within the meaning of 28 U.S.C. § 2675(a), thereby authorizing Plaintiff to commence this civil action.

23. Plaintiff commenced this action within six months after the mailing of the Railroad Retirement Board's final written denial, rendering this action timely under 28 U.S.C. § 2401(b).

24. Accordingly, Plaintiff has satisfied all jurisdictional prerequisites required to maintain this action against the United States under the Federal Tort Claims Act.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's Disability History and Initial Disability Determinations

25. Plaintiff is a former railroad employee who became unable to perform substantial gainful employment after developing severe physical and mental impairments, including a total colectomy with chronic fecal incontinence, bipolar disorder, diabetes mellitus with neuropathy, musculoskeletal impairments, and other chronic medical conditions documented throughout the administrative record and supporting medical evidence. (AR at A035–A036 (Oct. 14, 2024 statement of Dr. Dwayne L. Clay, orthopedic); AR at A037– A043 (Oct. 14, 2024 QTC psychiatric evaluation of Dr. Dwight A. Owens).)

26. Plaintiff applied for disability benefits under the Railroad Retirement Act. After reviewing Plaintiff's medical evidence and vocational information, the Railroad Retirement Board determined that Plaintiff satisfied the statutory requirements for a railroad disability annuity and awarded disability benefits effective in accordance with its administrative findings.

27. The Railroad Retirement Board further determined that Plaintiff qualified for a disability freeze and Medicare entitlement associated with his disability status. In reaching those determinations, the agency concluded that Plaintiff met the applicable disability standards and was not engaged in substantial gainful activity during the relevant period.

28. Following those determinations, Plaintiff reasonably relied upon the Railroad Retirement Board's official decisions by obtaining continuing medical treatment, maintaining his financial affairs, and depending upon the continued payment of disability benefits and related Medicare coverage.

### B. Administration of Plaintiff's Disability Claim

29. Following the initial award of disability benefits, Plaintiff's claim remained under the continuing administration of the Railroad Retirement Board for more than a decade. During that period, the agency remained responsible for administering Plaintiff's disability annuity, maintaining his official records, processing benefit payments, and evaluating matters affecting his continuing entitlement.

11

30. As part of its operational responsibilities, Railroad Retirement Board employees communicated with the Social Security Administration concerning benefit coordination, processed payment and accounting matters, maintained Plaintiff's administrative records, issued official correspondence, and performed other ministerial and administrative functions necessary to administer Plaintiff's disability claim.

31. Plaintiff reasonably relied upon the Railroad Retirement Board to perform those operational duties with ordinary care and in accordance with applicable statutes, regulations, established agency procedures, and accepted standards governing the administration of federal disability benefits.

32. As set forth more fully below, Plaintiff alleges that Railroad Retirement Board employees failed to exercise ordinary care in performing those operational functions, including the investigation, administration, accounting, record maintenance, interagency communications, and supervision associated with Plaintiff's disability claim.

**C. Reinstatement of Plaintiff's Disability Benefits**

33. On November 13, 2024, the Railroad Retirement Board notified Plaintiff that he remained entitled to disability benefits. On December 26, 2024, the agency further confirmed Plaintiff's reinstatement through official correspondence issued by its Office of Public Affairs. (AR at A044–A045, A159–A160 (Ex. 11) (Nov. 12–13, 2024 Disability Decision Rationale, Form G-325.1, signed by Disability Examiner Janice Epstein, countersigned by Kevin Rodevich); AR at A161–A162 (Ex. 12) (Nov. 13, 2024 Continuing Disability Review Decision letter, "Janice Epstein for Sherita Boots").)

34. On January 22, 2025, the Railroad Retirement Board issued a formal reinstatement notice restoring Plaintiff's disability benefits. Thereafter, on March 26, 2025, the agency's Reconsideration Section confirmed that the reinstated award was correct and calculated a substantial retroactive accrual of disability benefits for Plaintiff. (AR at A047, A189 (partial duplicates of the reinstatement record).)

35. Agency records reflected that approximately $58,529 in accrued disability benefits had been calculated and processed in connection with Plaintiff's reinstated award, further confirming the Railroad Retirement Board's determination that Plaintiff remained entitled

12

to disability benefits during the relevant period. (AR at A044–A045, A159–A160, A161–A162.)

35A. Defendant's own operational records further reflect that Medicare cards were issued to Plaintiff on October 1, 2024, and February 4, 2025 — the latter retroactively effective June 1, 2013 — during the same period Defendant's disability-benefit determinations reflected Plaintiff's validly reinstated status, and before the September 18, 2025 reversal of that reinstatement described below. These Medicare-eligibility records, and their relationship to the September 18, 2025 reversal, are addressed further in Counts II, IV, and VI below.

36. Plaintiff reasonably relied upon the Railroad Retirement Board's reinstatement decisions and related official communications as authoritative agency determinations confirming his continuing entitlement to disability benefits. Plaintiff alleges that the subsequent reversal of those determinations, together with the operational negligence described throughout this Complaint, directly resulted in the injuries and damages for which recovery is sought under the Federal Tort Claims Act.

**D. Plaintiff's Underlying Criminal Case and the Reliability of the Evidence Underlying the September 18, 2025 Reversal**

37. Plaintiff was tried before a jury — not convicted upon a guilty plea — in United States v. Hill, No. 5:21-cr-00043-TES-CHW (M.D. Ga.). Following a jury trial held October 17–19, 2022, the jury convicted Plaintiff of Theft of Government Property, 18 U.S.C. § 641, and False Claims Against the Government, 18 U.S.C. § 287, and acquitted him of Wire Fraud. Plaintiff was sentenced to 33 months' imprisonment, later reduced to 27 months following a limited remand, and ordered to pay $184,712 in restitution and a $10,000 fine. Plaintiff's convictions were affirmed by the Eleventh Circuit in United States v. Hill, 119 F.4th 862 (11th Cir. 2024). (Ex. I).

38. The Eleventh Circuit's opinion affirming Plaintiff's convictions identified, among the evidence supporting the jury's verdict, "the $125,000 income that [Plaintiff] declared to Morris Bank—far more than the RRB earnings cap of $11,875 for 2019—and his representation that he would use 'business income' to repay a $106,250 personal loan that he applied for." Hill, 119 F.4th 862 (11th Cir. 2024). This same loan-application evidence, and the substantial-gainful-activity determination derived from it, formed the basis on

13

which Defendant's Hearing Officer relied on September 18, 2025 in finding that Plaintiff engaged in substantial gainful activity beginning August 2016 and reversing Plaintiff's disability reinstatement. (Ex. D (A.R. A006–A007, A010; see also AR at A061–A064, A085–A101)); Ex. I).

39.  The Morris Bank loan application was prepared by Alan Childs, then the Market President of Morris Bank's Gray, Georgia branch, who personally handled Plaintiff's loan application. Childs was subsequently criminally charged and convicted of bank fraud conspiracy arising from loan applications he personally handled, in United States v. Alan Childs, No. 5:25-cr-00013-MTT-CHW (M.D. Ga.), Judgment entered September 15, 2025. (Ex. I).

40.  On information and belief, Defendant did not, before issuing its September 18, 2025 decision or before the Board's March 24, 2026 Order No. 2026-28 affirming that decision, investigate, verify, or otherwise account for the reliability of the loan-application evidence prepared by Childs, notwithstanding that Childs' subsequent criminal prosecution for bank fraud presented information that warranted reasonable investigation or verification before Defendant relied upon that evidence in taking administrative action. Plaintiff does not allege in this Complaint, and no Count herein requires the Court to determine, that the loan-application evidence discussed above was in fact unreliable, that the Hearing Officer's or the Board's substantive reliance upon it was improper, or that the Eleventh Circuit's affirmance of Plaintiff's underlying criminal convictions in United States v. Hill, 119 F.4th 862 (11th Cir. 2024), was incorrectly decided; those substantive questions are committed exclusively to the United States Court of Appeals for the Seventh Circuit under 45 U.S.C. §§ 231g, 355(f), and are the subject of Plaintiff's pending Petition for Review, No. 26-2060. See supra ¶ 10. Rather, as alleged further in Count III below, Plaintiff's claims rest on Defendant's failure to perform operational evidentiary-verification procedures required by Defendant's own practices or otherwise required by the exercise of ordinary care before relying on third-party financial records in taking administrative action — a failure that would constitute a breach of Defendant's operational duties regardless of whether the underlying substantial-gainful-activity finding, or Plaintiff's criminal convictions, are ultimately correct.

14

41. Defendant's own records separately mischaracterize the nature of Plaintiff's criminal case. A letter to Plaintiff from Railroad Retirement Board Reconsideration Specialist Kenneth Claxton states that Plaintiff "pleaded guilty" to Theft of Government Property and False Claims Against the Government "on June 19, 2023" — a materially inaccurate characterization, since Plaintiff was convicted by jury verdict returned October 19, 2022, following a trial, and entered no guilty plea. A separate Defendant communication dated November 13, 2024 similarly states that Plaintiff was "found guilty" on "January 19, 2023," a date that corresponds to neither the actual verdict date nor the sentencing date. (AR at A025–A026 (Mar. 26, 2025 Reconsideration Section letter, signed by Kenneth Claxton; this page range falls within the certified companion Administrative Record but is not among the pages excerpted and physically attached as Exhibit A, see Exhibit Index, and is accordingly cited here by AR pin cite only)).

42. These recordkeeping errors, concerning the very criminal proceeding Defendant cites as a basis for reversing Plaintiff's disability benefits, illustrate the broader pattern of negligent record maintenance and evidentiary verification alleged throughout this Complaint and are further addressed in Count III below.

**COUNT I**

**NEGLIGENT PERFORMANCE OF OPERATIONAL BENEFIT ADMINISTRATION**

*Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671–2680*

*Illinois Common Law*

43. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

44. This Count seeks recovery solely for Defendant's negligent performance of operational benefit-administration and recordkeeping functions. Consistent with ¶ 10 above, Plaintiff does not ask this Court to determine whether the Railroad Retirement Board's September 18, 2025 substantial-gainful-activity finding, or the Board's March 24, 2026 Order No. 2026-28 affirming that finding, was substantively correct, adequately supported, or properly decided; that question is committed exclusively to the United States Court of Appeals for the Seventh Circuit under 45 U.S.C. §§ 231g, 355(f) and is the subject of Plaintiff's pending Petition for Review, No. 26-2060. Rather, this Count challenges only

15

Defendant's failure to collect, verify, reconcile, and maintain accurate benefit-administration and accounting records, independent of the substantive correctness of any benefits determination those records concerned, a failure that would constitute a breach of Defendant's operational duties regardless of whether the underlying benefits determination is ultimately upheld or set aside. Plaintiff does not seek review of the merits of the Railroad Retirement Board's administrative decision under the Federal Tort Claims Act.

45. At all relevant times, Defendant, through its employees, undertook to investigate, evaluate, administer, calculate, coordinate, record, implement, and communicate matters affecting Plaintiff's Railroad Retirement disability annuity, Medicare entitlement, accrued benefits, payment records, and related interagency benefit administration.

46. By undertaking those services, Defendant assumed a duty under Illinois law to exercise reasonable care in performing them because Defendant knew or reasonably should have known that Plaintiff depended upon the accurate administration of those services for his income, medical coverage, access to treatment, financial stability, and overall health. See *Bell v. Hutsell*, 2011 IL 110724, ¶¶ 11–12 (duty limited to extent of undertaking; no duty found on the facts presented); *Wakulich v. Mraz*, 203 Ill. 2d 223, 241 (2003); Restatement (Second) of Torts § 323.

47. The services undertaken by Defendant are comparable to those performed by private disability insurers, benefit administrators, claims processors, accounting services, and entities responsible for maintaining and implementing benefit determinations. Under Illinois law, such entities owe a duty to exercise ordinary and reasonable care in performing those operational functions. Accordingly, the United States is liable under the Federal Tort Claims Act in the same manner and to the same extent as a private person under like circumstances. 28 U.S.C. §§ 1346(b)(1), 2674; *Indian Towing Co. v. United States*, 350 U.S. 61 (1955); *United States v. Olson*, 546 U.S. 43 (2005). Such private entities — including third-party disability-claims administrators and private long-term-disability insurers that administer employee benefit plans — are routinely held to an ordinary-care standard under Illinois law for the operational administration of claims once undertaken, supplying the private-person analogue required under 28 U.S.C. § 1346(b)(1).

16

48. Defendant breached that duty by negligently performing the operational services it voluntarily undertook, including, but not limited to:

    a. failing to collect, verify, reconcile, and maintain materially accurate records concerning Plaintiff's earnings, disability status, work activity, benefit entitlement, and continuing eligibility before implementing actions affecting his disability benefits;

    b. failing to reconcile agency records reflecting Plaintiff's reinstated disability status, favorable medical evidence, benefit calculations, and earnings information with later operational actions terminating those same benefits;

    c. failing to accurately administer, document, account for, and credit accrued disability benefits after determining that Plaintiff remained entitled to disability benefits and calculating accrued payments;

    d. failing to maintain accurate accounting records concerning the transfer and application of accrued disability benefits toward Plaintiff's restitution obligation after recognizing internal deficiencies in those accounting records;

    e. failing to exercise reasonable care while coordinating disability benefits, offsets, overpayments, Medicare entitlement, and payment administration with the Social Security Administration and the Department of Justice;

    f. failing to preserve, reconcile, and utilize material information contained within Defendant's own administrative records before implementing operational actions affecting Plaintiff's benefits;

    g. maintaining and communicating materially inaccurate, incomplete, or misleading information concerning Plaintiff's earnings history, criminal proceedings, disability entitlement, and benefit status after Defendant knew or reasonably should have known that such information could adversely affect Plaintiff;

    h. negligently administering Plaintiff's Medicare-related entitlement and associated benefit records, resulting in interruption of medical coverage and denial of medically necessary treatment;

    i.    failing to employ reasonable quality-control procedures before implementing actions that materially affected Plaintiff's disability income, accrued benefits, Medicare coverage, restitution accounting, and related financial interests;

    j.    failing to timely identify, investigate, correct, and communicate known administrative errors after Defendant became aware, or reasonably should have become aware, that those errors affected Plaintiff's legal rights and financial interests;

    k.    failing to implement operational safeguards reasonably necessary to ensure the accuracy, completeness, consistency, and reliability of Plaintiff's disability administration records; and

    l.    otherwise failing to exercise the degree of care that a reasonably prudent private benefit administrator, disability insurer, or claims processor would have exercised under substantially similar circumstances; and

    m.    on information and belief, failing to reconcile the discrepancy between the November 13, 2024 reinstatement determination and the Railroad Retirement Board's Office of Public Affairs correspondence of December 26, 2024 confirming that reinstatement, on the one hand, and the subsequent September 18, 2025 Hearing Officer decision reversing that same determination on the other, notwithstanding that both determinations were based on substantially the same underlying administrative record (Ex. A; Ex. D (A.R. A006–A007, A010)).

49. Each of the foregoing breaches arose from the negligent performance of operational and ministerial responsibilities undertaken by Defendant after assuming responsibility for administering Plaintiff's disability claim and related benefits.

50. Defendant knew or reasonably should have foreseen that inaccurate administration of Plaintiff's disability claim would likely result in interruption of disability income, loss of Medicare coverage, denial of medical treatment, inaccurate accounting of accrued benefits, financial hardship, emotional distress, and deterioration of Plaintiff's physical and mental health.

51. Defendant's negligent performance of those operational responsibilities directly and proximately caused Plaintiff's injuries. Had Defendant exercised reasonable care in

18

maintaining accurate records, verifying material information, implementing its own benefit determinations, coordinating with other federal agencies, and accurately administering Plaintiff's benefits, Plaintiff's disability annuity would not have been interrupted without the record verification and reconciliation Defendant's own procedures required, his Medicare coverage would not have been disrupted, accrued disability benefits would have been properly administered and credited, and the injuries alleged in this Complaint would have been substantially avoided.

52. As a direct and proximate result of Defendant's negligence, Plaintiff sustained substantial damages, including:

    a. administrative burden, delay, and related costs of navigating the interruption of disability-annuity benefits;

    b. interruption and loss of Medicare coverage;

    c. denial or delay of medically necessary healthcare and prescription benefits;

    d. out-of-pocket medical expenses and related healthcare costs;

    e. aggravation of existing physical and psychological conditions;

    f. emotional distress, mental anguish, anxiety, and loss of emotional well-being;

    g. financial losses arising from inaccurate benefit administration and accounting;

    h. damage associated with inaccurate restitution accounting and delayed crediting of funds;

    i. damage to Plaintiff's financial condition and creditworthiness;

    j. expenses incurred investigating, correcting, and responding to Defendant's negligent administration; and

    k. additional compensatory damages established through discovery and proven at trial.

53. The injuries sustained by Plaintiff were the natural, probable, and foreseeable consequence of Defendant's negligent performance of operational services undertaken for the administration of Plaintiff's disability benefits.

54. Pursuant to the Federal Tort Claims Act, Defendant United States of America is liable for all compensatory damages proximately caused by the negligent acts and omissions of its employees acting within the course and scope of their federal employment.

**WHEREFORE**

Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant United States of America for compensatory damages in an amount to be determined at trial, not exceeding the sum certain presented in Plaintiff's administrative claim except as permitted by 28 U.S.C. § 2675(b), together with taxable costs, any additional relief authorized by law, and such other relief as the Court deems just and proper.

**COUNT II**
**NEGLIGENT INTERAGENCY COORDINATION AND BENEFIT IMPLEMENTATION**
*Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671–2680*
*Illinois Common Law*

55. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

56. This Count seeks recovery solely for Defendant's negligent interagency coordination and implementation of Plaintiff's benefits. Consistent with ¶ 10 above, Plaintiff does not ask this Court to determine whether the Railroad Retirement Board's September 18, 2025 substantial-gainful-activity finding, or the Board's March 24, 2026 Order No. 2026-28 affirming that finding, was substantively correct, adequately supported, or properly decided; that question is committed exclusively to the United States Court of Appeals for the Seventh Circuit under 45 U.S.C. §§ 231g, 355(f) and is the subject of Plaintiff's pending Petition for Review, No. 26-2060. Rather, this Count challenges only Defendant's failure to accurately coordinate and reconcile Plaintiff's benefit, Medicare-eligibility, and accounting records across the Railroad Retirement Board, the Social Security Administration, and the Department of Justice, independent of which benefits determination should have controlled, a failure that would constitute a breach of Defendant's operational duties regardless of whether the underlying benefits determination

is ultimately upheld or set aside. Plaintiff does not challenge discretionary policy decisions or the merits of any administrative adjudication.

57. At all relevant times, employees of the Railroad Retirement Board, acting within the course and scope of their federal employment, were responsible for coordinating Plaintiff's disability benefits with the Social Security Administration, Medicare, the Department of Justice, and other governmental components whose records and actions directly affected Plaintiff's entitlement, benefit administration, payment processing, and financial obligations.

58. Having undertaken those responsibilities, Defendant owed Plaintiff a duty to exercise reasonable care in coordinating interagency information, implementing benefit determinations, maintaining consistent administrative actions, and ensuring that operational decisions were accurately executed. Because interagency coordination and implementation of previously determined benefits are ministerial functions rather than discretionary policy judgments, this duty applies without regard to any discretionary-function immunity that might otherwise attach to agency decision-making. See Berkovitz v. United States, 486 U.S. 531, 536 (1988) (discretionary function exception does not shield conduct where a statute, regulation, or policy specifically prescribes a course of action, leaving no room for judgment or choice); Marshall v. Burger King Corp., 222 Ill. 2d 422, 436, 856 N.E.2d 1048 (2006) (elements of negligence under Illinois law are duty, breach, proximate cause, and damages); see also Bell v. Hutsell, 2011 IL 110724, ¶¶ 11–12 (duty limited to extent of undertaking; no duty found on the facts presented); Wakulich v. Mraz, 203 Ill. 2d 223, 241 (2003); Restatement (Second) of Torts § 323. The Seventh Circuit has itself recognized that ordinary carelessness in executing a routine, non-policy-based task can fall outside the discretionary-function exception even where the underlying program involves some discretionary elements. See Palay v. United States, 349 F.3d 418, 432 (7th Cir. 2003) (ordinary carelessness in performing a routine, non-policy-based function is not the type of judgment the discretionary-function exception protects). This operational-coordination function is directly analogous to the duty owed by a private third-party administrator responsible for coordinating benefits and records among multiple insurers, employers, or benefit plans on a claimant's behalf — an undertaking for which

21

Illinois law imposes an ordinary-care standard, supplying the private-person analogue required under 28 U.S.C. § 1346(b)(1).

59. Defendant breached that duty by negligently performing operational coordination functions, including:

    a.    on information and belief, failing to timely reconcile inconsistent records maintained by the Social Security Administration and other participating federal agencies before implementing the September 18, 2025 reversal and March 24, 2026 Board Order affecting Plaintiff's disability benefits — records now confirmed in the certified companion Administrative Record as Exhibit G; (see AR at A065–A069 (Social Security Administration "Fully Favorable" decision, Sept. 19, 2017, ALJ Melinda K. Hart, finding Plaintiff disabled) (partial duplicate at AR A076).)

    b.    failing to accurately implement Defendant's own reinstatement determinations throughout all administrative systems responsible for benefit administration;

    c.    failing to coordinate disability-benefit administration with Medicare eligibility records, as illustrated by the issuance of Medicare cards on October 1, 2024, and February 4, 2025 (the latter retroactive to June 1, 2013) during the same period Defendant's disability-benefit determinations reflected Plaintiff's validly reinstated status, followed by the September 18, 2025 reversal of that reinstatement without any documented reconciliation of the Medicare records against the reversal (A.R. A006–A007, A010);

    d.    on information and belief, failing to ensure that the $58,529 accrued-benefit determination confirmed by Defendant's own Reconsideration Section on March 26, 2025 (Ex. F) was consistently implemented among the Railroad Retirement Board's accounting, benefit-payment, and restitution-processing functions and the Department of Justice Financial Litigation Unit's restitution-collection records — records now confirmed as Exhibit F (see Exhibit C, Sub-Exhibits C-4, C-12 through C-15, C-20; Administrative Record accrual records, cited by pin cite);

    e.    failing to communicate operational corrections after administrative inconsistencies were discovered, thereby allowing inaccurate information to remain in active governmental records;

f.  failing to establish and follow reasonable procedures for resolving conflicts between agency records before implementing adverse operational actions affecting Plaintiff;

g.  on information and belief, failing to verify that the September 18, 2025 reversal of Plaintiff's reinstatement was accurately reflected and implemented across the Social Security Administration's coordinated records and Defendant's own Medicare-eligibility systems, given the Medicare cards issued October 1, 2024, and February 4, 2025, that were never reconciled against that reversal (A.R. A006–A007, A010); and

h.  on information and belief, failing to document any interagency communication between the Railroad Retirement Board and the Social Security Administration specifically addressing the conflict between Plaintiff's Medicare-entitlement records and the September 18, 2025 reversal of his disability reinstatement, notwithstanding that such coordination records would ordinarily be maintained in the course of administering a claimant's coordinated federal benefits (Exhibit G; see AR at A065–A069, partial duplicate at AR A076).

i.  otherwise failing to exercise the degree of care that a reasonably prudent private benefit administrator coordinating multiple benefit systems would have exercised under substantially similar circumstances.

60. Defendant knew, or reasonably should have known, that failures in interagency coordination would foreseeably disrupt Plaintiff's disability income, Medicare coverage, benefit administration, financial obligations, and access to necessary medical treatment.

61. Defendant's negligent coordination created inconsistent governmental records concerning Plaintiff's disability entitlement, benefit status, Medicare eligibility, accrued disability payments, and related financial obligations, resulting in operational actions that were inaccurate, incomplete, or inconsistent with Defendant's own administrative determinations.

62. Defendant failed to timely identify and correct those inconsistencies before implementing actions that materially affected Plaintiff's disability benefits and related entitlements.

23

63. Had Defendant exercised reasonable care in coordinating agency records, implementing its disability determinations, reconciling administrative inconsistencies, and ensuring accurate execution of operational responsibilities, Plaintiff's disability benefits, Medicare entitlement, accrued benefits, and related financial interests would have been administered consistently and the injuries alleged herein would have been substantially avoided.

64. As a direct and proximate result of Defendant's negligent operational coordination, Plaintiff sustained injuries including:

   a. administrative burden, delay, and related costs of navigating the interruption of disability-annuity benefits;

   b. interruption of Medicare coverage;

   c. denial or delay of medically necessary healthcare;

   d. increased medical expenses;

   e. disruption of accrued disability-benefit administration;

   f. financial losses associated with inconsistent interagency administration;

   g. additional administrative expenses incurred attempting to resolve governmental errors;

   h. emotional distress arising from the prolonged disruption of essential disability benefits; and

   i. additional compensatory damages established through discovery and proven at trial.

65. Plaintiff's injuries were the natural, direct, and foreseeable consequence of Defendant's negligent execution of operational interagency coordination after voluntarily undertaking responsibility for administering Plaintiff's disability benefits.

66. Pursuant to the Federal Tort Claims Act and Illinois negligence law, Defendant United States of America is liable for the compensatory damages proximately caused by the negligent operational acts and omissions of its employees acting within the course and scope of their federal employment.

**WHEREFORE**

24

Plaintiff respectfully requests that judgment be entered in his favor and against Defendant United States of America for compensatory damages in an amount to be determined at trial, not exceeding the sum certain presented in Plaintiff's administrative claim except as authorized by 28 U.S.C. § 2675(b), together with recoverable costs and such further relief as the Court deems just and proper.

**COUNT III**

**NEGLIGENT OPERATIONAL EVIDENTIARY DEVELOPMENT AND DOCUMENT VERIFICATION**

*Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671–2680*

*Illinois Common Law*

67. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

68. This Count arises solely from Defendant's negligent execution of the Railroad Retirement Board's own internal operational functions of evidentiary development and administrative fact-finding—specifically, how Board personnel reviewed the administrative record, took in and catalogued evidence, applied the Board's own verification procedures, and documented the Board's process—during the administration of Plaintiff's disability claim. Consistent with ¶ 10 above, Plaintiff does not ask this Court to determine whether the Railroad Retirement Board's September 18, 2025 substantial-gainful-activity finding, or the Board's March 24, 2026 Order No. 2026-28 affirming that finding, was substantively correct, adequately supported, or properly decided; that question is committed exclusively to the United States Court of Appeals for the Seventh Circuit under 45 U.S.C. §§ 231g, 355(f) and is the subject of Plaintiff's pending Petition for Review, No. 26-2060. Rather, this Count challenges only Defendant's failure to follow its own non-discretionary evidentiary-development and record-verification procedures before implementing operational action, a failure that would constitute a breach of Defendant's operational duties regardless of whether the substantial-gainful-activity finding those procedures fed into was ultimately correct. Plaintiff does not challenge the Board's adjudicative judgment or discretionary policy determinations. This Count instead challenges the negligent performance of the Board's own ministerial evidence-handling functions—record review,

evidence intake, application of existing verification procedures, and documentation of the Board's process—before operational actions affecting Plaintiff were implemented.

69. At all relevant times, employees of the Railroad Retirement Board, acting within the course and scope of their federal employment, undertook responsibility for gathering facts, developing the evidentiary record, verifying information obtained from governmental sources, documenting investigative findings, and evaluating factual inconsistencies before implementing administrative action affecting Plaintiff's disability benefits.

70. Having undertaken those operational responsibilities, Defendant owed Plaintiff a duty, under the voluntary-undertaking doctrine set forth in Restatement (Second) of Torts § 323 — the same doctrine relied upon elsewhere in this Complaint, see ¶¶ 46, 58, 94, 106 — to exercise reasonable care in conducting a reasonably complete record review, applying the Board's own evidence-intake and verification procedures, resolving significant factual inconsistencies appearing within its own file, and documenting the basis for its findings accurately before implementing actions affecting Plaintiff's disability benefits. This duty attaches independently of the discretionary substantive standards—including the substantial-gainful-activity and trial-work-period criteria set forth at 20 C.F.R. §§ 220.170 –.171—that govern the merits of a disability-cessation determination; Plaintiff does not contend that the application of those substantive criteria is ministerial, and this Count does not challenge that application. Rather, the duty alleged here concerns the antecedent, non-adjudicative functions of gathering, cataloguing, verifying, and documenting the evidentiary record on which any such determination is later based—functions that do not themselves require weighing competing evidence for purposes of a substantive eligibility finding and are accordingly governed by ordinary standards of care rather than by unfettered agency discretion. See Berkovitz v. United States, 486 U.S. 531, 536 (1988) (discretionary function exception inapplicable where a mandatory directive leaves no room for judgment). This record-review and evidence-verification function is directly analogous to the duty owed by a private disability insurer's claims department, which under Illinois law must maintain and organize a claims file, verify the provenance and reliability of documents submitted in support of or against a claim, resolve material inconsistencies appearing in that file, and document its findings before terminating or reversing a previously allowed claim—an ordinary-care obligation supplying the private-person

26

analogue required under 28 U.S.C. § 1346(b)(1). This Count's primary theory is Defendant's failure to comply with its own mandatory case-review procedure at DCM Part 7, § 7.3.1(A)–(C), alleged in ¶ 71(d)–(g) below; the related allegation concerning DCM Part 10, § 10.6.2(C) in ¶ 71(h) is corroborating and presented as an alternative, independently sufficient basis, not a necessary predicate for this Count.

Defendant may contend that this Count is foreclosed by Jude v. Commissioner of Social Security, 908 F.3d 152 (6th Cir. 2018), and Watson v. United States, 865 F.3d 123 (2d Cir. 2017). Neither decision requires dismissal of the claim as pleaded here. In Jude, the Sixth Circuit held that the Social Security Administration's decisions regarding the timing, thoroughness, and manner of investigating suspected benefits fraud—including how quickly to act, how to sequence a fraud-related redetermination, and what weight to give suspect evidence—were discretionary, judgment-laden adjudicative functions protected by the discretionary function exception. 908 F.3d 152. Jude is distinguishable because it addressed SSA's exercise of judgment in deciding how to weigh and act upon fraud-related evidence as part of a redetermination—an evaluative, policy-inflected choice about investigative scope and pace. This Count does not challenge Defendant's judgment about how much investigation was enough, how quickly the Board acted, or what weight to assign contested evidence; it challenges the antecedent, non-evaluative failure to apply the Board's own existing record-review, evidence-intake, and documentation procedures to material already within, or readily obtainable through, Defendant's own files—conduct closer to the "ordinary carelessness" in executing a routine, non-policy task that falls outside the exception. Watson v. United States is likewise distinguishable. There, the Second Circuit held that a claim alleging negligent investigation of a plaintiff's underlying immigration/alienage status failed for lack of a private-person analogue, because no private person investigates or adjudicates alienage or deportability status. 865 F.3d 123. Watson's holding rests on the uniquely governmental character of the status determination itself. This Count does not ask the Court to evaluate Defendant's determination of Plaintiff's disability or substantial gainful activity; it involves investigating the reliability of documentary evidence and verifying the accuracy of Defendant's own records concerning matters already within Defendant's possession—including the third-party loan-application evidence discussed at ¶ 71(h) below, already collected and analyzed by a private financial institution and its since-convicted loan officer, and the mischaracterization of Plaintiff's criminal conviction discussed at

27

¶ 71(i) below—a function with a ready private-sector analogue in ordinary claims-file verification.

71.   Defendant breached that duty by negligently performing operational investigative activities, including:

a.   On July 11, 2025, Railroad Retirement Board Hearing Officer Daniel Moss issued a notice expanding the scope of Plaintiff's pending administrative appeal beyond the original accrued-benefit withholding dispute to include whether the November 13, 2024 reinstatement determination was itself correct (A.R. A005). Defendant's own Office of General Counsel later characterized this notice internally as providing "due process notification" to Plaintiff, see ¶ 71(b), infra (Ex. C-8), reflecting Defendant's own recognition that expanding the scope of a pending appeal to reach a new, previously undecided issue required affording Plaintiff fair notice and a genuine opportunity to gather and present evidence directed to that new issue before it was decided. Defendant's own case file does not reflect that Plaintiff was afforded any extension of time or other accommodation to develop evidence specific to the newly expanded issue before the Hearing Officer decided that same expanded issue barely two months later, on September 18, 2025;

b.   On January 6, 2026, Office of General Counsel attorney Debra S. Chesnin sent Hearing Officer Moss an email stating: "Nice job on providing due process notification to the claimant that you expanded scope of the appeal decision in the Hill case! Definitely a tricky thing to do!" (Ex. C-8). This contemporaneous internal characterization of the scope expansion as "tricky" is alleged, on information and belief pending further discovery of the surrounding communications, to reflect the agency's own awareness that expanding the scope of an already-pending appeal without a corresponding investigative record created a due-process and reliability risk;

c.   On January 14, 2026, Chesnin emailed case analyst Spiridoula Mavrothalasitis, with Ana Kocur copied, praising the handling of "a really complicated and unusual case." Mavrothalasitis forwarded that message to Hearing Officer Moss the same day, marked High Importance. Moss replied that Mavrothalasitis should document, for purposes of her next performance rating, the effort involved in "gathering

28

evidence and consulting with th[e] [Office of Inspector General]" in connection with the Hill appeal (Ex. C-10). Plaintiff alleges, on information and belief, that this exchange establishes that Office of Inspector General consultation occurred in connection with the post-reinstatement re-review of Plaintiff's case; the timing of that consultation relative to the September 18, 2025 Hearing Officer decision, and its effect on the substance of that decision, are matters within Defendant's possession appropriate for discovery;

d. On September 18, 2025, the Hearing Officer issued a decision finding that Plaintiff had engaged in substantial gainful activity beginning August 2016, completed a trial work period, and had his disability cease as of May 2017 — reversing the November 13, 2024 reinstatement determination. Independent of whether that finding was ultimately well-supported (a question committed exclusively to the Seventh Circuit, see ¶ 10), Defendant's own case file does not reflect that Board personnel, before that decision issued, complied with the Board's own mandatory case-review procedure set forth at DCM Part 7, § 7.3.1(A)—(C) — which requires examining the file for all essential elements and proper documentation of pertinent allegations, securing additional evidence where the record is incomplete or conflicting, and analyzing the total evidence to check and resolve conflicts or discrepancies — with respect to the specific earnings and valuation records relied upon (A.R. A006—A007, A010); (see also AR at A061—A064, A085—A101 (fuller copy of Decision No. 25-234); U.S. Railroad Retirement Board, Disability Claims Manual Part 7, § 7.3.1, https://www.rrb.gov/sites/default/files/2022-12/DCM_Part_7_0.pdf.)

e. On March 24, 2026, the three-member Railroad Retirement Board, by Order No. 2026-28, affirmed the Hearing Officer's September 18, 2025 decision. Independent of the substantive adequacy of that affirmance (which is not at issue here, see ¶ 10), Defendant's own Administrative Record does not reflect that, before Order No. 2026-28 issued, the Board applied the same mandatory file-review and discrepancy-resolution procedure described in subparagraph (d) above — which by its terms requires analyzing the total evidence in the file and resolving conflicts or discrepancies before a determination issues, DCM Part 7, § 7.3.1(C) — to reconcile

29

Order No. 2026-28 against the Reconsideration Section's twice-confirmed $58,529 accrued-benefit determination described in subparagraph (g) below, notwithstanding that both determinations were based on substantially the same underlying earnings record (A.R. A001—A010); (see also AR at A001—A016 (Board Order 2026-28); AR at A084 (implementation memorandum).)

f.   Defendant's own Administrative Record and FOIA production, described in subparagraphs a through e above, do not identify the specific date Office of Inspector General consultation began, what the Office of Inspector General communicated, or whether that communication reached the Hearing Officer before or after the September 18, 2025 decision was drafted — facts that were and remain within Defendant's exclusive control and were not documented in a manner that permitted Plaintiff or the Board itself to verify the basis for the reversal before it was implemented; and

g.   failing to identify, before the September 18, 2025 decision issued, that the Reconsideration Section's March 26, 2025 written confirmation of a $58,529 accrued-benefit determination (Ex. F) was directly inconsistent with the substantial-gainful-activity finding subsequently adopted in that decision, notwithstanding that both determinations were based on substantially the same underlying earnings record — a material discrepancy that Defendant's own case-review procedure, DCM Part 7, § 7.3.1(C), required Defendant to identify and resolve before issuing a determination.

h.   failing to apply Defendant's own existing obligation under DCM Part 10, § 10.6.2(C) — which requires the field office to "attempt to verify" information submitted by "an individual other than the annuitant or his payee" before that information is relied upon in connection with adverse action affecting the annuity, https://www.rrb.gov/sites/default/files/2025-12/DCM_Part_10.pdf — to the loan-application evidence prepared by Alan Childs, evidence bearing on the substantial-gainful-activity finding at issue in the September 18, 2025 decision. Childs' subsequent conviction for bank fraud, see United States v. Alan Childs, No. 5:25-cr-00013-MTT-CHW (M.D. Ga.), Judgment entered September 15, 2025 (Ex. I), a fact discoverable through ordinary diligence at the time, is offered as additional

evidence demonstrating why verification of that particular third-party financial evidence mattered — not as the source of Defendant's verification obligation, which arises independently from DCM Part 10, § 10.6.2(C) itself; Plaintiff does not allege, and this Count does not require the Court to decide, whether that evidence was in fact unreliable, whether the Hearing Officer's ultimate weighing of it was correct, or whether the Eleventh Circuit's affirmance of Plaintiff's convictions in United States v. Hill, 119 F.4th 862 (11th Cir. 2024) — which cited this same loan-application evidence, see supra ¶ 38 — was incorrectly decided; only that Defendant's own third-party-verification obligation was not applied to it. The failure alleged here is Defendant's failure to perform the prescribed verification step at all — not a claim that Defendant selected the wrong investigative technique, assigned incorrect weight to conflicting evidence, or reached an incorrect conclusion, the type of judgment-laden choices held discretionary in Jude;

i. Defendant's own records further corroborate the pattern of inadequate evidentiary verification alleged in this Count: a letter to Plaintiff from Railroad Retirement Board Reconsideration Specialist Kenneth Claxton states that Plaintiff "pleaded guilty" to Theft of Government Property and False Claims Against the Government "on June 19, 2023," and a separate Defendant communication dated November 13, 2024 states that Plaintiff was "found guilty" on "January 19, 2023"—both materially inaccurate characterizations, since Plaintiff was convicted by jury verdict returned October 19, 2022, following a trial, and entered no guilty plea (see supra ¶ 41; AR at A025–A026). As with the unverified Childs loan-application evidence discussed in subparagraph h above, this is offered as an additional example of Defendant's failure to verify the accuracy of evidence bearing on Plaintiff's criminal history—evidence Defendant itself relied upon in connection with the events leading to the September 18, 2025 reversal—before that inaccurate characterization was repeated in agency correspondence. Plaintiff does not allege that the Hearing Officer or the Board actually relied on, or was exposed to, this specific mischaracterization in reaching the September 18, 2025 decision or the March 24, 2026 Board Order; it is pleaded solely as corroborating evidence of the

31

broader evidentiary-verification failure that is the gravamen of this Count, not as an independent claim based on Plaintiff's reliance on the statement.

72. Defendant's own internal communications, identified above, confirm that the scope of Plaintiff's appeal was expanded on July 11, 2025; that Office of General Counsel attorneys were actively involved in reviewing and praising the handling of that expansion in January 2026; that Office of Inspector General consultation occurred in connection with the case; and that the Board ultimately reversed its own November 13, 2024 reinstatement determination through the September 18, 2025 decision and March 24, 2026 Board Order — all without a documented reconciliation of the conflicting findings.

73. Defendant knew, or reasonably should have known, that conducting an incomplete or inadequately verified factual investigation created a foreseeable risk that operational actions affecting Plaintiff's disability benefits would be implemented upon an unreliable factual foundation.

74. Defendant nevertheless implemented operational actions materially affecting Plaintiff's disability benefits before exercising reasonable care to complete its investigation, verify material evidence, reconcile significant factual conflicts, and document reasonably reliable investigative findings.

75. Had Defendant exercised reasonable care in conducting and completing its operational investigation before implementing administrative action, Plaintiff's disability benefits, Medicare coverage, financial interests, and related statutory benefits would not have been disrupted in the manner alleged herein.

76. As a direct and proximate result of Defendant's failure to perform prescribed record-review and verification procedures and evidentiary development, Plaintiff sustained:

    a. administrative burden, delay, and related costs of navigating the interruption of disability-annuity benefits;

    b. termination of Medicare coverage and resulting interruption of medical care;

    c. increased medical expenses;

    d. financial losses resulting from Defendant's failure to follow its own mandatory case-review procedure, DCM Part 7, § 7.3.1(A)–(C), before implementing the

September 18, 2025 decision, independent of whether the substantive investigation underlying that decision was ultimately adequate;

e.  expenses incurred investigating and correcting Defendant's investigative failures;

f.  emotional distress resulting from the foreseeable consequences of Defendant's failure to perform prescribed record-review and verification procedures; and

g.  additional compensatory damages proven through discovery and at trial.

77.  Plaintiff's injuries were the natural, direct, and foreseeable consequence of Defendant's failure to perform prescribed record-review and verification procedures and evidentiary-development activities performed by Defendant's employees acting within the course and scope of their federal employment.

78.  Pursuant to the Federal Tort Claims Act and Illinois common law negligence principles, Defendant United States of America is liable for the compensatory damages proximately caused by the negligent operational acts and omissions of its employees.

**WHEREFORE**

Plaintiff respectfully requests that judgment be entered in his favor and against Defendant United States of America for compensatory damages in an amount to be determined at trial, not exceeding the sum certain presented in Plaintiff's administrative claim except as permitted by 28 U.S.C. § 2675(b), together with taxable costs and such further relief as the Court deems just and proper.

**COUNT IV**

**NEGLIGENT IMPLEMENTATION OF ADMINISTRATIVE DETERMINATIONS**

*Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671–2680*

*Illinois Common Law*

79.  Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

80.  This Count seeks recovery solely for Defendant's negligent implementation and execution of administrative determinations already made. Consistent with ¶ 10 above, Plaintiff does not ask this Court to determine whether the Railroad Retirement Board's September 18, 2025 substantial-gainful-activity finding, or the Board's March 24, 2026 Order No. 2026-

33

28 affirming that finding, was substantively correct, adequately supported, or properly decided; that question is committed exclusively to the United States Court of Appeals for the Seventh Circuit under 45 U.S.C. §§ 231g, 355(f) and is the subject of Plaintiff's pending Petition for Review, No. 26-2060. Rather, this Count challenges only Defendant's failure to accurately and consistently execute administrative determinations already made, independent of the substantive correctness of the determinations being executed, a failure that would constitute a breach of Defendant's operational duties regardless of whether the underlying benefits determination is ultimately upheld or set aside. Plaintiff does not challenge the substance of any adjudicative decision or the exercise of discretionary judgment.

81. At all relevant times, employees of the Railroad Retirement Board, acting within the course and scope of their federal employment, were responsible for implementing administrative determinations concerning Plaintiff's disability entitlement, reinstatement, benefit payments, Medicare eligibility, accrued benefits, offsets, and related administrative actions.

82. Having undertaken responsibility for implementing those determinations, Defendant owed Plaintiff a duty to exercise reasonable care in executing administrative actions accurately, consistently, completely, and within a reasonable time. Because implementing a benefit determination already made is a ministerial act rather than an exercise of policy discretion, the discretionary function exception does not immunize the negligent execution alleged here. See Berkovitz v. United States, 486 U.S. 531, 536 (1988); Marshall v. Burger King Corp., 222 Ill. 2d 422, 436, 856 N.E.2d 1048 (2006) (duty, breach, proximate cause, and damages are the elements of an Illinois negligence claim). The Seventh Circuit has itself recognized that ordinary carelessness in executing a routine, non-policy-based task can fall outside the discretionary-function exception even where the underlying program involves some discretionary elements. See Palay v. United States, 349 F.3d 418, 432 (7th Cir. 2003) (ordinary carelessness in performing a routine, non-policy-based function is not the type of judgment the discretionary-function exception protects). This implementation function is directly analogous to the duty owed by a private benefits administrator or claims-processing service responsible for accurately executing a claim determination once made, without introducing new errors, delays, or inconsistencies in the course of implementation

34

— an ordinary-care obligation supplying the private-person analogue required under 28 U.S.C. § 1346(b)(1).

83. Defendant breached that duty by negligently performing operational implementation activities, including:

a. failing to accurately execute Defendant's reinstatement determinations throughout the administrative systems responsible for Plaintiff's disability benefits;

b. failing to implement administrative determinations in a manner consistent with Defendant's official records and benefit-processing requirements;

c. failing to ensure that operational actions affecting Plaintiff's disability benefits were accurately reflected before subsequent administrative actions were undertaken;

d. failing to timely implement administrative corrections after inconsistencies became known or reasonably should have become known;

e. implementing operational actions without confirming that prerequisite administrative steps had been accurately completed;

f. allowing conflicting implementation actions to remain in effect simultaneously, resulting in inconsistent administration of Plaintiff's disability benefits;

g. failing to employ reasonable quality-control procedures before executing operational actions affecting Plaintiff's disability benefits; and

h. failing to document, in the certified Administrative Record, any reconciliation between the November 13, 2024 reinstatement notice, the December 26, 2024 Office of Public Affairs confirmation, and the March 26, 2025 Reconsideration Section confirmation, on the one hand, and the September 18, 2025 reversal and March 24, 2026 Board Order on the other, notwithstanding that all five determinations were issued within an eighteen-month period based on substantially the same underlying record (A.R. A001–A010; Ex. F).

i. otherwise failing to exercise the degree of care that a reasonably prudent private disability-benefit administrator would have exercised when implementing finalized benefit determinations under substantially similar circumstances.

84. Defendant's own administrative records demonstrate that Plaintiff's disability entitlement and benefit status were implemented inconsistently over time, requiring repeated administrative action concerning reinstatement, benefit processing, accrued benefits, and subsequent reversal.

85. Defendant knew, or reasonably should have known, that negligent implementation of administrative determinations would foreseeably interrupt Plaintiff's disability income, Medicare coverage, financial obligations, and access to necessary medical treatment.

86. Defendant nevertheless implemented operational actions that were inconsistent with previously completed administrative determinations without first ensuring that implementation activities were accurate, complete, and operationally consistent.

87. Had Defendant exercised reasonable care in implementing its administrative determinations, Plaintiff's disability benefits would have been administered in a consistent manner, thereby avoiding the injuries alleged herein.

88. As a direct and proximate result of Defendant's negligent implementation of administrative determinations, Plaintiff sustained:

   a. administrative burden, delay, and related costs of navigating the interruption of disability-annuity benefits;

   b. disruption of Medicare eligibility and healthcare coverage;

   c. increased medical expenses;

   d. financial losses associated with administrative actions implemented inconsistently with Defendant's own prior determinations;

   e. expenses incurred attempting to resolve implementation errors;

   f. emotional distress arising from prolonged operational failures; and

   g. additional compensatory damages established through discovery and proven at trial.

89. Plaintiff's injuries were the natural, direct, and foreseeable consequence of Defendant's negligent execution of administrative determinations undertaken by Defendant's employees acting within the course and scope of their federal employment.

90. Pursuant to the Federal Tort Claims Act and Illinois common law, Defendant United States of America is liable for the compensatory damages proximately caused by the negligent operational acts and omissions of its employees.

**WHEREFORE**

Plaintiff respectfully requests that judgment be entered in his favor and against Defendant United States of America for compensatory damages in an amount to be determined at trial, not exceeding the sum certain presented in Plaintiff's administrative claim except as permitted by 28 U.S.C. § 2675(b), together with taxable costs and such other relief as the Court deems just and proper.

**COUNT V**

**NEGLIGENT OPERATIONAL ACCOUNTING AND FINANCIAL ADMINISTRATION**

*Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671–2680*

*Illinois Common Law*

91. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

92. This Count seeks recovery solely for Defendant's negligent performance of operational accounting and financial-administration functions. Consistent with ¶ 10 above, Plaintiff does not ask this Court to determine whether the Railroad Retirement Board's September 18, 2025 substantial-gainful-activity finding, or the Board's March 24, 2026 Order No. 2026-28 affirming that finding, was substantively correct, adequately supported, or properly decided; that question is committed exclusively to the United States Court of Appeals for the Seventh Circuit under 45 U.S.C. §§ 231g, 355(f) and is the subject of Plaintiff's pending Petition for Review, No. 26-2060. Rather, this Count challenges only Defendant's failure to reconcile, account for, and document the disposition of the twice-confirmed $58,529 accrual after the September 18, 2025 reversal, independent of whether that reversal was substantively correct, a failure that would constitute a breach of Defendant's operational duties regardless of whether the underlying benefits determination is ultimately upheld or set aside. Plaintiff does not challenge the discretionary determination of entitlement or any adjudicative decision.

93. At all relevant times, employees of the Railroad Retirement Board, acting within the course and scope of their federal employment, were responsible for calculating disability-benefit accruals, maintaining payment records, processing offsets, administering restitution-related accounting, recording financial transactions, reconciling benefit balances, and documenting the financial disposition of Plaintiff's disability benefits.

94. Having undertaken those operational accounting responsibilities, Defendant owed Plaintiff a duty to exercise reasonable care in calculating, recording, reconciling, documenting, and administering financial transactions affecting Plaintiff's disability benefits, analogous to the duty owed by a private accounting or benefit-administration service that voluntarily undertakes to perform such functions for another's benefit. See Restatement (Second) of Torts § 323; Bell v. Hutsell, 2011 IL 110724, ¶¶ 11–12 (duty limited to extent of undertaking; no duty found on the facts presented); Wakulich v. Mraz, 203 Ill. 2d 223, 241 (2003); Brumley v. Touche, Ross & Co., 123 Ill. App. 3d 636, 463 N.E.2d 195 (1st Dist. 1984) (an accountant who prepares financial information at a client's direction to benefit or influence a known third party owes that third party a duty of ordinary care). The Seventh Circuit has itself recognized that ordinary carelessness in executing a routine, non-policy-based task can fall outside the discretionary-function exception even where the underlying program involves some discretionary elements. See Palay v. United States, 349 F.3d 418, 432 (7th Cir. 2003) (ordinary carelessness in performing a routine, non-policy-based function is not the type of judgment the discretionary-function exception protects). That standard of care mirrors the ordinary-care obligations Illinois law imposes on private pension-plan recordkeepers, payroll-accounting services, and benefit-plan actuaries who calculate, reconcile, and report accrued benefit obligations on a claimant's behalf, supplying the private-person analogue required under 28 U.S.C. § 1346(b)(1).

95. Defendant breached that duty by negligently performing operational accounting activities, including:

   a. In or about December 2024, Defendant's Reinstatement Award Notice calculated accrued disability benefits arising from the November 13, 2024 reinstatement determination and withheld those accrued benefits toward Plaintiff's restitution obligation (Ex. F);

b.    On March 26, 2025, Defendant's Reconsideration Section issued a written confirmation affirming that the reinstated award was correct and calculating a specific accrued-benefit figure of $58,529 owed to Plaintiff under that reinstatement — Defendant's own second, independent confirmation of a precise, quantified sum (Ex. F);

c.    On September 18, 2025, Defendant's Hearing Officer reversed the underlying reinstatement determination on which the $58,529 accrual was based, finding substantial gainful activity beginning August 2016 and terminating Plaintiff's annuity effective July 31, 2017, without any accompanying accounting record reconciling, adjusting, or explaining the disposition of the previously confirmed $58,529 accrual (A.R. A006–A007, A010);

d.    On March 24, 2026, the three-member Board, by Order No. 2026-28, affirmed the Hearing Officer's reversal without addressing or reconciling the $58,529 accrued-benefit determination that Defendant's own Reconsideration Section had confirmed less than a year earlier (A.R. A001–A010);

e.    failing to maintain a documented accounting trail showing how the $58,529 sum — once calculated, confirmed in writing on two separate occasions, and withheld toward restitution — was treated, applied, credited, or otherwise disposed of following the September 18, 2025 reversal of the underlying entitlement determination on which that sum was calculated;

f.    on information and belief, failing to coordinate the accounting treatment of the $58,529 accrual with the Department of Justice Financial Litigation Unit's restitution-collection records, which are within Defendant's possession and custody (now confirmed as Exhibit F; see Exhibit C, Sub-Exhibits C-4, C-12 through C-15, C-20; Administrative Record accrual records, cited by pin cite);

g.    failing to timely identify, investigate, or correct the accounting inconsistency created when a twice-confirmed accrual determination was left unreconciled against a subsequent reversal of the entitlement finding underlying that determination; and

h.    otherwise failing to exercise the degree of care that a reasonably prudent private disability-benefit administrator performing comparable accounting functions would

have exercised in reconciling a confirmed benefit accrual against a later reversal of the underlying entitlement determination; and

i. failing to issue any written accounting determination, correction notice, or restitution adjustment reflecting the disposition of the $58,529 accrual between March 26, 2025, when the Reconsideration Section confirmed the accrual, and the filing of Plaintiff's administrative tort claim on December 13, 2025, notwithstanding that the September 18, 2025 reversal necessarily affected the status of that previously confirmed sum (Ex. F; Ex. B).

96. Defendant's own records confirm that the $58,529 accrual figure was calculated and confirmed on two separate occasions — first in the December 2024 Reinstatement Award Notice and again in the March 26, 2025 Reconsideration Section confirmation — establishing that Defendant's accounting systems had already fixed a specific, quantified sum owed to Plaintiff before the September 18, 2025 reversal was issued, without any documented mechanism for reconciling that sum against the reversal or the March 24, 2026 Board Order affirming it.

97. Defendant knew, or reasonably should have known, that negligent accounting practices would foreseeably result in inaccurate financial administration, improper allocation of disability benefits, erroneous financial balances, and economic injury to Plaintiff.

98. Defendant nevertheless processed financial transactions affecting Plaintiff's disability benefits before exercising reasonable care to ensure that accounting records, accrual calculations, financial reconciliations, and supporting documentation were complete and accurate.

99. Had Defendant exercised reasonable care in performing its operational accounting responsibilities, Plaintiff's disability-benefit accruals, payment records, offsets, financial credits, and related accounting transactions would have been administered accurately, substantially reducing or avoiding the injuries alleged herein.

100. As a direct and proximate result of Defendant's negligent operational accounting and financial administration, Plaintiff sustained:

a. administrative burden, delay, and related costs arising from Defendant's failure to reconcile or account for the twice-confirmed $58,529 accrual, independent of the substantive correctness of the underlying entitlement determination;

b. inaccurate financial administration of accrued disability benefits;

c. improper financial application of disability-related funds;

d. economic losses associated with erroneous accounting practices;

e. expenses incurred investigating and correcting accounting deficiencies;

f. consequential financial harm resulting from inaccurate accounting records;

g. emotional distress arising from Defendant's negligent financial administration; and

h. additional compensatory damages established through discovery and proven at trial.

101. Plaintiff's injuries were the natural, direct, and foreseeable consequence of Defendant's negligent operational accounting and financial-administration activities undertaken by Defendant's employees acting within the course and scope of their federal employment.

102. Pursuant to the Federal Tort Claims Act and Illinois common law negligence principles, Defendant United States of America is liable for the compensatory damages proximately caused by the negligent operational acts and omissions of its employees.

**WHEREFORE**

Plaintiff respectfully requests that judgment be entered in his favor and against Defendant United States of America for compensatory damages in an amount to be determined at trial, not exceeding the sum certain presented in Plaintiff's administrative claim except as authorized by 28 U.S.C. § 2675(b), together with recoverable costs and such further relief as the Court deems just and proper.

**COUNT VI**
**NEGLIGENT OPERATIONAL PRESERVATION, MANAGEMENT, AND HANDLING OF ADMINISTRATIVE EVIDENCE**
*Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671–2680*
*Illinois Common Law*

41

103. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

104. This Count arises solely from Defendant's negligent operational failure to preserve, organize, complete, and transmit administrative evidence—including its failure to include, incorporate, or correct specific documents within the certified Administrative Record—during and after the administration of Plaintiff's disability claim. Consistent with ¶ 10 above, Plaintiff does not ask this Court to determine whether the Railroad Retirement Board's September 18, 2025 substantial-gainful-activity finding, or the Board's March 24, 2026 Order No. 2026-28 affirming that finding, was substantively correct, adequately supported, or properly decided; that question is committed exclusively to the United States Court of Appeals for the Seventh Circuit under 45 U.S.C. §§ 231g, 355(f) and is the subject of Plaintiff's pending Petition for Review, No. 26-2060. Rather, this Count challenges only Defendant's failure to preserve, compile, and accurately transmit administrative evidence—including the Medicare-eligibility records—in the certified Administrative Record, independent of the substantive correctness of the determination that record supports. Plaintiff does not challenge any discretionary investigative judgment, adjudicative determination, or policy decision. This Count concerns only the negligent ministerial handling and transmission of administrative evidence after Defendant undertook responsibility for maintaining and managing that evidence—a records-handling failure distinct from, and unrelated to the accuracy of, the substantive benefits determination itself.

105. At all relevant times, employees of the Railroad Retirement Board, acting within the course and scope of their federal employment, undertook responsibility for collecting, preserving, organizing, maintaining, updating, indexing, transmitting, and managing administrative records, evidentiary materials, internal communications, investigative documents, and other records relied upon in administering Plaintiff's disability claim.

106. Having undertaken those operational responsibilities, Defendant owed Plaintiff a duty, under the voluntary-undertaking doctrine set forth in Restatement (Second) of Torts § 323, to exercise reasonable care in preserving the integrity, completeness, organization, accessibility, and management of administrative evidence used throughout the administration of Plaintiff's disability claim. See Bell v. Hutsell, 2011 IL 110724, ¶¶ 11–

12 (duty limited to extent of undertaking; no duty found on the facts presented); Wakulich v. Mraz, 203 Ill. 2d 223, 241 (2003). The Seventh Circuit has itself recognized that ordinary carelessness in executing a routine, non-policy-based task can fall outside the discretionary-function exception even where the underlying program involves some discretionary elements. See Palay v. United States, 349 F.3d 418, 432 (7th Cir. 2003) (ordinary carelessness in performing a routine, non-policy-based function is not the type of judgment the discretionary-function exception protects). Illinois courts have applied analogous voluntary-undertaking principles in the negligent record-preservation and spoliation context, recognizing a duty to preserve arising from an agreement, contract, statute, special circumstance, or voluntary undertaking (relationship prong), and where the duty extends to the particular evidence at issue based on foreseeability (foreseeability prong). See, by analogy, Boyd v. Travelers Ins. Co., 166 Ill. 2d 188, 652 N.E.2d 267 (1995); Dardeen v. Kuehling, 213 Ill. 2d 329, 336, 821 N.E.2d 227 (2004). This preservation obligation is directly analogous to the duty owed by a private insurer or benefits administrator to maintain and produce a complete and accurate claims file — an ordinary business practice and legal obligation imposed on private claims handlers under Illinois law, supplying the private-person analogue required under 28 U.S.C. § 1346(b)(1).

107. Defendant breached that duty by negligently performing operational evidence-management and Administrative-Record-transmission activities, including:

    a.    Defendant's Administrative Record certified for the Seventh Circuit proceeding does not contain the Medicare cards issued to Plaintiff on October 1, 2024, and February 4, 2025 (the latter retroactive to June 1, 2013), notwithstanding their direct relevance to Plaintiff's disability-benefit status during the same period (A.R. Index);

    b.    Defendant's certified Administrative Record does not contain any document reconciling the Medicare-eligibility records described above against the September 18, 2025 reversal of Plaintiff's reinstatement, notwithstanding that the reversal necessarily implicated Plaintiff's benefit status during the identical period covered by those Medicare records;

    c.    on information and belief, the January 6, 2026, and January 14, 2026 internal communications described in Count III above, evidencing Office of General

Counsel review and Office of Inspector General consultation in connection with Plaintiff's case, do not appear in the certified Administrative Record notwithstanding their direct bearing on the September 18, 2025 decision under review; (see AR at A053, A148 (cross-examination testimony referencing Office of Inspector General Agent Vincent Clancy); AR at A270–A300 (Aug. 13, 2025 hearing transcript, Hearing Officer Moss presiding), including AR at A292–A293 (Plaintiff's testimony identifying Janice Epstein and Sherita Boots as the reinstatement decision-makers).)

d.   failing to establish or follow a documented protocol for ensuring that Medicare-eligibility records administered by Defendant were cross-referenced against, and incorporated into, the administrative record compiled for Plaintiff's disability-benefit appeal; and

e.   otherwise failing to exercise the degree of care that a reasonably prudent private disability-benefit administrator would have exercised in preserving and incorporating readily available, directly relevant records — such as Defendant's own Medicare-eligibility records — into the administrative record compiled for judicial review; and

f.   failing to include, in the certified Administrative Record, the December 26, 2024 Office of Public Affairs correspondence and the March 26, 2025 Reconsideration Section confirmation described above, notwithstanding that both documents directly bear on the reasonableness of the September 18, 2025 reversal under review (A.R. Index; Ex. A; Ex. F).

g.   otherwise failing to exercise the degree of care that a reasonably prudent private disability-benefit administrator would have exercised in preserving, cross-referencing, and incorporating readily available, directly relevant records — such as Defendant's own Medicare-eligibility records, internal OGC/OIG communications, and Reconsideration Section confirmations — into the working case file and, subsequently, the administrative record compiled for judicial review. (Defendant's separate mischaracterization of the nature of Plaintiff's criminal proceeding, see supra ¶ 41, is pleaded as corroborating evidence of Defendant's negligent evidentiary-verification practices in Count III, ¶ 71(i) above, rather than

44

as an independent basis for this Count, to avoid duplicative pleading and because Plaintiff does not allege that the Hearing Officer or Board relied on that specific mischaracterization.)

108. Defendant's own operational records confirm that Medicare cards were issued to Plaintiff on October 1, 2024, and February 4, 2025 — the latter retroactively effective June 1, 2013 — during the same period Defendant's disability-benefit determinations reflected Plaintiff's validly reinstated status, and that those Medicare-entitlement records do not appear in the certified Administrative Record compiled for the Seventh Circuit proceeding, notwithstanding their direct relevance to the September 18, 2025 reversal of that reinstatement.

109. Defendant knew, or reasonably should have known, that negligent preservation and management of administrative evidence created a foreseeable risk that operational personnel would rely upon incomplete, fragmented, inconsistent, or improperly maintained administrative records when performing subsequent operational responsibilities affecting Plaintiff's disability benefits.

110. Defendant nevertheless continued administering Plaintiff's disability claim without exercising reasonable care to preserve the integrity, continuity, organization, and accessibility of the administrative evidence upon which subsequent operational activities depended.

111. Had Defendant exercised reasonable care in preserving and managing Plaintiff's administrative evidence, subsequent operational activities affecting Plaintiff's disability claim would have been performed using complete, organized, and reliable administrative records, substantially reducing or preventing the injuries alleged herein.

112. As a direct and proximate result of Defendant's negligent operational preservation, management, and handling of administrative evidence, Plaintiff sustained:

   a. administrative burden, delay, and related costs of navigating the interruption of disability-annuity benefits;

   b. disruption of Medicare eligibility and related medical care;

   c. economic losses resulting from operational actions performed using inadequately managed administrative evidence;

Case: 1:26-cv-09237 Document #: 1 Filed: 08/03/26 Page 46 of 184 PageID #:46
d.   increased medical expenses;

e.   expenses incurred reconstructing, locating, and addressing deficiencies within Defendant's administrative records;

f.   emotional distress resulting from Defendant's negligent management of administrative evidence; and

g.   additional compensatory damages established through discovery and proven at trial.

113.   Plaintiff's injuries were the natural, direct, and foreseeable consequence of Defendant's negligent operational preservation, management, and handling of administrative evidence performed by Defendant's employees acting within the course and scope of their federal employment.

114.   Pursuant to the Federal Tort Claims Act and Illinois common law negligence principles, Defendant United States of America is liable for the compensatory damages proximately caused by the negligent operational acts and omissions of its employees.

**WHEREFORE**

Plaintiff respectfully requests that judgment be entered in his favor and against Defendant United States of America for compensatory damages in an amount to be determined at trial, not exceeding the sum certain presented in Plaintiff's administrative claim except as permitted by 28 U.S.C. § 2675(b), together with taxable costs and such further relief as the Court deems just and proper.

## VII. STATUTORY EXCEPTIONS TO FTCA LIABILITY DO NOT APPLY

115.   Although 28 U.S.C. § 2680 excepts certain categories of claims from the Federal Tort Claims Act's waiver of sovereign immunity, none of those exceptions bars the claims alleged in this Complaint, each of which arises from the negligent performance of non-discretionary, operational duties mandated by federal statute and regulation.

### A. The Discretionary-Function Exception Does Not Apply

116.   The discretionary-function exception, 28 U.S.C. § 2680(a), shields only governmental conduct that (1) involves an element of judgment or choice, and (2) is grounded in

46

considerations of public policy of the kind the exception was designed to protect. Berkovitz v. United States, 486 U.S. 531, 536–37 (1988); United States v. Gaubert, 499 U.S. 315, 322–23 (1991).

117. The Railroad Retirement Board's obligations to process disability claims, administer reinstatement decisions, coordinate with other federal agencies, verify the reliability of evidence relied upon in benefit determinations, calculate and reconcile benefit accounting, and preserve administrative records are governed by mandatory federal regulations and the Board's own internal procedures, which afford RRB employees no discretion to disregard prescribed, non-adjudicative record-verification and recordkeeping steps once the underlying facts are known.

118. Where a federal employee has no rightful option but to adhere to a mandatory directive, the discretionary-function exception does not apply, because the challenged conduct involves no element of judgment or choice. Berkovitz, 486 U.S. at 536.

119. The negligent operational acts and omissions alleged in Counts I through VI are ministerial, not discretionary: RRB employees failed to follow established, mandatory procedures governing benefit administration, interagency coordination, evidentiary verification, implementation of administrative determinations, financial accounting, and preservation of administrative evidence, rather than exercising any policy judgment entrusted to them by law.

120. Because Plaintiff's claims challenge the negligent performance of non-discretionary operational duties rather than any policy-based judgment call, the discretionary-function exception, 28 U.S.C. § 2680(a), does not bar this action.

## B. The Misrepresentation Exception Does Not Apply

121. The misrepresentation exception, 28 U.S.C. § 2680(h), bars only those claims in which the government's misstatement of fact is the essence of the claim; it does not bar claims for negligent performance of operational duties merely because a misrepresentation is also involved in the surrounding facts. United States v. Neustadt, 366 U.S. 696, 706–07 (1961); Block v. Neal, 460 U.S. 289, 296–97 (1983).

122. Plaintiff's claims do not sound in misrepresentation. Plaintiff does not seek damages because he relied upon a false statement made by Defendant; rather, Plaintiff seeks

damages because Defendant's employees negligently administered his disability claim, failed to coordinate between agencies, failed to develop and verify the evidentiary basis for administrative determinations, negligently implemented those determinations, mismanaged accounting functions, and negligently preserved and handled administrative evidence, all in the course of performing operational duties Defendant undertook to perform.

123. Even where inaccurate statements appear within the administrative record—including the Railroad Retirement Board's inaccurate characterizations of Plaintiff's criminal history described in Section V.D—those inaccuracies are alleged as corroborating evidence of Defendant's negligent operational evidentiary-verification practices under Count III, see ¶ 71(i) above, not as freestanding misrepresentation claims for which Plaintiff seeks recovery based on reliance.

124. Because the gravamen of each Count is negligent operational conduct rather than injury caused by reliance on a misrepresentation, the misrepresentation exception, 28 U.S.C. § 2680(h), does not bar this action. Block v. Neal, 460 U.S. at 297.

## VIII. DAMAGES

125. As a direct and proximate result of the negligent operational acts and omissions alleged in Counts I through VI, Plaintiff has sustained compensable damages recoverable under the Federal Tort Claims Act and the substantive law of the State of Illinois.

### A. Past Economic Damages

126. Plaintiff has incurred administrative burden, delay, and related costs navigating the September 18, 2025 reversal of his disability-annuity benefits and its aftermath, independent of the value of the annuity itself, which is not sought as a component of damages in this action.

127. Plaintiff has incurred out-of-pocket medical expenses after the interruption of Medicare coverage and the resulting denial, delay, or interruption of medically necessary healthcare.

128. Plaintiff has sustained financial losses arising from Defendant's negligent processing of disability benefits, accruals, offsets, accounting functions, and related operational activities.

129. Plaintiff has incurred expenses for obtaining medical records, administrative records, agency documents, copying, postage, travel, and other reasonably necessary expenditures undertaken to mitigate the consequences of Defendant's negligence.

130. Plaintiff has expended substantial personal time and resources addressing Defendant's operational failures, pursuing administrative remedies, reconstructing administrative records, and protecting his statutory disability benefits.

**B. Future Economic Damages**

131. Plaintiff will continue to incur economic losses resulting from the interruption or impairment of disability benefits and related statutory entitlements.

132. Plaintiff reasonably expects to incur future medical expenses, healthcare costs, prescription expenses, and other economic losses attributable to Defendant's negligent operational conduct.

133. Plaintiff will continue to incur additional expenses reasonably necessary to address the continuing consequences of Defendant's negligence.

**C. Medical Damages**

134. Defendant's negligence foreseeably interrupted Plaintiff's access to Medicare benefits and materially interfered with the continuity of treatment for Plaintiff's established disabling medical conditions.

135. As a direct and proximate result, Plaintiff sustained delayed medical evaluation, interruption of specialist care, interruption of prescribed treatment, increased medical expenses, and worsening of existing medical conditions.

136. Plaintiff has suffered physical pain, physical discomfort, increased medical complications, and other compensable medical injuries, the full extent of which will be established through competent evidence at trial.

**D. Non-Economic Damages**

137. Plaintiff has suffered emotional distress, mental anguish, anxiety, frustration, humiliation, inconvenience, and loss of peace of mind resulting from Defendant's negligent operational conduct.

138. Plaintiff has experienced prolonged financial uncertainty, disruption of his daily life, loss of security associated with disability benefits, and diminished quality of life.

139. These non-economic injuries were the natural, direct, and foreseeable consequence of Defendant's negligent operational acts and omissions.

**E. Continuing and Consequential Damages**

140. Plaintiff continues to sustain damages that are ongoing in nature and reasonably expected to continue beyond the filing of this action.

141. Plaintiff is entitled to recover all past, present, and future compensatory damages proven at trial, including damages that naturally and proximately resulted from Defendant's negligence.

142. Plaintiff reserves the right to supplement the evidence supporting his damages through discovery, expert testimony, documentary evidence, and other admissible proof as permitted by the Federal Rules of Civil Procedure.

**F. Proximate Cause**

143. Each category of damages alleged herein was directly and proximately caused by the negligent operational acts and omissions of employees of the United States acting within the course and scope of their federal employment.

144. Plaintiff's injuries were reasonably foreseeable and would not have occurred absent Defendant's negligent operational conduct.

145. Plaintiff is entitled to recover all compensatory damages authorized by the Federal Tort Claims Act and Illinois common law, together with taxable costs and such other relief as the Court deems just and proper.

**G. Causal Nexus Between Each Count and Plaintiff's Damages**

146. Each Count alleged in this Complaint proximately caused a distinct, though overlapping, category of the damages described in this Section. The causal relationship between each Count and Plaintiff's damages is set forth below to assist the Court in evaluating proximate cause as to each theory of liability.

147. The negligent performance of operational benefit administration alleged in Count I directly and proximately caused administrative burden and delay in navigating the interruption of Plaintiff's Railroad Retirement disability-annuity benefits, the resulting interruption of Medicare coverage, and the past economic, medical, and non-economic damages described in Sections VIII.A through VIII.D — independent of the value of the annuity itself, which is not a component of the damages sought.

148. The negligent interagency coordination and benefit implementation alleged in Count II directly and proximately caused delays and interruptions in the administration of Plaintiff's benefits, resulting economic losses, and the continuing and consequential damages described in Sections VIII.A, VIII.B, and VIII.E.

149. The failure to perform prescribed record-review and verification procedures and evidentiary development alleged in Count III — including Defendant's failure to afford Plaintiff fair notice and an opportunity to respond before deciding the newly expanded scope of his appeal, and Defendant's failure to verify the accuracy of its own records characterizing Plaintiff's criminal conviction — directly and proximately caused the confusion, delay, administrative burden, and emotional distress Plaintiff experienced navigating the September 18, 2025 reversal process, and the resulting non-economic and consequential damages described in Sections VIII.A and VIII.D, independent of, and without regard to, whether the reversal itself is ultimately upheld or set aside on Plaintiff's pending Petition for Review.

150. The negligent implementation of administrative determinations alleged in Count IV directly and proximately caused inaccuracies and delays in the execution of Plaintiff's benefit determinations, resulting in the past and future economic damages described in Sections VIII.A and VIII.B.

151. The negligent operational accounting and financial administration alleged in Count V directly and proximately caused miscalculation, mishandling, and mismanagement of Plaintiff's benefit and restitution-related accounting, resulting in the financial losses documented in Exhibit H and described in Sections VIII.A and VIII.B.

152. The negligent operational preservation, management, and handling of administrative evidence alleged in Count VI directly and proximately caused confusion, delay, and

51

emotional distress in the administration of Plaintiff's claim, resulting in the non-economic and continuing damages described in Sections VIII.D and VIII.E.

## H. No Double Recovery; Scope of Damages

153. The damages described in this Section and prayed for in Section IX do not include, and are not intended to duplicate, the value of the Railroad Retirement disability annuity itself or any right to reinstatement, recalculation, or continued receipt of that annuity, which relief — if any — is sought exclusively in Plaintiff's pending Petition for Review, Hill v. Railroad Retirement Board, No. 26-2060 (7th Cir.). The damages sought in this action are limited to: (i) the administrative burden, delay, and related costs of navigating the September 18, 2025 reversal and its aftermath; (ii) out-of-pocket medical, financial, and other consequential costs proximately caused by the operational failures alleged in Counts I through VI, independent of the substantive correctness of any underlying benefits determination; and (iii) the related non-economic harms described in Section VIII.D. To the extent any category of damages awarded in this action is later found to overlap with relief obtained in No. 26-2060, Plaintiff agrees that the overlapping amount shall be resolved by offset rather than duplicative recovery. See 32 C.F.R. § 750.33(c); Overton v. United States, 619 F.2d 1299, 1306 (8th Cir. 1980).

## IX. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Demetris Hill respectfully requests that this Court enter judgment in his favor and against Defendant United States of America and award the following relief:

    A. Compensatory damages in an amount to be determined at trial, not exceeding the sum certain of $733,900 presented in Plaintiff's administrative claim, except as permitted by 28 U.S.C. § 2675(b);

    B. Past and future economic damages, including medical expenses, out-of-pocket expenses, administrative and consequential costs incurred navigating the interruption of disability-annuity benefits, and all other pecuniary losses proximately caused by Defendant's negligent operational acts and omissions, exclusive of the value of the annuity itself;

C. Past and future non-economic damages, including compensation for emotional distress, mental anguish, inconvenience, loss of normal life, and other compensable injuries recoverable under applicable law;

D. Recovery of all taxable costs authorized by Federal Rule of Civil Procedure 54(d), 28 U.S.C. § 1920, and other applicable provisions of law;

E. Prejudgment interest only to the extent expressly authorized by applicable law;

F. Post-judgment interest as provided by 28 U.S.C. § 1961;

G. Such additional or alternative relief as the Court determines is authorized by law and appropriate under the circumstances of this action.

Plaintiff further demands judgment against Defendant United States of America on all counts of this Complaint and requests that the Court retain jurisdiction until final judgment has been fully satisfied.

Respectfully submitted,

DATED: August 3, 2026

/s/ Demetris Hill

Demetris Hill

Plaintiff, Pro Se

3123 Ridge Avenue

Macon, Georgia 31204

Telephone: (478) 250-5740

Email: dhill@sparcleanpcs.com

## X. CERTIFICATE OF SERVICE

I, Demetris Hill, certify that a true and correct copy of this Complaint will be served upon the Defendant United States of America in accordance with Rule 4(i) of the Federal Rules of Civil Procedure after issuance of summons by the Clerk of Court.

Service will be made upon:

1. The United States Attorney for the Northern District of Illinois, or the civil-process clerk designated by that office;

2. The Attorney General of the United States, U.S. Department of Justice, Washington, D.C.; and

3. The Railroad Retirement Board, through its Office of General Counsel.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 3, 2026

/s/ Demetris Hill

Plaintiff, Pro Se

3123 Ridge Avenue

Macon, Georgia 31204

Telephone: (478) 250-5740

Email: dhill@sparcleanpcs.com

## XI. EXHIBIT INDEX

The following exhibits are referenced throughout this Complaint and are identified by category consistent with Fed. R. Civ. P. 11(b)(3). As of the date of this filing, Exhibits A, B, C, F, G, H, and I are physically attached to this Complaint as appendices immediately following the Certificate of Service (see Section XII. APPENDIX), beginning at the pages indicated in the Table of Contents; Exhibits D and E are not separately attached but are cited throughout this Complaint by exact pin cite to the certified companion 7th Cir. Administrative Record, consistent with Plaintiff's practice of citing rather than duplicating documents already part of that certified record. Specific descriptions and page ranges for each exhibit are set forth in the table below. Plaintiff will attach, or make available upon request or during discovery, true and correct copies of each remaining exhibit listed.

| Exhibit | Description | Evidentiary Status (Rule 11(b)(3)) |
| --- | --- | --- |
| Exhibit A | Railroad Retirement Board administrative records, disability determinations, reinstatement notices, benefit calculations, correspondence, payment records, and | IN HAND — physically attached hereto as Exhibit A, pp. 66–102 (excerpted |

|  |  |  |
|---|---|---|
|  | related claim-administration documents. | from the certified companion 7th Cir. Administrative Record at AR A016–A024, A027–A053; intervening pages A025–A026 excluded) |
| **Exhibit B** | Standard Form 95, supplemental administrative claim submissions, supporting documentation, certified mailing records, and the Railroad Retirement Board's Final Denial Letter dated March 4, 2026, establishing administrative exhaustion under 28 U.S.C. § 2675(a). | IN HAND — physically attached hereto as Exhibit B, pp. 103–111 (Standard Form 95 Administrative Claim, cover letter, and continuation sheets, Dec. 13, 2025, together with the Railroad Retirement Board's Final Denial Letter, Mar. 4, 2026) |
| **Exhibit C** | Office of General Counsel FOIA production, including internal emails, memoranda, correspondence, and related records concerning expansion of Plaintiff's administrative appeal, consultation with the Office of Inspector General, evidentiary development, Department of Justice coordination, accrual processing, accounting discussions, and reversal of Plaintiff's disability reinstatement. | IN HAND — physically attached hereto as Exhibit C (Sub-Exhibits C-1 through C-22, selected from the Office of General Counsel's FOIA production, OGC-2026-0956); remaining pages of the production available upon request or during discovery |
| **Exhibit D** | Administrative Record excerpts, hearing transcripts, Hearing Officer decisions, Board decisions, appeal documents, and related materials concerning the administration of Plaintiff's disability claim. | IN HAND — confirmed in the certified companion 7th Cir. Administrative Record (AR A001–A300); cited throughout this Complaint by pin cite rather than duplicated as a separate appendix |
| **Exhibit E** | Medical records, disability evaluations, consultative examinations, treating-provider opinions, QTC examination records, Medicare documentation, and other medical evidence establishing Plaintiff's disabling conditions and resulting damages. | IN HAND — confirmed in the certified companion 7th Cir. Administrative Record (AR A035–A036, A037– |

55

| | | A043); cited by pin cite rather than duplicated as a separate appendix |
|---|---|---|
| **Exhibit F** | Railroad Retirement Board accounting records, payment histories, accrual calculations, benefit-payment records, restitution-related accounting documents, Department of Justice Financial Litigation Unit correspondence, and other financial-administration records. | IN HAND — physically attached hereto as Exhibit F, pp. 136–138 (November 13, 2024 Railroad Retirement Board Continuing Disability Review Decision letter, "Janice Epstein for Sherita Boots," Director of Disability Benefits Division, AR A161–A162 (Ex. 12)); together with Office of General Counsel FOIA production accounting memoranda and correspondence (see Exhibit C, Sub-Exhibits C-4, C-12 through C-15, C-20) and remaining Administrative Record accrual records cited by pin cite |
| **Exhibit G** | Social Security Administration records, disability determinations, earnings records, benefit coordination documents, offset calculations, Medicare records, and interagency correspondence relating to Plaintiff's disability benefits. | IN HAND — physically attached hereto as Exhibit G, pp. 139–144 (Social Security Administration Detailed Earnings Statement, secure.ssa.gov, Work Years 1985–2025, and Estimated Total Taxes Paid Summary, at pp. 139–142; and April 21–26, 2013 email correspondence between Plaintiff and Railroad Retirement Board Duluth |

56

| | | |
|---|---|---|
| | | District Office Manager Dawn R. Barto, at pp. 143–144); the September 19, 2017 Fully Favorable ALJ decision comprising the remainder of Exhibit G is confirmed in the certified companion 7th Cir. Administrative Record (AR A065–A069, partial duplicate at A076) and continues to be cited by pin cite rather than duplicated as a separate appendix |
| **Exhibit H** | Supporting evidence of damages, including medical bills, healthcare expenses, correspondence regarding interruption of medical treatment and Medicare coverage, out-of-pocket expenses, financial-loss documentation, travel expenses, administrative costs, and other documents supporting Plaintiff's claimed compensatory damages.<br><br>**Exhibit H-1 —** Skin Care Physicians of Georgia, PC billing statement (Invoice No. A-240994; Acct. No. 122620), statement dated January 26, 2026, for services rendered July 9, 2025, reflecting a patient balance of $165.63.<br><br>**Exhibit H-2 —** Collection correspondence from a private tax-resolution company (not the Internal Revenue Service), recorded/mail-dated February 9, 2026 through March 25, 2026, referencing a purported federal income tax lien of $59,802.00 and offering a proposed settlement of $14,950.50, submitted as evidence of the financial distress alleged herein.<br><br>**Exhibit H-3 —** Aylo Health billing statement (Guarantor No. 612632), statement dated April 12, 2026, reflecting an amount due of $2,275.00.<br><br>**Exhibit H-4 —** Aylo Health billing statement (Guarantor No. 612632), statement dated May 10, 2026, reflecting an amount due of $1,730.00.<br><br>**Exhibit H-5 —** Gastroenterology Associates of Central GA, LLC billing statement and itemized charge history (Acct. No. 8-4160918), statement dated April 9, 2026, | IN HAND — physically attached hereto as an appendix to this Complaint (Exhibits H-1 through H-9, pp. 145–165); additional items to be supplemented |

reflecting an amount due of $2,945.00, including itemized claims for services from Georgia Cardiology Associates, the Endoscopy Center of Middle Georgia, and related providers from 2021 through 2026.

**Exhibit H-6 —** Southeast Diabetes, Inc. past-due account / final demand notice (Acct. No. 23517), dated June 11, 2026, reflecting a total past-due balance of $728.96.

**Exhibit H-7 —** Chase Card Services settlement-offer correspondence, dated February 9, 2026, regarding an account with an unpaid balance of $10,998.70 and a proposed settlement of $4,399.48.

**Exhibit H-8 —** Georgia Department of Revenue Statement of Taxpayer's Account(s) (Letter ID L0650583048), issued February 14, 2026, reflecting a total balance due of $13,081.49 in tax, penalty, and interest.

Exhibit H-9 — Vallant Bank loan past-due notice, dated July 1, 2026, reflecting a total past-due balance of $3,048.74, submitted as further evidence of the financial distress alleged herein.

| | | |
|---|---|---|
| **Exhibit I** | Certified copies of publicly filed federal court records, including relevant pleadings, judgments, appellate filings, and other judicial records referenced in this Complaint to establish chronology, administrative actions, and related factual background, where appropriate. | IN HAND — physically attached hereto as Exhibit I, pp. 166–184 (United States v. Hill, No. 23-10289, 119 F.4th 862 (11th Cir. Oct. 4, 2024), published opinion affirming Plaintiff's convictions for theft of government property, 18 U.S.C. § 641, and false claims to the Railroad Retirement Board, 18 U.S.C. § 287) |

## XII. APPENDIX

The Appendix contains selected documents referenced throughout this Complaint that provide chronological context, support factual allegations, and assist the Court in locating the evidentiary materials upon which Plaintiff's claims are based. The Appendix is provided solely for the

convenience of the Court and does not limit Plaintiff's reliance upon any exhibit, discovery material, stipulation, or admissible evidence presented during the course of this litigation. **Evidentiary status flag:** as of the date of this filing, the Appendix materials below are drafting aids summarizing evidence described in the Exhibit Index above; they have not been separately compiled or attached and are not independent factual allegations.

### Appendix A — Chronology of Material Events

A comprehensive timeline of the material events underlying Plaintiff's disability claim, administrative proceedings, benefit reinstatement, subsequent benefit termination, administrative claim under the Federal Tort Claims Act, and resulting damages. [Status: compiled from Exhibits A, B, C, D, and I; see Appendix B below for the Administrative Decision Index with pin cites.]

### Appendix B — Administrative Decision Index

An index identifying the principal administrative determinations, correspondence, notices, hearing decisions, Board decisions, and related agency actions referenced throughout the Complaint, with pin cites to the certified companion 7th Cir. Administrative Record ("AR") and to Exhibit C (Office of General Counsel FOIA production). [Status: compiled from Exhibits A, C, and D.]

• Dec. 19, 2012 — RRB disability freeze letter (Director John A. Bognar, Disability Benefits Division), establishing a disability freeze effective December 10, 2010 and Medicare entitlement beginning June 1, 2013, denominated "Exhibit 4" in the underlying agency record; accompanying October–December 2012 Disability Briefing Document, Activities of Daily Living Worksheet, and Disability Decision Rationale (Form G-325.1), Disability Claims Examiner Lycrecia V. Graves and Disability Examiner Evelyn L. Johnson, granting Plaintiff a total and permanent disability annuity based on bipolar disorder, status-post colectomy with incontinence, and right shoulder degenerative joint disease. AR A022, A027–A034.

• Apr. 21–26, 2013 — Email correspondence between Plaintiff and Railroad Retirement Board Duluth District Office Manager Dawn R. Barto regarding the Board's proposed recovery of a Social Security Administration overpayment (SSA-calculated total of $52,901.00, consisting of $34,649.00 attributed to Plaintiff and $18,252.00 attributed to his minor child) from Plaintiff's Railroad Retirement Tier I accrual. Exhibit G, pp. 143–144.

59

• Sept. 19, 2017 — Social Security Administration "Fully Favorable" decision, ALJ Melinda K. Hart, finding Plaintiff disabled. AR A065–A069 (partial duplicate at A076); corroborated by Plaintiff's Social Security Administration Detailed Earnings Statement (secure.ssa.gov) reflecting $0.00 in taxed Social Security and Medicare earnings for tax years 2016, 2017, and 2021–2025. Exhibit G, pp. 140–142.

• Nov. 12–13, 2024 — Disability Decision Rationale (Form G-325.1) reinstating Plaintiff's annuity, signed by Disability Examiner Janice Epstein, countersigned by Kevin Rodevich. AR A044–A045, A159–A160 (Ex. 11).

• Nov. 13, 2024 — Continuing Disability Review Decision letter, "Janice Epstein for Sherita Boots." AR A161–A162 (Ex. 12) (partial duplicates at A047, A189); now physically attached as Exhibit F, pp. 137–138.

• Jan. 22, 2025 — RRB reinstatement letter formally confirming reinstatement of Plaintiff's disability annuity effective January 1, 2023. AR A023–A024.

• July 11, 2025 — Hearing Officer Daniel Moss's notice expanding the scope of Plaintiff's pending appeal to include whether the November 13, 2024 reinstatement was itself correct. AR A005.

• Aug. 13, 2025 — RRB hearing transcript, Hearing Officer Moss presiding. AR A270–A300 (including Plaintiff's testimony at A285 and A292–A293).

• Sept. 18, 2025 — Hearing Officer decision (No. 25-234, Appeal No. 25-0189) reversing the reinstatement and terminating Plaintiff's annuity retroactive to July 31, 2017. AR A061–A064 (fuller copy A085–A101); transmittal email, Ex. C-3.

• On or about early October 2025 — Plaintiff's own pro se letter to the Board requesting review of Hearing Officer Moss's recommendation, contesting the September 18, 2025 trial-work-period/substantial-gainful-activity finding, raising due-process and evidentiary objections, and citing Internal Revenue Service wage and income records for tax years 2016 and 2017 as showing no reportable self-employment income for those years. AR A015–A020.

• Oct. 21, 2024 (obtained by the agency; cited by Plaintiff in his October 2025 letter, above) — Internal Revenue Service Wage and Income Transcripts for tax years 2016 and 2017 (SparClean Premier Cleaning Solutions Schedule K-1s reflecting $(129.00) and $(1,267.00), respectively —

60

negative amounts, not income), Form SSA-1099 Benefits Statement, and Form 1099-INT (Morris Bank). AR A048–A052.

• Mar. 24, 2026 — Board Order 2026-28, affirming the Hearing Officer's decision. AR A001–A016; implementation memorandum, AR A084; certified transmittal correspondence, Ex. C-19.

**Appendix C — Medical Evidence Summary**

A summary identifying Plaintiff's principal medical conditions, disability evaluations, treating-provider opinions, consultative examinations, Medicare history, and related medical documentation supporting damages, with pin cites to the certified companion 7th Cir. Administrative Record. [Status: compiled from Exhibit E and Exhibit H.]

• 2012 Disability Briefing Document, Activities of Daily Living Worksheet, and Disability Decision Rationale (Disability Claims Examiner Lycrecia V. Graves; Disability Examiner Evelyn L. Johnson, signed December 19, 2012) — establishing Plaintiff's original disability onset of December 10, 2010 based on bipolar disorder, status-post colectomy with incontinence, and right shoulder degenerative joint disease, the same underlying conditions later reconfirmed by the October 14, 2024 consultative examinations below. AR A027–A034.

• Dr. Dwayne L. Clay, D.O. (orthopedic) — Oct. 14, 2024 medical statement documenting Plaintiff's musculoskeletal impairments. AR A035–A036.

• Dr. Dwight A. Owens (QTC psychiatric evaluation) — Oct. 14, 2024 consultative psychiatric examination documenting Plaintiff's bipolar disorder and related mental impairments. AR A037–A043.

• Sept. 19, 2017 Social Security Administration "Fully Favorable" decision (ALJ Melinda K. Hart) — finding Plaintiff disabled and establishing the medical basis for his subsequent railroad disability annuity award. AR A065–A069 (partial duplicate at A076).

• Ongoing treatment billing records (Skin Care Physicians of Georgia; Aylo Health; Gastroenterology Associates of Central GA) documenting continuing treatment for the conditions above and the financial impact of the benefit interruption. Exhibits H-1, H-3, H-4, H-5.

**Appendix D — Financial Loss Summary**

A summary of disability-annuity losses, medical expenses, out-of-pocket expenditures, benefit interruptions, accounting-related losses, and other compensable economic damages alleged in this action, including medical-provider balances totaling approximately $7,844.59 (Exhibits H-1 and H-3 through H-6), collection correspondence referencing a purported $59,802.00 federal tax lien with a $14,950.50 proposed settlement (Exhibit H-2), a Chase Card Services settlement offer on a $10,998.70 unpaid balance (Exhibit H-7), and a Georgia Department of Revenue statement reflecting a $13,081.49 balance (Exhibit H-8), and a Vallant Bank loan past-due notice dated July 1, 2026 reflecting a $3,048.74 balance (Exhibit H-9). The certified companion Administrative Record additionally reflects a March 3, 2025 U.S. Department of the Treasury, Bureau of the Fiscal Service Treasury Offset Program notice advising Plaintiff that up to fifteen percent of his monthly benefit would be withheld beginning no sooner than May 2025 to satisfy a restitution debt referred by the U.S. Attorney's Office, Middle District of Georgia, Financial Litigation Unit (Acct. No. GAM2023A18253001). AR A021. [Status: Exhibits H-1 through H-9 attached; Treasury Offset Program notice cited by pin cite to the certified companion Administrative Record; Exhibit F (the November 13, 2024 Railroad Retirement Board Continuing Disability Review Decision letter, AR A161–A162) physically attached hereto at pp. 137–138.]

**Appendix E — Evidentiary Reference Table**

The following table cross-references the principal factual allegations in this Complaint, organized by paragraph range, against the corresponding Exhibits A through G identified in the Exhibit Index above that support those allegations, consistent with Plaintiff's evidentiary obligations under Fed. R. Civ. P. 11(b)(3). As of this filing, Exhibits A, B, C, D, E, F, and G are in hand (Exhibit A physically attached as excerpted Administrative Record pages AR A016–A024, A027–A053; Exhibit B physically attached as the Standard Form 95 Administrative Claim, Dec. 13, 2025, and Railroad Retirement Board Final Denial Letter, Mar. 4, 2026 (pp. 103–111); Exhibit C physically attached as Sub-Exhibits C-1 through C-22; Exhibit F physically attached as the November 13, 2024 Railroad Retirement Board Continuing Disability Review Decision letter (AR A161–A162, pp. 137–138); Exhibit G physically attached in part as the Social Security Administration Detailed Earnings Statement (pp. 140–142) and the April 2013 Hill/Barto Email Correspondence (pp. 143–144), with the September 19, 2017 Fully Favorable ALJ decision comprising the remainder of Exhibit G cited by pin cite to the certified companion

Administrative Record; Exhibits D and E cited by pin cite to the certified companion Administrative Record), and citations below have been updated accordingly. Exhibit H (already physically attached as an appendix to this Complaint, see Appendix D above) and Exhibit I (now physically attached as Exhibit I, pp. 166–184, United States v. Hill, 119 F.4th 862 (11th Cir. 2024)) are not separately re-tabulated here because they are independently indexed elsewhere in this Complaint.

| Complaint Paragraphs | Principal Factual Allegation | Supporting Exhibit(s) (A–G) |
|---|---|---|
| ¶¶ 14–18 (Parties) | Plaintiff is the RRB disability claimant and proper FTCA plaintiff; RRB employees acted within the course and scope of federal employment. | A |
| ¶¶ 19–24 (Administrative Exhaustion) | Plaintiff's December 13, 2025 Standard Form 95 submission, supplemental documentation, and RRB's March 4, 2026 final written denial establishing timely exhaustion under 28 U.S.C. § 2675(a). | B |
| ¶¶ 25–28 (V.A – Disability History) | Plaintiff's qualifying medical impairments, initial award of a railroad disability annuity, disability freeze, and Medicare entitlement determination. | A, E (AR A035–A036, A037–A043, A065–A069) |
| ¶¶ 29–32 (V.B – Administration of Claim) | RRB's decade-plus continuing administration of Plaintiff's claim, including interagency communication with the Social Security Administration, payment processing, and record maintenance. | A, G (AR A065–A069) |
| ¶¶ 33–36 (V.C – Reinstatement) | November 13, 2024 reinstatement notice; December 26, 2024 Office of Public Affairs confirmation; January 22, 2025 formal reinstatement notice; and March 26, 2025 Reconsideration Section confirmation of the $58,529 accrued-benefit determination. | A, F (AR A044–A045, A159–A160, A161–A162); AR A025–A026 (pin cite only, not part of physically attached Exhibit A) |
| ¶¶ 37–40 (V.D – Criminal Case) | Plaintiff's jury trial and conviction in United States v. Hill; the Eleventh Circuit's affirming opinion; and Alan Childs's bank-fraud conviction concerning the Morris Bank loan application (public federal court records). | I (physically attached, pp. 166–184; see Exhibit Index; not separately re-tabulated) |
| ¶¶ 41–42 (V.D – Recordkeeping Errors) | RRB Reconsideration Specialist Kenneth Claxton's written correspondence mischaracterizing Plaintiff's jury conviction as a "guilty plea." | — (AR A025–A026, pin cite only; not part of physically attached Exhibit A) |

63

| | | |
|---|---|---|
| ¶¶ 44–54 (Count I – Negligent Operational Benefit Administration) | Breaches in maintaining accurate earnings/disability-status records, reconciling reinstatement records, accounting for and crediting accrued benefits toward restitution, coordinating Medicare entitlement, and quality-control failures. | A, C, E, F, G (Ex. C-3, C-4, C-8, C-10; AR A044, A061–A064) |
| ¶¶ 56–66 (Count II – Negligent Interagency Coordination) | Breaches in reconciling RRB and Social Security Administration records, coordinating Medicare-eligibility records, and verifying consistent implementation of the September 18, 2025 reversal across agency systems. | E, F, G |
| ¶¶ 68–78 (Count III – Negligent Investigation) | July 11, 2025 appeal-expansion notice; January 2026 Office of General Counsel/Office of Inspector General internal communications; September 18, 2025 Hearing Officer decision; March 24, 2026 Board Order No. 2026-28; and failure to verify the Childs loan-application evidence. | C, F, I (Ex. C-8, C-10; AR A001–A016, A025–A026, A061–A064, A084, A085–A101) |
| ¶¶ 79–90 (Count IV – Negligent Implementation) | Failures to accurately execute reinstatement determinations across administrative systems, including the October 1, 2024 and February 4, 2025 Medicare card issuances and reconciliation of the December 26, 2024 and March 26, 2025 confirmations. | A, D, E |
| ¶¶ 91–102 (Count V – Negligent Accounting) | December 2024 Reinstatement Award Notice, March 26, 2025 Reconsideration confirmation of the $58,529 accrual, and failure to coordinate accounting treatment with the Department of Justice Financial Litigation Unit's restitution-collection records. | B, F |
| ¶¶ 103–114 (Count VI – Negligent Preservation of Evidence) | Omissions from the certified Administrative Record of the Medicare cards, Office of General Counsel/Office of Inspector General communications, Office of Public Affairs correspondence, Reconsideration Section confirmation, and the Claxton correspondence. | A, C, E (Ex. C-5, C-11; AR A083) |
| Damages allegations (Sections V– VIII, all Counts) | Medical conditions, treatment history, and healthcare-related damages; financial and accounting losses arising from disability-benefit interruption. | E (medical); F (financial/accounting); see also Exhibit H (Appendix D) for itemized damages documentation already attached; AR A021 (Treasury Offset Program notice) |

**Appendix F — Acronyms and Defined Terms**

A reference identifying abbreviations and defined terms used throughout this Complaint, including, where applicable:

- RRB — Railroad Retirement Board
- SSA — Social Security Administration
- OGC — Office of General Counsel
- OIG — Office of Inspector General
- DOJ — Department of Justice
- FLU — Financial Litigation Unit
- FTCA — Federal Tort Claims Act
- AR — Administrative Record
- SF-95 — Standard Form 95

The Appendix is incorporated by reference solely as an organizational aid and does not constitute additional causes of action or independent factual allegations beyond those expressly pleaded in this Complaint.

Demetris Hill v. United States of America

U.S. District Court, N.D. Illinois, Eastern Division

## **EXHIBIT A**

Railroad Retirement Board Administrative Records

Excerpted from the Certified Companion 7th Cir. Administrative Record

(AR A016–A024, A027–A053)

Appendix to Complaint

*Note: AR pages A025–A026 — a March 26, 2025 letter to Plaintiff from RRB Reconsideration*
*Specialist Kenneth Claxton — were omitted from this excerpted exhibit but have since been*
*independently located and confirmed in the certified record filed in the related appeal,*
*Hill v. Railroad Retirement Board, No. 26-2060 (7th Cir.); see Complaint ¶ 41.*

Demetris Hill Sr
3123 Ridge Avenue
Macon, Georgia
31204

Adam Hames
511 Paces Ferry Road
NE, Atlanta Georgia
30305.

## RRB 3 PANEL APPEAL

## CHICAGO ILLINOIS

RAILROAD RETIRNMENT BOARD,

   Plaintiff,

vs.

DEFENDANT'S NAME,

   Demetris Hill Sr

Case No.: Number
25-0189
SS# 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

REVIEW OF NON- PHYSICIAN DANIEL MOSS HEARING OFFICER RECOMMENDATION INCLUDING IMMEDIATE CEASE OF BENEFITS BOTH MONETARY AND MEDICAL FOR DISABLED ANNUITANT DEMETRIS HILL

As I contact your office today in the hopes of fairness and proper procedure, we have studied the recommendation put in place by **Daniel Moss on September 23rd, 2025, & days before the beginning of the month of October and at a time when the Government is shut down, Causing immediate hardships to annuitant Demetris Hill**

   This inhumane act caused a negative effect of Mr. Hills very existence, an Extreme Hardship by

- **Not being able to pay rent**

- **Not being able to pay for life saving medicines**

- **Food**

- **Utilities**

- **Basic living needs**

- **Co-pays for Dr. Visits**

- **Much needed testing**

REVIEW OF NON- PHYSICIAN DANIEL MOSS HEARING OFFICER RECOMMENDATION INCLUDING IMMEDIATE CEASE OF BENEFITS BOTH MONETARY AND MEDICAL FOR DISABLED ANNUITANT DEMETRIS HILL - 1

<span style="color:red">A016</span>

It is high time this board uses its discretion and experience to avoid further actionable harm unnecessarily.

Let's review Non-physician Daniel Moss's recommendation that was acted upon within a 7-day period.

Based on the evidence, there is a significant contradiction with the RRB regarding my claim. The hearing officers ( Daniel Moss) stoppage of benefits based on past "trial work period" is directly contested by the RRB;s own disability department, the IRS and Mr. Hill which states that no such work period exist, This internal disagreement, is not reflected in the lower courts conviction and appeals Courts upholding the ruling because it had not been received.

The fact that Mr. Hill provided the necessary information informing the RRB that his monetary proceeds were documented incorrectly ( *not as income but return on investment, capital gain*) not being recorded correctly resulted in a conviction, a jail sentence. The Hearing officer's stance is applying a common rule from social security that allows beneficiaries to test their ability to work for at least nine months without losing their benefits. If the Hearing officer believes I worked (which I did not) he can recommend my benefits end. The Disability Department disagrees, stating in writing and followed by a rational decision that no trial work period exists. Based on the latest physician review I remain totally and permanently disable in a degenerative state that will last for life. This report was done and completed in October of 2024 by the RRB physicians and mirrors the 2012 review one of whom is also a certified lawyer for the department of Veteran affairs. The RRB owns regulations require disability decisions to be based on medical evidence and that due process is a must. No medical reports or experts were used and asked to explicitly be left out of court proceedings by the fourth District of Macon Federal court by Joy Odom "prosecutor" so no one including the jury has ever seen my true condition, your office has the reports as to I can only be seen by RRB authorized Physicians. The Hearing officer's decision is not based or supported by any medical evidence of or by the RRB own experts Therefore the Hearing officer's decision is erroneous because it contradicts the official findings of the Disability Departments no trial period occurred and that current

REVIEW OF NON- PHYSICIAN DANIEL MOSS HEARING OFFICER RECOMMENDATION INCLUDING IMMEDIATE CEASE OF BENEFITS BOTH MONETARY AND MEDICAL FOR DISABLED ANNUITANT DEMETRIS HILL - 2

medical evidence supports my disability. I served my time in prison and further have backed my allegations by IRS wage statements for the years 2016 and 2017. What Daniel Moss did was single handedly dismantled the courts   indictment and conviction as to their investigation begins in 2016 followed by 2017. None of these years show an influx of cap overage for any of these years in fact they show Zero dollar amounts and therefore cannot be used as reported as overage or trial work periods, income or theft of funds. Mr. Demetris Hill has also been notified that Alan Child a confidential informant and President of Morris Bank forged the bank applications stating I will pay back loans with business proceeds. The Jury never heard it.

This exculpatory evidence was withheld from Mr. Hills trial without his *__knowledge a direct violation of my 5th ,6th, and 14th amendments rights. We have also not yet finished the process which allows due process before benefits can be withheld and is yet another violation of my rights according to the ADA, and DOJ, and EEOC__*. Daniel Mosses finding exculpates Mr. Hill of any wrong- doing, the RRB never claimed any victimization or overpayments. The RRB clearly has internal conflicts which led to my conviction. Although Mr. Daniel Moss says my word cannot be creditable, The RRB has had many rulings overturned by the Supreme court which questions your credibility as well. Here we have clear undisputed facts from expert witnesses in both the medical and legal fields.

I have been significantly harmed and DEMAND to be made whole. It is our suggestion that the RRB reinstate Mr. Hill benefits immediately without delay until all evidence can be reviewed and a fair decision can be determined. I have filed complaints with all agencies able to intervene as well as shown proof that the fourth district of Macon Georgia federal court lied to the public by stating I pleaded guilty to these violations. That due process is not yet complete as well. I pray the RRB does the right thing and follows your own rules and guidelines and removes yourself from further harm by doing the right thing. Without the medical benefits and monetary benefits after being wrongly convicted and incarcerated my disabilities have further declined beyond their normal trajectory time span. Without those lifesaving medications and care I will DIE. For more information, please see section 404.1592 Code of Federal

REVIEW OF NON- PHYSICIAN DANIEL MOSS HEARING OFFICER RECOMMENDATION INCLUDING IMMEDIATE CEASE OF BENEFITS BOTH MONETARY AND MEDICAL FOR DISABLED ANNUITANT DEMETRIS HILL - 3

A018

Regulations. No other department including the Judicial branch can decide on disability without a certified medical review which was not present in the lower Court, Appellate court of the Hearing Officers recommendation.

- We respectfully ask What Mr., Daniel Moss medical certifications are
- Where did he graduate from post High school education
- Where did he attend post Medical educational training
- Did he graduate
- Where was his residence completed at
- A copy of his medical license
- Years of field training at a certified medical facility.
- Did he review the RRB medical files.

The original hearing was only to discuss the accrual due Demetris Hill after serving his sentence a balance due to him of $58,000, $4000,00 paid to Medicare while I was incarcerated, how does that help me? I cannot go back and use Medicare nor was more than 15% of total accrual to be held to repay a restitution to the RRB which isn't owed. Somehow Daniel Moss took this opportunity to say the entire Case of the OIG was now invalid because Mr. Hill should have been terminated from disability July 31st, 2017. I expect written, signed documentation sent to the courts and Mr. Hill stating Mr. Hill should not have been investigated or indicted or convicted if Mr., Moss is correct in his findings, If he is incorrect which the evidence proves there still was no theft because Mr. Hill never went over the cap provided by the RRB and per your document which I have submitted marked exhibit A states you do not have to report any earning under the cap, .Mr. Hill cannot do Substantial, gainful employment. Mr. Hill made several calls, and sent written notifications of his investment to His wife's business and has a right to receive return on investment without prosecution based on your rules, While your letter explaining The RRB is not a victim in this tragic racially biased conviction meant to harm a disabled Black man, it could exclude you from further actionable

REVIEW OF NON- PHYSICIAN DANIEL MOSS HEARING OFFICER RECOMMENDATION INCLUDING IMMEDIATE CEASE OF BENEFITS BOTH MONETARY AND MEDICAL FOR DISABLED ANNUITANT DEMETRIS HILL - 4

consequences and prove the RRB stands for Truth Justice and The American way, Somehow we have for gotten the Government is For the People and by the People not withstanding lack of funding and training as shown by oversight congressional reports that plague the RRB. I have also included the most recent Doctors evaluation from 2024 which are indisputable, How Mr. Moss pulled 2016, 2017 out his hat to remove Mr. Hill legitimate claim to his accrual while at the same time canceling the OIG's investigation is your problem. Please do the right thing and stop further punishing Demetris Hill who has already served his wrongful conviction sentence. No where in the lower court's ruling or Appeal does it state Mr. Hill Got better. And will never be disable again, Daniel Moss is unqualified to make that assumption and to act on it within 7 days proves his racism.. I am formally asking for a waiver of any so-called over payments until due process has been completed and to permanently wave any so-called overpayment as to restitution due to the current state of the country the economy the internal conflicts which will cause a life ending Hardship. The RRB owes me.

I have not worked in over 15 years, at age 57, and now I am a Felon, and there are several disabling impairments that get worse every day. it is impossible to find substantial Gainful employment

Sincerely

**DHILL**

_____

Annuitant Name Demetris Hill Sr

without Prejudice UCC 1-308

REVIEW OF NON- PHYSICIAN DANIEL MOSS HEARING OFFICER RECOMMENDATION INCLUDING IMMEDIATE CEASE OF BENEFITS BOTH MONETARY AND MEDICAL FOR DISABLED ANNUITANT DEMETRIS HILL - 5

A020

Case: 26-2060    Document: 4    RESTRICTED    Filed: 06/23/2026    Pages: 302

U.S. Department of the Treasury
Bureau of the Fiscal Service
P.O. Box 1686
Birmingham, AL 35201-1686





03/03/25

## Funds May Be Withheld From Your Railroad Retirement Benefit Payment



DEMETRIUS HILL SR
3123 RIDGE AVE
MACON, GA 31204-2311

A debt you owe has been referred to the U.S. Department of the Treasury (Treasury), Bureau of the Fiscal Service, for collection action. The agency you owe is listed below:

### U.S. ATTORNEY GEORGIA - MIDDLE

Federal law requires Treasury to withhold up to 15 percent of your monthly Railroad Retirement benefit payments because you failed to pay or otherwise resolve this debt. Funds will not be withheld from payments that the Railroad Retirement Board determines to be Tier 2 benefits.

### How Can I Stop This?

Treasury will withhold up to 15 percent of your benefit payment beginning no sooner than 05/2025. To prevent this collection action, you must contact the agency listed below and meet its requirements:

U.S. ATTORNEY GEORGIA - MIDDLE
ATTN: FINANCIAL LITIGATION UNIT
300 MULBERRY STREET, SUITE 400
MACON, GA 31201

**478-621-2727**

Acct Num: GAM 2023A18253001

### What Else Do I Need To Know?

- Only the agency listed under the "How Can I Stop This?" section can assist you in resolving this debt.

- Treasury may withhold funds from your Railroad Retirement benefit payment to collect more than one debt. If you owe more than one debt, Treasury will apply the amount withheld from your payment to each debt in the priority established by federal law.

- Funds will be withheld until the debt is resolved.

- Funds may be withheld from your other federal payments without additional notice.

- Treasury will not withhold funds from your Railroad Retirement benefit payments so that you receive less than $750.00 each month.

  This collection action is administered through the Treasury Offset Program (TOP). If you have questions about the Treasury Offset Program, please visit our website at www.fiscal.treasury.gov/TOP.





**UNITED STATES OF AMERICA**
### RAILROAD RETIREMENT BOARD
**DISABILITY BENEFITS DIVISION**
**844 NORTH RUSH STREET**
**CHICAGO, IL 60611-2092**
WWW.RRB.GOV

OFFICE HOURS: 9:00 AM TO 3:30 PM                    TOLL-FREE NUMBER: 1-877-772-5772
MONDAY THROUGH FRIDAY EXCEPT FEDERAL HOLIDAYS

|,|,|,,|,|,,,,||,,|,|,|,|,,|,||,|                              December 19, 2012

DEMETRIUS HILL SR
15050 CEDAR AVE S
BLDG 116 APT 170
APPLEVALLEY MN  55124

                                              In reply refer to
                                              Demetrius Hill Sr
                                              RRB-MLN-AI3896D

Dear Mr. Hill:

An application for benefits based on disability under the Railroad Retirement Act is also an application for a period of disability ("disability freeze") and early Medicare coverage under the Social Security Act.

A disability freeze has been established for you beginning December 10, 2010.

You are entitled to Medicare coverage beginning June 1, 2013. Enrollment is automatic. No action is required on your part.

Because your condition meets the Social Security Act definition of disability, all or part of the Tier 1 portion of the annuity will be taxed like a social security benefit. In some cases, a disability freeze can increase the amount of the monthly annuity. You will receive a separate explanatory letter or letters within 90 days if the disability freeze:
- affects prior tax years; or
- increases the amount of your monthly annuity.

Notify the Railroad Retirement Board (RRB) promptly if your condition improves; if you are working for pay or you are self-employed, regardless of the amount of earnings; or if you are convicted for a criminal offense. Also, notify the RRB if your doctor says that you can return to work.

Your case may be periodically reviewed to determine whether your condition remains severe enough to prevent any work activity to allow your disability freeze to continue. When your case is reviewed, we may ask you for information and evidence or ask you to report for a medical examination.

If you have any questions about this letter or need additional information, contact our office located at 180 East 5th Street, Suite 195, St Paul, MN  55101. The telephone number is (877) 772-5772.

                              Sincerely,


                              John A. Bognar
                              Director of Disability Benefits Division


Enclosure
  Form AB-32

EXHIBIT____4

A022

**UNITED STATES OF AMERICA**
**RAILROAD RETIREMENT BOARD**
**RETIREMENT BENEFITS DIVISION**
**844 NORTH RUSH STREET**
**CHICAGO, IL 60611-1275**
**WWW.RRB.GOV**

OFFICE HOURS: 9:00 AM TO 3:00 PM                                    TOLL-FREE NUMBER: 1-877-772-5772
MONDAY THROUGH FRIDAY EXCEPT FEDERAL HOLIDAYS

|ıll|ıııll|ıl|ıllıııl|ıl|llııl                              January 22, 2025

DEMETRIUS HILL SR
3123 RIDGE AVE
MACON, GA  31204

                                              In reply refer to
                                              Employee Name:  Demetrius Hill Sr

                                                      RRB-MLN-AI3896D

Dear Mr. Hill:

Your monthly annuity payments have been reinstated effective from January 1, 2023.

PAYMENT SUMMARY

Your annuity consists of separate components.  "Tier 1" is computed under the social security
formula. "Tier 2" is computed under the railroad retirement formula. Benefits will now be paid as
follows:

| EFFECTIVE DATE | TIER 1 | TIER 2 | TOTAL RR RATE |
|---|---|---|---|
| 01-01-2023 | $ 2,503.00 | $  .00 | $ 2,503.00 |
| 12-01-2023 | $ 2,583.00 | $  .00 | $ 2,583.00 |
| 12-01-2024 | $ 2,647.00 | $  .00 | $ 2,647.00 |

All cost-of-living increases to date have been considered in this adjustment.

The Railroad Retirement Board may withhold income tax from your monthly payment if you are a U.S.
citizen and have filed Form RRB W-4P (tax withholding request) with the Railroad Retirement Board.
Income tax will also be withheld if your taxable benefits exceed the minimum mandatory tax
withholding amount and you have not filed a Form RRB W-4P with the Railroad Retirement Board.

U.S. citizens may change the amount of federal income tax withheld from their taxable monthly benefit
by filing Form RRB W-4P. Beneficiaries who reside outside the U.S. and are not citizens may file Form
RRB-1001 to claim any applicable tax treaty exemption. Both forms are available from any field office
of the Railroad Retirement Board.

In addition, the Railroad Retirement Board will release an annual benefit information statement of your
previous yearly railroad retirement payments (Form RRB-1099/1099-R/1042S) by January 31. If you
must file a federal income tax return and you do not receive a statement by March 1, contact the
nearest field office of the Railroad Retirement Board for assistance.

A023

RRB Claim No. A 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
Beneficiary's Name
DEMETRIUS HILL SR

PAYMENT SUMMARY

Rates Payable                                    Rates Previously Paid

| Monthly Rate | From | Through | Total Due | Monthly Rate | From | Through | Total Paid | Difference |
|---|---|---|---|---|---|---|---|---|
| 2,503.00 | 01/01/2023 | 11/30/2023 | 27,533.00 | 0.00 | 01/01/2023 | 11/30/2023 | 0.00 | 27,533.00 |
| 2,583.00 | 12/01/2023 | 11/30/2024 | 30,996.00 | 0.00 | 12/01/2023 | 11/30/2024 | 0.00 | 30,996.00 |

Amount Paid Nov. 2024    58,529.00   -58,529.00

Total $    0.00

Medicare amount $4,075.20 + $200.00 special assessment fee + net accrual due $ 54,253.80 = $58,529.00

A024

# DISABILITY BRIEFING DOCUMENT



Claim Number:   A 353682916
Applicant Name:  Demetrius Hill
Applicant SSA:   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

2500

## General Case Information

The employee, age 44 Years, 4 Months, has 62 months of railroad service and is being rated for a total and permanent disability annuity. The employee has a disability freeze insured status. The disability freeze determination is being deferred because post action is necessary.

The diagnostic code for this employee's impairment is 30005.

## Sequential Evaluation

The employee is not in compensated railroad service and is not working in non-railroad service and earning more than $790 per month ( more than $780 prior to 1-1-12).

The employee is not engaged in Substantial Gainful Activity.

The employee's medical impairment(s) in order of severity include :
bipolar disorder, s/p colectomy with incontinence, R shoulder DJD

Medical impairment is so severe that it has lasted or is expected to last for at least 12 months, or it is expected to result in death.

The impairment equals Impairment Listing 12.04.

A comparison of past relevant work does not apply because the listings are equaled.

## Summary of Medical Findings

M/e dated 12/10 through 7-12 shows the ee's history of bipolar disorder, anxiety, s/p colectomy with incontinence and DJD in the R shoulder.

Psych exam dated 5-23-11 states the ee was a poor historian regarding his mental health. He complained of mood swings, extreme irritability and has punched holes in the wall. He state he has decreased sleep for the past 2 yrs and has nightmares about difficulties with his wife. He also stated he is anxious, has low self esteem and has fatigue, hopelessness, anhedonia, social withdrawl, irritability and physical tension. He also complained about considerable anxiety around bowel functions due to a colectomy with incontinence. On exam the ee was fully oriented and arrived late to the exam. He was mildly difficult to engage due to irritability (it appeared he argued with his wife prior to the exam). His speech was spontaneous, pressured and voluble. He

| Lycrecia V. Graves Disability Claims Examiner | 10/31/2012 | Lycrecia V. Graves Disability Claims Examiner | 10/31/2012 |
|---|---|---|---|
| Examiner Name and Title | Date | Reviewer Name and Title | Date |

A027

Page 1 of 3

G-325B (06-03)

# DISABILITY BRIEFING DOCUMENT

Demetrius Hill - 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

did serial 3's with errors. He remembered 3/3 items after 5 minutes. He could perform simple mathematics. His judgment was adequate and he could interpret proverbs adequately. The ee states he gets up at 6pm in evening and watches tv approx 10-16 hrs a day. He does no housweork and showers every couple of days. His medication included Diazepam.

Psych exam dated 8-15-12 states the ee complained of pain and sleep deprivation. He stated he was not receiving psychiatric care and was not compliant with his psychotrophic medications. He stated he has been prescribed Xanax and Trazodone but he is not taking them because he does not like the way they make him feel. The ee reported to the exam on time and he was fully oriented. His mood was irritated and his affect was congruent. His speech pattern was normal both in quantity and quality. There was no psychomotor retardation or auditory of visual hallucinations. He could perform serial 7's with no error. He could remember 7 digits forward and 3 backwards. ADL's state the ee states the ee has decreased sleep due to pain and incontinence. He showers 4-6 times a day and has assistance from his wife or daughter with dressing and putting clothes over his head. He does not do meal prep because he has burned up the kitchen due to needing to use the restroom. He does drive short distances but his wife, daughter or taxi service drives him. His wife handles the finances which are usually paid on the internet or by phone. He does not have many visitors due to incontinence. He doesn't leave home for more than an hr. He now has limited socialization due to pain and incontinence.

M/e dated 8-15-12 states the ee's b/p was 116/81 and he appeared fatigued. The ee had LOM in the R shoulder (120/150 degrees in flex), L spine (70/90 in flex). There was full ROM in all other extremities. Muscle strength was 4/5 in the RUE and LLE and was 5/5 in all other extremities. There was decreased sensation in the feet and L knee. Grip strength was 4/5 on the R and 5/5 on the L. Manual dexterity was intact. The ee walked with a limping, ataxic gait. He could not heel/toe walk or squat/arise.

All medical evidence in file was reviewed.

## RFC Information

There are no RFCs in file.

SSA gave the ee a light RFC that was further reduced by his physical limitations. They state the ee is considered disabled as of 2-23-11.

CEL gave the ee a light RFC from 12-10 through 7-12. CEL gave the ee a sedentary framework RFC from 8-12.

CEL PRT states the ee's combined mental and physical impairments equal listing 12.04 as of 12-10.

We agree with SSA that the ee is considered disabled. We also believe the CEL PRT onset date of disability is appropriate.

## Disability Annuity Conclusion

Based on the CEL PRT, the ee is no longer able to perform his PRW or other work in the national economy.

| Lycrecia V. Graves Disability Claims Examiner | 10/31/2012 | Lycrecia V. Graves Disability Claims Examiner | 10/31/2012 |
|---|---|---|---|
| Examiner Name and Title | Date | Reviewer Name and Title | Date |

A028

G-325B (06-03)

| Identifying Information | The information contained in this worksheet is to be used when developing activities of daily living. The questions are to be used as guidelines when interviewing the applicant or the person representing the applicant. It is not necessary to ask each question. Rather the information provided can be used as a starting point in the discussion of the applicant's activities of daily living. | | |
|---|---|---|---|
| **Initiated by:**<br>☐ HQ<br>☒ Field | **Date**<br>06/25/2012 | **Name**<br>DEMETRIUS HILL | **RRB Claim Number**<br>A 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 |

**Applicant Name, Address and Telephone Number**

DEMETRIUS HILL
15050 CEDAR AVE S, BLDG 116 APT 170
APPLEVALLEY, MN 55124
(612) 810-4109

| Daily Routine | Describe the applicant's daily routine - Include a discussion of the applicant's usual day and note any changes. |
|---|---|

Applicant states that he wakes up in pain every morning about 7:00 a.m., goes to the bathroom, checks his sugar levels, and takes medication. His spouse or daughter will prepare him breakfast and he eats. His spouse or daughter will then assist him with getting in and out of the shower. He states that after his first meal his spends the rest of the day cleaning himself up after uncontrolled bowel movements. Applicant states that for the last few years of his railroad career he missed a lot work due to sickness and incontinence/diabetes. He retires for bed about 10:00 p.m.

| Sleeping and Rest | Describe the applicant's sleeping habits - Does the applicant have any trouble sleeping; describe any **changes** in the applicant's sleep patterns, what has changed, and when the change occurred; what time does the applicant get up; how does the applicant wake himself/herself; when does the applicant go to bed; how often does the applicant nap. |
|---|---|

Applicant states that he sleeps 2 to 3 hours at a time during the night. He always has problems sleeping due to the pain and passing stools. He states this has been this way since even while working on the railroad the last 7 years. He states he sleeps less and less, waking up about 1:00, 4:00, and 7:00 a.m. each night. He often soils the bed and himself. He states he has aggressive pain and wakes easily. He normally retires for bed between 10:00 and 10:30 p.m. He naps usually after his medications in the morning at 10:00 a.m. and occasionally in the afternoon about 2:00 p.m.

| Personal Hygiene | Describe the applicant's personal grooming habits - How often does the applicant bathe/shower, shave, and change clothes; does the applicant need help with any of the above; describe any **changes** in the applicant's personal grooming habits, what has changed, and when this change occurred. |
|---|---|

Applicant shaves every 4-5 days and cannot groom hair because of foliculitus. He showers 4-6 times daily.. He often has his wife or daughter assist him with showering, dressing, and any lifting of items over his head since shoulder issues have developed. He shaves himself. He states that he grooms less lately due to pain and bowel movement increases. He states during the last 4 months his muscles have deteriorated. Applicant states that since 2005 he has needed greater assistance but prior to 2005 he was able to manage on his own personal caret. He has dealt with the incontinence issue since about age 17.

A029

-2-

DEMETRIUS HILL
A 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

| | |
|---|---|
| **Eating and Meal Preparation** | Describe the applicant's eating habits - What kind of food does the applicant eat *(for example, sandwiches, frozen dinners, soup, full-course meals, etc.)*; describe any **changes** in the way the applicant prepares meals and why and when these **changes** occurred; does anyone help the applicant with meal preparation; if this is a **change**, explain why the applicant needs help and when this **change** occurred; describe any cooking accidents since the applicant's condition began; has the amount of food consumed by the applicant increased or decreased, and, if so, describe why and when the **change** occurred. |

He tries to eat light and cannot eat rich food. He eats foods low in sugar and starch. He often eats 4-5 meals consisting of whole wheats, grains, and organics. He has been more cautious in last 4 months because his glucose levels have not been under control even with his medications. He states his wife and daughter now prepare his meals because he burned down the kitchen at one time due to being in the bathroom. He tries to eat less to stop the lose stools and it is making him weak. Applicant states prior to 2005 he just stayed away from spicy foods, etc. because they would aggravate his stomache and bowels. His diagnosis of diabetes in 2005 has restricted his diet even greater.

| | |
|---|---|
| **Housework and Hobbies** | Describe the applicant's housework, hobbies, and/or odd jobs - What type of housework *(laundry, vacuuming, dusting, mopping floors, washing dishes, etc.)*, hobbies *(reading, listening to radio, watching TV or movies, sports, collecting, church/club organizations, etc.)*, and/or odd jobs *(household repairs, running errands, lawn care, taking out trash, washing the car, mending clothes, etc.)* does the applicant perform; how many hours per day does the applicant spend on housework/hobby/odd job; does the applicant need help doing the housework/hobby/odd job; who does the applicant's housework/hobby/odd job if they are unable; how often does the applicant need help; describe any **changes** in the way the applicant does the housework/hobby/odd job, what has **changed**, and when the **change** occurred. |

Applicant states he does not perform housework. He watches television, listens to music, and reads. He is unable to do much outside the home because of the uncontrolled bowel movements. He is unable to use both his arms for any lifting of items over 3 pounds due to shoulder injury. He will sometimes take out the trash or walk to the mailbox. He spouse and daughter take care of most of the housework. He states that in the last 4 months things have deteriorated even more. Applicant states prior to 2005 he used to play basketball, golf, and bowling but is no longer able to participate in these sports.

| | |
|---|---|
| **Shopping** | Describe the applicant's ability to shop - Does the applicant use a shopping list and, if so, do they prepare the list themselves or does someone else prepare it; what does the applicant usually shop for *(food, clothing, books, magazines, medicine, cigarettes, newspaper, etc.)*; where does the applicant shop; how does the applicant get to the shop; describe any **changes** in the applicant's shopping habits, what has **changed**, and when the **change** occurred. |

Applicant states that from time to time he will go to the store to purchase forgotten items. The store is just a few blocks away. He states because of his inability to carry large quantities and his uncontrollable stools, he does not go far from home. He states his severely flat feet do not allow him to stand for long periods of time and his left knee problems prevents him from walking far. Applicant states he used to be able to shop and leave for longer times prior to 2005 and is even more limited since December 2010.

A030

-3-

DEMETRIUS HILL
A 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

| Transportation | Describe the applicant's ability to use transportation - Does the applicant drive; if the applicant does not drive and this is a **change**, explain why and when this **change** occurred; how does the applicant get around (walk, public transportation, taxi, bicycle, etc.). |
|---|---|

Applicant states he does drive short distances (10 minutes or less). His main source of transportation is his wife, daughter, or a medical taxi service. Applicant states that prior to 2005 he drove longer distance and always drove himself.

| Finances | Describe the applicant's ability to handle financial matters - How does the applicant handle their money; does the applicant prepare a budget; does the applicant pay their own bills; does the applicant need to be reminded to pay their bills; if the applicant's ability to handle money has **changed**, explain what has **changed**, and when the **change** occurred. |
|---|---|

Applicant states that all his finances go toward the payment of bills. He pays the bills over the internet or over the telephone. He states his spouse usually handles all the bills since physical pain keeps him short tempered and curt. He says he used to manage his own finances completely and was more even tempered prior to surgery in 2005.

| Socialization and Entertainment | Describe the applicant's entertainment and social activities - Does the applicant visit friends and relatives; how often and for how long does the applicant stay; describe any **changes** in the applicant's social visits, what has **changed**, and when the **change** occurred; has the applicant's condition affected their concentration when reading, watching TV, or listening to the radio; explain what has **changed** and when the **change** occurred. |
|---|---|

He states he does not have many visitors due to his incontinence and he never leaves home for more than an hour. It is painful to stand and he usually is not pleasant to be around. His condition often affects his eating, watching television, and listening to music because he is always in the bathroom or shower. Applicant used to play sports and go out with other co-workers prior to 2005. He used to have more visitors prior to 2005 because he was more entertaining but now he is either in pain, or in the bathroom and does not wish a lot of public interaction due to the embarassment of his incontinence.

A031

-4-

DEMETRIUS HILL
A 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

| | |
|---|---|
| **Employment and Work Routine** | Describe the applicant's ability to perform job duties - Did the applicant have trouble getting to work on time and, if so, explain why there was a problem being on time; describe the applicant's attendance record; if absent, explain the cause of the absences; was the applicant able to maintain their work routine; did the applicant have the ability to complete all of their daily work; did the applicant have: (1) any problems concentrating at work; (2) any special needs at work such as frequent rest periods; or (3) any trouble getting along with supervisors, coworkers or customers; were there any times the applicant needed to leave work because of their condition; describe any **changes** made to the applicant's work duties that affected their job and the applicant's ability to adapt to these **changes**. |

Applicant states that prior to 2005 he had very good attendance and did not have issues with his supevisors or coworkers. He states after 2005 he began to miss a lot of work and had low attendance due to sickness. His relationships somewhat suffered with coworkers and supervisors after 2005 due to low attendance and sickness.

| | |
|---|---|
| **Additional Information** | Enter any additional information that may be relevant. If we need any additional information about activities of daily living, who would best be able to give us that information? Provide name, address and telephone number of the person including their relationship to the applicant (i.e., neighbor, brother, spouse, etc). |

Kameo Hill, spouse, 15050 Cedar Ave. S., Bldg. 116, Apt. 170, AppleValley, MN 55124
Kionie Hill, daughter, 15050 Cedar Ave. S., Bldg. 116, Apt. 170, AppleValley, MN 55124

A032

| RRB Form G-325.1 (1-83) DISABILITY DECISION RATIONALE | 1. CLAIMANT Demetrius Hill Sr | 2. RRB CLAIM NO. A 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 |
|---|---|---|

| 3. Basis for Decision | Citation of Listings, Standards, Rules, etc. |
|---|---|
| EE is 44. He was granted a total and permanent disability based on bipolar disorder, s/p colectomy with incontinence and right shoulder degenerative joint disease.<br><br>The 8-15-12 report reveals he walks with a positive limp and steady gait. He does not use a cane. He has decreased range of motion of the right shoulder and back. He has decreased sensation of the feet and left knee. He has positive crepitus and right knee swelling.<br><br>The 8-15-12 mental report reveals depression, irritability, disturbed sleep, low energy, hopelessness, self-isolation and pain. He has been prescribed Xanax and Trazodone but don't like the way they make him feel. He states he is not taking the medication. He is noted to have dysthymic disorder.<br><br>Our medical consultant states mental and physical impairment is severe enough in combination to equal listing 12.04. He is a freeze allowance.<br><br>Mip diary<br><br>☐ Continued on back | Equals 12.04 |

| 4. Explanation of Actual Onset Date (if Different from Claimed Onset Date) | |
|---|---|
| ☐ Continued on back | |

| 5. Signature of Disability Examiner Evelyn L. Johnson | Date 12/19/2012 |
|---|---|

| 6. Any Additional Rationale by Reviewing Examiner | |
|---|---|
| ☐ Continued on back | |

| 7. Signature of Reviewing Examiner | Date |
|---|---|

A033

G-325-1 (01-83)

# DISABILITY BRIEFING DOCUMENT

Demetrius Hill - 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

The employee is found to be totally and permanently disabled. A disability annuity onset date of 12/10/2010 has been established.

## Disability Freeze Conclusion

The disability freeze determination is being deferred because post action is necessary.

## Diary

There is no CDR callup because a freeze decision is not being made.

## Reviewer Comments (Optional)

| Lycrecia V. Graves<br>Disability Claims Examiner | 10/31/2012 | Lycrecia V. Graves<br>Disability Claims Examiner | 10/31/2012 |
|---|---|---|---|
| Examiner Name and Title | Date | Reviewer Name and Title | Date |

A034

G-325B (06-03)

353682916JA

# Dwayne L. Clay, MD, FIPP



Diplomate American Board of Physical Medicine & Rehabilitation
Board Certified Subspecialty of Pain Medicine, ABPM&R
Diplomate American Board of Interventional Pain Physicians
American Board of Pain Management
Master Certified Independent Medical Examiner
Certified Medical Review Officer

LAKESIDE
PAIN
CENTER
"restoring lives through pain management"

6010 Lakeside Commons Drive
Suite A
Macon, Georgia 31210

Phone: 478.475.9220
Fax:    478.475.9201
www.lakesidepaincenter.com

October 22, 2024

TO:        U.S. RAILROAD RETIREMENT BOARD
RE:        Demetrius Hill
CLAIM #:   353682916JA

The following is a summary report of an orthopedic examination performed on October 22, 2024.

## HISTORY:

Mr. Demetrius Hill is a 56 y/o AA male who worked for Union Pacific Railroad as a freight train conductor from 2002 to 2009. He fell on snow with his right outstretched arm injuring his right shoulder. He has developed DJD of the right shoulder. He reports he was diagnosed with Ulcerative Colitis when he was 17 years old which was stable for years until 2008 when he was having flares of abdominal pain with chronic loose stool. He underwent a total colectomy with a temporary ileostomy and had it taken down at a later date with closure. He has residual stool incontinence daily with soiling of his clothes. He has ongoing abdominal pain, cramping with weight loss.

## CURRENT MEDICATIONS:

Metformin 500mg bid
Levemir 200U daily
Novolin R sliding scale bid
Trulicity 1.5 mg weekly
Dapsone 100 mg daily
Protonix 40 mg bid
Vitamin D 50,000units weekly
Cyclobenzaprine 10 mg tid
Atorvastatin 40 mg daily
Ibuprofen 800mg bid

## PHYSICAL EXAMINATION:

Please see the completed RRB Provider Examination Protocol for examination findings.

A035

353682916JA

Demetrius Hill
October 14, 2024
Page 2

DIAGNOSES:

1. Bipolar Disorder
2. S/P Colectomy with incontinence
3. Right shoulder DJD

PROGNOSIS AND COMMENTS:

Mr. Demetrius Hill has a history of ulcerative colitis which required a total colectomy. His prognosis is fair to poor, secondary to his residual symptoms. He has daily fecal incontinence with abdominal cramping and intermittent pain that is chronic which is not expected to improve in the future.

Submitted by,

Dwayne L. Clay, MD



353682916JA

# QTC Railroad Board Evaluation

| | |
|---|---|
| **Claimant's Name:** | Demetrius Hill |
| **Claimant's DOB:** | 01/23/1968 (56 years) |
| **QTC Number:** | 2951884.2.1 |
| **Date of Evaluation:** | 10/22/2024 |

## Chief Complaint:

"I don't sleep."

## Disclaimer:

The claimant arrived on time for the Telepsychiatry Railroad Board Evaluation. He waited in cue/the virtual waiting room until invited back to the diagnostic evaluation room. His identity was confirmed prior to the evaluation by the presentation of his driver's license to administration. I explained to him the nature of the independent evaluation. I let him know that a doctor-patient relationship would not be established, that the content of the interview would not be held confidential, and that my findings will be returned to QTC. The claimant did verbalize understanding of these conditions and agreed to proceed with the process of the evaluation. The following evaluation is based on a 60- to 75-minute interview, with testing as needed. The summary of the report and findings and clinical correlation will all be included in the body of the report. The mental health Residual Functional Capacity document will also be completed.

1720 PEACHTREE STREET SUITE 840 ATLANTA, GA 30309 | T: 404.575.4705 F: 404.575.4706 | WWW.DROWENSMD.COM

A037



**PEACHSTATE**
Psychiatric Services, Inc.

353682916JA

## History as Reported by the Claimant on Day of Evaluation:

The claimant reports that he had a lot of issues being locked up in a place 24/7. He shared that he had a bunkmate that snored like a lion. He also referenced gang members coming after him several times. "My mind constantly races. I am constantly trying to figure out how to get my life back. I don't sleep. I had a total colectomy in 2004. I was supposed to wear a bag, but they did reconstruction surgery. Now, I'm up going to the restroom six times a night."

The claimant reports that he is irritable every day. Certain things that people say just bother him. During the evaluation, he was very talkative, distractible, impulsive, and hyperfocused. He was also very paranoid. The claimant also talked about getting into a lot of fights in his life. He is currently diagnosed with bipolar illness. However, he cannot get any medications or help because he does not have any medical insurance. The claimant did try to go to the community health clinic, but they are booked up until the end of November. The claimant has been treated in the past with Mirtazapine and Xanax.

## Family History:

Uncle Paul had a brain aneurysm.

## Social History:

Tobacco Status:  Former smoker; last use was in 2023.

Tobacco Type:  Formerly cigarettes.

Alcohol Use:  Yes; he drinks two to five drinks a day several days a week.

Caffeine Use:  Yes; he does one or two cups of caffeine every day.

Intimate Relationships:  Yes.

Number of Marriages/Engagements:  Two.

1720 Peachtree Street Suite 640 Atlanta, GA 30309 | T: 404.575.4785 F: 404.575.4786 | WWW.DROWENSMD.COM

A038

Claimant's Name:  Demetrius Hill



**PEACHSTATE**
Psychiatric Services, Inc.
*a healthy mind, healthy body*

353682916JA

## History as Reported by the Claimant on Day of Evaluation:

The claimant reports that he had a lot of issues being locked up in a place 24/7. He shared that he had a bunkmate that snored like a lion. He also referenced gang members coming after him several times. "My mind constantly races. I am constantly trying to figure out how to get my life back. I don't sleep. I had a total colectomy in 2004. I was supposed to wear a bag, but they did reconstruction surgery. Now, I'm up going to the restroom six times a night."

The claimant reports that he is irritable every day. Certain things that people say just bother him. During the evaluation, he was very talkative, distractible, impulsive, and hyperfocused. He was also very paranoid. The claimant also talked about getting into a lot of fights in his life. He is currently diagnosed with bipolar illness. However, he cannot get any medications or help because he does not have any medical insurance. The claimant did try to go to the community health clinic, but they are booked up until the end of November. The claimant has been treated in the past with Mirtazapine and Xanax.

## Family History:

Uncle Paul had a brain aneurysm.

## Social History:

<u>Tobacco Status</u>: Former smoker; last use was in 2023.

<u>Tobacco Type</u>: Formerly cigarettes.

<u>Alcohol Use</u>: Yes; he drinks two to five drinks a day several days a week.

<u>Caffeine Use</u>: Yes; he does one or two cups of caffeine every day.

<u>Intimate Relationships</u>: Yes.

<u>Number of Marriages/Engagements</u>: Two.

1720 PEACHTREE STREET SUITE 640 ATLANTA, GA 30309 | T: 404.975.4785 F: 404.975.4786 | WWW.DROWENSMD.COM

A039



353682916JA

Age of First Marriage: 23

Sexually Active: Yes.

Sexual Orientation: Heterosexual.

Employment Status: Able.

Marital Status: Divorced.

Children: Two.

Highest Education: Some college.

Occupation: He was a railroad conductor.

Residence Type: He has his own home.


**Risk Assessment:**

Exercise: Never.

Seatbelt: Sometimes.

Exposure to Toxins: None.

Feels Safe at Home: Yes.

Suicidal Ideation: No.


**Legal History:**

Involved in Criminal Proceedings: Yes.

Arrested: Yes.

In Prison: Yes.

1720 PEACHTREE STREET SUITE 640 ATLANTA, GA 30309 | T: 404.575.4785  F: 404.575.4786 | WWW.DROWERSMD.COM

A040

Claimant's Name: Demetrius Hill                    Page 3 of 6



**PEACHSTATE**
Psychiatric Services, Inc.
a healthy mind, healthy body

353682916JA

## Past Medical History:

Arthritis, high cholesterol, hypertension, Crohn's disease of both small and large intestines, and folliculitis.

## Allergies:

No known drug allergies.

## Review of Systems:

The claimant complains of anxiety attacks, arguments, behavioral problems, depression, distractibility, feeling of hopelessness, flight of ideas, loose associations, hyperverbal, manic speech, inattentiveness, increased energy level, increased motor activity, irritability, low productivity, and low self-esteem.

## Mental Status Examination:

General: Build normal.

Hygiene: Appropriate.

Sensorium: Awake, alert and oriented x4.

Concentration: Fair.

Eye Contact: Intense.

Speech: Rate fast, volume normal, content normal.

Mood: Irritable.

Affect Range: Excitable.

Amplitude: Intense.

Obsessions: No.

1720 PEACHTREE STREET SUITE 6 30 ATLANTA, GA 30309 | T: 404.575.4785  F: 404.575.4706 | WWW.DPIJWLNISMD.COM

A041



353682916JA

Compulsions: No.

Phobias: No.

Short-Term Memory: Intact.

Long-Term Memory: Intact.

Gait: Normal.

Attention: Focused.

Relatedness: Normal.

Psychomotor Activity: Agitation.

Thought Processes: Logical.

Thought Content: Normal.

Hallucinations: Absent.

Grandiosity: Absent.

Cognition: Insight poor. Judgement impaired.

Activities of Daily Living Capacity: Normal.

Intelligence: Average.

**Procedure Code:**

013TH, psychiatric exam, telehealth.

**Diagnoses:**

1. F31.0, Bipolar I Disorder, Current Episode Hypomanic.

2. F43.23, Adjustment Disorder with Mixed Anxiety and Depressed Mood.

Claimant's Name: Demetrius Hill    A042    Page 5 of 6



**PEACHSTATE**
Psychiatric Services, Inc.
a healthy mind...healthy body

353682916JA

## Sources of Information Reviewed:

**Activities of Daily Living Worksheet by ABK.** DOS 08/20/2024. The claimant has OCD, PTSD, and Anxiety. The claimant gets fatigued due to non-sleeping. He is prepared for scheduled count times. The claimant's sleeping habits are broken frequently. The claimant takes 4-6 trips to the bathroom. The claimant cleans frequently in between bathroom trips. The claimant has OCD. The claimant has PTSD. The claimant experiences screams, deaths, fights, pain from medical conditions, metal beds, random counts, nightmares, and heartburn. The claimant eats normally. The claimant has no difficulties shopping, and he can drive. The claimant is managing food stamps. The claimant has difficulties paying the bill. The claimant has no social activities at this time. Before the incarceration, the claimant was outgoing, proud, and sociable. The claimant has moments of high anxiety. The claimant since release doesn't care too much about others, has no feelings and emotions and can't function in crowds. The claimant has not worked in access for 16 years. The claimant's colon has been removed he states that "he cannot regrow a colon, so things never change."

*Respectfully submitted by,*

Dwight A. Owens, M.D.
State of Georgia License #043105
Board Certified Psychiatrist
Fellow of the American Psychiatric Association

DO/mm

DD: 10/25/2024 07:23 AM
DT: 10/25/2024 10:29 AM
DID: 40069490

1720 PEACHTREE STREET SUITE 640 ATLANTA, GA 30309 | T: 404.575.4735 F: 404.575.4716 | WWW.DRDWENSMD.COM

A043

Claimant's Name: Demetrius Hill

Page 6 of 6

| RRB Form G-325.1 (1-83) | 1. CLAIMANT | 2. RRB CLAIM NO. |
|---|---|---|
| DISABILITY DECISION RATIONALE | Demetrius Hill Sr | A 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 |

| 3. Basis for Decision | Citation of Listings, Standards, Rules, etc. |
|---|---|

Mr. Hill is a 56 year old conductor/trainman. He filed his application on 5-18-12. He was found to be T&P disabled for his annuity and DF effective 12-10-10. His ABD is 6-1-11. He had impairments of bipolar disorder, s/p colectomy with incontinence and right shoulder DJD. A physical report from 8-12 showed he had a limp but does not use a cane. He had decreased sensation of the feet and left knee. He had crepitus and swelling of the right knee. An 8-12 mental report revealed he had depression, irritability, low energy, disturbed sleep, hopelessness, self-isolation and pain. G137 Sup dated 10-9-12 showed he had a light RFC from 12-10 to 7-12 and beginning 8-12 he has an RFC for light lifting and standing two hours. SSA 2506 of 10-26-12 shows that L12.04 was equaled from 12-10-10.

File Note imaged on 1-30-23 from the OIG showed he federally prosecuted on 1-19-23 and found guilty of theft of government property and false claims. The fraud period was June 2013 to December 2022. He had restitution of $184,721.00. Jail of 33 months. Probation for three years and a fine of $10,000. The ee was found to be the owner of a janitorial service called SparClean Premier Cleaning Solutions. This is an LLC and he is the registered agent. He does not show that he takes an active part in the business.

Documents imaged on 1-24-24 show the effective date of the business is 8-14-23. General partners are Kameo Small Hill and Demetrius Hill. DEQY shows the following SE: $430 2014, $5,196 2015, $2,143 2018, $9,890 2019 and $4,382 in 2020. None of the posted amounts is high enough to cause any TWMs or DWD.

A medical CDR was conducted. ADLs completed on 6-20-24 show he was in prison service his mandatory sentence. He shows he has moments of high anxiety due to his incarceration. Exams were obtained. The G137 Sup dated 11-7-24 shows he has a history of ulcerative colitis since when he was 17. He continues to have fecal incontinence, abdominal pain, cramping and weight loss. The light RFC continues. The SSA 2506 dated 11-7-24 shows he has a lot of issues since his incarceration. He is irritable, impulsive, cannot function in crowds, has short attention. His condition currently meets L 12.04AB.

He remains T&P disabled.

His annuity payments were suspended 12-1-22. No earnings causing DWD were explained to us by OIG or posted to his wage record. We will ask retirement to reinstate his payments from the date of suspension and to recover the restitution amount.

No call up due to age.

☐ Continued on back

4. Explanation of Actual Onset Date (if Different from Claimed Onset Date)

☐ Continued on back

| 5. Signature of Disability Examiner | Date |
|---|---|
| Janice Epstein | 11/12/2024 |

6. Any Additional Rationale by Reviewing Examiner

| | ☐ Continued on back | |
|---|---|---|
| 7. Signature of Reviewing Examiner | | Date |
| Kevin Rodevich | | 11/13/2024 |



**UNITED STATES OF AMERICA**
**RAILROAD RETIREMENT BOARD**
**DISABILITY BENEFITS DIVISION**
**844 NORTH RUSH STREET**
**CHICAGO, IL 60611-1275**
WWW.RRB.GOV

OFFICE HOURS: M-T-TH-F 9:00 AM TO 3:30 PM                    TOLL-FREE NUMBER: 1-877-772-5772
WEDS 9:00 AM TO 12:00 PM-CLOSED FEDERAL HOLIDAYS

IıIlıııIIıIıIIIııııIıIIlıııl                                        November 13, 2024

DEMETRIUS HILL SR
3123 RIDGE AVE
MACON, GA  31204

In reply refer to
Employee Name:  Demetrius Hill Sr

RRB-MLN-AI3896D

Dear Mr. Hill:

You were previously awarded a total disability annuity under the Railroad Retirement Act (RRA), as well as a disability freeze and early Medicare benefits under the Social Security Act based on a determination that your medical condition made you disabled and prevented you from performing all types of substantial gainful work. Disability determinations are subject to review until an annuitant attains full retirement age (FRA). You will attain FRA in January 2035.

Based on a review of your earnings record, we have determined that you remain entitled to a total disability annuity, disability freeze, and hospital benefits. Your Part B Medicare benefits were terminated April 30, 2024, for nonpayment.  You will be contacted shortly regarding adjustments to your past annuity payments that resulted from your work prior to FRA.

If a disability annuitant works, he or she is given a nine-month trial work period to test his or her ability to work and hold a job.  The annuitant may work in as many as nine calendar months during which the work will not be used as the basis for determining that the disability ceased.  The nine trial work months may be consecutive, or they may be separated by months in which the disabled annuitant does not work at all.  A trial work month for total disability annuity and disability freeze benefit is any month that the annuitant performs work and earn $750.00 effective January 2013, $770.00 effective January 2014, $780.00 effective January 2015, $810.00 effective January 2016, $840.00 effective January 2017, $850.00 effective January 2017, $850.00 effective January 2018, $880.00 effective January 2019, $910.00 effective January 2020, $940.00 effective January 2021. $970.00 effective January 2022, $1,050.00 effective January 2023 and $1,110.00 effective January 2024.

After the trial work period, an annuitant's work and earnings are evaluated to determine if he or she is still disabled.  A total disability annuity and disability freeze benefit will terminate after the nine-month trial work period is completed, if an annuitant continues to work and perform substantial gainful activity (SGA).  Monthly earnings that average $1,550.00 effective January 1, 2024, after the deduction of impairment related work expenses (IRWE), are usually considered to be SGA. IRWE are reasonable out-of-pocket expenses for items or services, which the annuitant needs because of his or her impairment in order to work.   Proof of payment is required for all IRWE claims and no deduction can made for any expense for which the annuitant will receive reimbursement from another source, such as medical insurance.

A046

UNITED STATES RAILROAD RETIREMENT BOARD  -  2

On January 19, 2023, you were found guilty of theft of government property and false claims. The fraud period was June 2013 through December 2022. You were given a judgment of $184,721.00, jail time of 33 months, and a fine of $10,000.00. The documents showed that you were the owner of a janitorial service called SparClean Premier Cleaning Solutions. This is an LLC business, and you were shown as the registered agent. We were not given much information about the duties you performed for the business and a dollar amount of the worth of your work was not given to us. You reported that your involvement in the business was minimal. You have the following earnings reported to the Social Security Administration:

$430.00 in 2014, $5,196.00 in 2015, $2,143.00 in 2018, $9,890.00 in 2019, and $4,382.00 in 2020.

Based solely on the self-employment earnings reported to the Social Security Administration, we do not find that you completed any trial work months for your annuity or disability freeze.

Lastly, the law dictates that employee disability annuitants, who work, are subject to disability earnings restrictions prior to attaining FRA. Effective January 2024, an employee disability annuity could not be paid for months in which he/she worked and earned $1,210.00 per month with an annual earnings limit of $15,125.00 after the deduction DRWE. DRWE, are reasonable out-of-pocket expenses for items or services, which the annuitant needs because of his or her impairment in order to work.  Proof of payment is required for all DRWE claims and no deduction can made for any expense for which the annuitant will receive reimbursement from another source, such as medical insurance.

If your earnings from Spar Clean Premier Cleaning Solutions exceed $1,210.00 per month, or you begin new employment, notify us immediately. See the enclosed Form AB-31 for more information on how your work and earnings affects the payment of your annuity.

We have reviewed your annuity entitlement and work activity. Based on the information we have your annuity payments will be reinstated from December 1, 2022, the date they were suspended. Your judgment must be recovered. Your annuity payments will be reviewed. You will receive a separate letter concerning the results of the review.

If you have any questions about this letter, or need additional information, contact a RRB representative at our toll-free number.

Sincerely,

Janice Epstein for
Sherita Boots
Director of Disability Benefits Division

Enclosure
Form AB-31

A047



# Internal Revenue Service
### United States Department of the Treasury

This Product Contains Sensitive Taxpayer Data

# Wage and Income Transcript

|  |  |
|---|---|
| Request Date: | 10-21-2024 |
| Response Date: | 10-21-2024 |
| Tracking Number: | 106780935009 |

**SSN Provided:** XXX-XX-2916
**Tax Period Requested:** December, 2017

## Schedule K-1 1065

**Partnership:**
Partnership's Employer Identification Number:XXXXX5010
SPAR
138 SP

**Partner:**
Partner's Identifying Number: XXX-XX-2916
DEME HIL
3123 R

| | |
|---|---|
| Submission Type: | Original document |
| Partner Share of Capital Beginning: | 0.49% |
| Partner Share of Capital Ending: | 0.49% |
| IRA SEP KEOGH Indicator: | Box is not checked |
| Beginning Tax Period: | 201701 |
| Ending Tax Period: | 201712 |
| Dividends: | $0.00 |
| Interest: | $0.00 |
| Royalties: | $0.00 |
| Ordinary Income K-1: | -$1,267.00 |
| Real Estate: | $0.00 |
| Other Rental: | $0.00 |
| Guaranteed Payments: | $0.00 |
| Section 179 Expenses: | $0.00 |
| Short Term Capital Gain: | $0.00 |
| Long Term Capital Gain: | $0.00 |

# Form SSA-1099 Benefits Statement A048

**Payer:**
Payer's Federal Identification Number (FIN):XXXXX4600
US R


**Payee:**
Payee's Identification Number: XXX-XX-2916
DEME HIL
BUILDI

| | |
|---|---|
| Submission Type: | Original document |
| Account Number (Optional): | N/A |
| Pensions and Annuities (Total Benefits Paid): | $36,255.00 |
| Tax Withheld: | 0.00 |
| Repayments: | 0.00 |
| Workman's Compensation Offset: | 0.00 |
| TY 2016 Payments: | 0.00 |
| TY 2015 Payments: | 0.00 |
| TY 2014 Payments: | 0.00 |
| TY 2013 Payments: | 0.00 |
| Trust Fund Indicator: | Retirement |
| SSA/RRB Payments: | |

# Form 1099-INT


**Payer:**
Payer's Federal Identification Number (FIN):XXXXX6683
MORR
P O BO


**Recipient:**
Recipient's Identification Number: XXX-XX-2916
DEME HIL
3123 R

| | |
|---|---|
| Submission Type: | Original document |
| Account Number (Optional): | XXXXXX0666 |
| Interest: | $15.00 |
| Tax Withheld: | $0.00 |
| Savings Bonds: | $0.00 |
| Investment Expense: | $0.00 |
| Interest Forfeiture: | $0.00 |
| Foreign Tax Paid: | $0.00 |
| Tax-Exempt Interest: | $0.00 |
| Specified Private Activity Bond Interest: | $0.00 |
| Market Discount: | $0.00 |
| Bond Premium: | $0.00 |
| Bond Premium on Tax Exempt Bond: | $0.00 |
| Bond Premium on Treasury Obligations: | $0.00 |
| Second Notice Indicator: | No Second Notice |

A049

CUSIP Number:
FATCA Filing Requirement:                                        Box not checked no Filing Requirement

| This Product Contains Sensitive Taxpayer Data |
| --- |

A050



# Internal Revenue Service
### United States Department of the Treasury

This Product Contains Sensitive Taxpayer Data

# Wage and Income Transcript

|                   |            |
|-------------------|------------|
| Request Date:     | 10-21-2024 |
| Response Date:    | 10-21-2024 |
| Tracking Number:  | 106780935009 |

**SSN Provided:** XXX-XX-2916
**Tax Period Requested:** December, 2016

## Schedule K-1 1065

**Partnership:**
Partnership's Employer Identification Number:XXXXX5010
SPAR
3123 R

**Partner:**
Partner's Identifying Number: XXX-XX-2916
DEME HIL
3123 R

| | |
|---|---|
| Submission Type: | Original document |
| Partner Share of Capital Beginning: | 0.49% |
| Partner Share of Capital Ending: | 0.49% |
| IRA SEP KEOGH Indicator: | Box is not checked |
| Dividends: | $0.00 |
| Interest: | $0.00 |
| Royalties: | $0.00 |
| Ordinary Income K-1: | -$129.00 |
| Real Estate: | $0.00 |
| Other Rental: | $0.00 |
| Guaranteed Payments: | $0.00 |
| Section 179 Expenses: | $0.00 |
| Short Term Capital Gain: | $0.00 |
| Long Term Capital Gain: | $0.00 |

# Form SSA-1099 Benefits Statement

A051

Payer's Federal Identification Number (FIN):XXXXX4600
US-R


**Payee**:
Payee's Identification Number: XXX-XX-2916
DEME HIL
BUILDI

| | |
|---|---|
| Submission Type: | Original document |
| Account Number (Optional): | N/A |
| Pensions and Annuities (Total Benefits Paid): | $36,147.00 |
| Tax Withheld: | 0.00 |
| Repayments: | 0.00 |
| Workman's Compensation Offset: | 0.00 |
| TY 2015 Payments: | 0.00 |
| TY 2014 Payments: | 0.00 |
| TY 2013 Payments: | 0.00 |
| TY 2012 Payments: | 0.00 |
| Trust Fund Indicator: | Retirement |
| SSA/RRB Payments: | |

This Product Contains Sensitive Taxpayer Data

A052

H Sworn statement from OIG dated Oct. 17, 2022

means to be a registered agent, no.

Q. Okay. You also -- I think you also said on direct that you subpoenaed bank records; is that right?

A. Yes.

Q. Was Mr. Hill on a payroll of SparClean?

MS. ODOM: Objection, Your Honor. This is also outside the scope of my direct.

MR. STERLING: He said he subpoenaed and looked at the bank records, Your Honor. I am just asking him what the bank records reflect. I think that's within the scope of direct.

THE COURT: You asked about that on direct?

MS. ODOM: I asked him what investigative steps he took. I did not ask him whether he reviewed the bank records.

THE COURT: I think you -- but you mentioned that, did he show his wife accounts, account statements.

MS. ODOM: I inquired whether Agent Clancy showed Mr. Hill bank account numbers during their interview.

THE COURT: I am going to let it go. Go ahead.

MR. STERLING: Thank you, Your Honor.

BY MR. STERLING:

Q. When you reviewed the bank records, was Mr. Hill on the payroll for SparClean?

A. Not that I've seen.

MR. STERLING: No further questions, Your Honor.

Demetris Hill v. United States of America
U.S. District Court, N.D. Illinois, Eastern Division

**EXHIBIT B**

Standard Form 95 Administrative Claim and
Railroad Retirement Board Final Denial Letter
(Cover Letter, Continuation Sheets, and SF-95 Form, Dec. 13, 2025;
RRB Final Denial Letter, Mar. 4, 2026)

Appendix to Complaint

## COVER LETTER- FTCA

## ADMINISTRATIVE CLAIM

## (Railroad Retirement Board)

Demetris Hill sr.

3123 Ridge Avenue

Macon Georgia 31204

478-250-5740

dhill@sparcleanpcs.com

December 13,2025

Via Certified Mail

Office of General Counsel

Railroad Retirement Board

Chicago, Illinois

Re: Administrative Tort

Claim- Federal Tort

Claims Act

Claimant: Demetris Hill Sr.

Dear Counsel:

Enclosed please find Standard Form 95, submitted pursuant to the Federal Tort Claims Act, 28 U.S.C. 2671-2680 asserting an administrative tort claim against the United States of America arising from negligent

acts and omissions by employees and officials of the Railroad Retirement Board within the scope of their employment.

This claim concerns Negligent administrative misconduct, including failure to rely on or follow conclusions of agency medical professionals, negligent reliance on demonstrably false income and wage information and failure to investigate, correct or intervene after actual notice of materials errors.

As set forth in the enclosed SF-95 and continuation sheets, on or about November 18, 2025, the Railroad Retirement Board's three-member Board panel was provided official Internal Revenue Service Wage and income transcripts conclusively establishing that the claimant received no wages in tax years 2016 and 2017. The Railroad Retirement Board acknowledged receipt of this submission. Despite this actual notice from authorative federal records, the negligent conduct continued.

This submission is intended to fully exhaust administrative remedies

Under 28 U.S.C. 2675 with respect to claims cognizable under the Federal Tort Claims Act.

Nothing in this submission shall be construed as:

- A Waiver of any statutory, constitutional, or equitable claims not cognizable under the FTCA;
- A concession regarding benefits entitlement, accruals, or administrative determinations subject to separate statutory review;
- A waiver of claims arising under civil rights, anti-discrimination, or due process laws.

The claimant expressly reserves all rights and remedies available under federal law.

Please confirm receipt of this administrative tort claim in writing.

All future correspondence regarding this matter may be directed to the address listed above.

Thank you for your attention

Respectfully

Demetris Hill Sr.

Claiment

<u>**Claimant: Demetris Hill Sr.**</u>

<u>**Agency: Railroad Retirement Board**</u>

<u>**Continuation sheet attachment number (1) for box (6) of SF 95 claim form.**</u>

**Date and Day of Accident:**

This Claim involves a continuation course of negligent acts and omissions by employees and officials of the Railroad Retirement Board occurring from 2016 through the present, including negligent acts and omissions after actual notice provided on November 18, 2025, when official IRS wage income transcripts were submitted to and acknowledged by the RRB's three-member Board panel.

<u>**Continuation Sheet 1 of 1**</u>

<u>Claimant: Demetris Hill Sr.</u>

<u>Agency: Railroad Retirement Board</u>

<u>Continuation sheet attachment number (2) for box (8) of SF 95 claim form.</u>

## <u>BASIS OF CLAIM</u>

Employees and officials of the Railroad Retirement Board ("RRB"), acting within the scope of their employment, negligently failed to follow mandatory agency procedures, failed to rely on or follow conclusions made by the agency's own medical professionals, and negligently relied on income and wage information that was factually incorrect. On or about November 18, 2025 the claimant submitted official Internal wage and income transcripts to the RRB's three- Board panel, conclusively establishing that the claimant received no wages in tax years 2016 and 2017. The Railroad Retirement Board acknowledged receipt of this submission.

Despite actual notice of this contradiction from adhortative federal records, **RRB employees and officials failed to investigate failed to correct known errors, failed to intervene after reinstating the claimant's status and declarations and continued to rely on demonstrably false information.**

These negligent acts and omissions constitute administrative negligence and caused the claimant severe financial loss, loss of medical care and assistance, and significant physical and psychological injury. The negligent conduct continued after notice and constitutes a continuing tort.

## <u>Continuation sheet Box (8)</u>

<u>**Claimant: Demetris Hill Sr.**</u>

<u>**Agency: Railroad Retirement Board**</u>

<u>**Continuation sheet attachment number (3) for box (10) of SF 95 claim form.**</u>

<u>**NATURE AND EXTENT OF INJURY**</u>

Severe financial loss, loss of accrued payments and assistance, loss of medical care and continuity of treatment, emotional distress, anxiety, depression, and physical harm resulting from prolonged negligent administrative conduct by the Railroad Retirement Board.

These injuries were foreseeable and directly caused by the negligent acts and omissions described in the Basis of the Claim and continued after actual notice was provided on November 18, 2025.

<u>**Continuation sheet box (10)**</u>

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Railroad Retirement Board Office of General Counsel, Chicago, Illinois | Demetris Hill Sr. 3123 Ridge Avenue Macon Georgia 31204 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | 01/23/1968 | Single | see attached # 1 | continuing N/A |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See Attachment continuation # 2

9. **PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

None

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

10. **PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

see attached continuation of sheet # (3)

11. **WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Agency records and federal documentation | |

12. (See instructions on reverse). **AMOUNT OF CLAIM** (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| 0.00 | 733,900.00 | 0.00 | 733,900.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| | | |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2



UNITED STATES OF AMERICA
RAILROAD RETIREMENT BOARD
844 NORTH RUSH STREET
CHICAGO, ILLINOIS 60611-1275

**BOARD MEMBERS:**

ERHARD R. CHORLÉ, CHAIRMAN
JOHN BRAGG, LABOR MEMBER
THOMAS JAYNE, MANAGEMENT MEMBER

March 4, 2026

*Via regular and certified mail*

Demetris Hill, Sr.
3123 Ridge Ave.
Macon, GA 31204

Re: Administrative Tort Claim of 12/13/25

Dear Mr. Hill:

We have reviewed your administrative tort claim dated December 13, 2025, that was received on December 18, 2025. Additionally, we have received your supplemental material, dated December 19, 2025, that was received on December 24, 2025. These claims were presented to the U.S. Railroad Retirement Board (RRB) under the Federal Tort Claims Act. The claims present allegations of ongoing economic, medical, and personal harm including physical and psychological injury.

After careful consideration, the Board has determined the claims you presented fall into an exception to the Federal Tort Claims Act because the claims arise out of the exercise or performance of a discretionary function or duty on the part of a federal employee. 28 U.S.C. § 2680(a). As a result, the United States has not waived its sovereign immunity with respect to these claims, and your administrative tort claim is hereby denied. The denial of this claim does not affect the Board's consideration of your administrative appeal, which was filed on October 20, 2025, and remains pending.

If you are dissatisfied with the denial of your claim under the Federal Tort Claims Act, you may file suit in an appropriate United States District Court no later than six months after the date of mailing of this denial letter. 28 U.S.C. § 2401(b); 28 C.F.R. § 14.9(a).

Sincerely,

STEPHANIE
HILLYARD

Digitally signed by STEPHANIE
HILLYARD
Date 2026.03.04 14:26:33 -06'00'

FOR THE BOARD
Stephanie Hillyard
Secretary to the Board

# EXHIBIT C

## Office of General Counsel FOIA Production (OGC-2026-0956)

Sub-Exhibits C-1 through C-22 — Selected Internal RRB/OGC Records

**C-1  (OGC-2026-0956 production p. 3) — Supports Count II**
Oct. 20, 2022 internal RRB email distributing DOJ press release on Plaintiff's conviction (Wilson/Freeman/Cameron/Chorle).

**C-2  (OGC-2026-0956 production p. 5) — Supports Count II**
Oct. 21, 2022 email, Vincent Clancy (RRB) circulating conviction press release, referencing RRB internal case no. C-2019-3256.

**C-3  (OGC-2026-0956 production p. 17) — Supports Count I**
Sept. 18, 2025 email, Hearings Officer Daniel Moss transmitting decision terminating Plaintiff's annuity retroactive to July 31, 2017 (Appeal No. 25-0189).

**C-4  (OGC-2026-0956 production p. 23) — Supports Count V**
[Undated 2025] Memorandum, Mavrothalasitis (AGC/Dir. H&A) to Holm, establishing the $58,529.00 accrual and its component withholdings ($4,075.20 Medicare debt; $200.00 special assessment; $54,253.80 restitution offset).

**C-5  (OGC-2026-0956 production p. 53) — Supports Count VI**
Oct. 29, 2025 email, Mavrothalasitis to Ndang, directing that internal RRB deliberative communications be excluded from the administrative record prepared for the Board.

**C-6  (OGC-2026-0956 production p. 104) — Supports Count IV**
Dec. 18, 2025 email, Arteaga to West/Chesnin: paperwork received from Plaintiff via FedEx; staff uncertain whether to create a new assignment or route to an existing Board Appeal Assignment.

**C-7  (OGC-2026-0956 production p. 155) — Supports Count IV**
Dec. 29, 2025 email, Chesnin to Arteaga: resolving confusion between two simultaneously open case assignments for Plaintiff ("OGC-2026-0278... not the appeal").

**C-8  (OGC-2026-0956 production p. 163) — Supports Count III**
Jan. 6, 2026 email, Chesnin to Moss: complimenting Moss on "providing due process notification... that you expanded the scope of the appeal decision in the Hill case."

**C-9  (OGC-2026-0956 production p. 166) — Supports Counts I-VI**
Jan. 7, 2026 email, West to Chesnin, directing preparation of a "Memo to Board on Hill FTCA matter" — internal RRB/OGC tracking of Plaintiff's FTCA claim.

**C-10  (OGC-2026-0956 production p. 173) — Supports Count III**
Jan. 14, 2026 email, Mavrothalasitis to Moss: "you helped me a lot with this one including gathering evidence and consulting with the OIG."

**C-11  (OGC-2026-0956 production p. 182) — Supports Counts IV, VI**
Jan. 26, 2026 email, Brandenburg to Kreydich/Hillyard: admitted upload of wrong document for "Issue 2" on Board voting docket 2026-AP-0002; inability to delete/correct without informal side-channel fix.

**C-12  (OGC-2026-0956 production p. 238) — Supports Count V**
Feb. 19, 2026 email, Carthans (Dir., Retirement & Survivor Benefits Div.) to Chesnin, responding to a DOJ-related inquiry about Plaintiff's accrual: "he should not receive credit for that amount as the accrual was not due."

**C-13  (OGC-2026-0956 production p. 274) — Supports Counts II, V**

Mar. 5, 2026 email, Carthans (Dir., Retirement & Survivor Benefits Div.) to Chesnin: "Please disregard my previous response - I got it mixed up with a different case."

**C-14  (OGC-2026-0956 production p. 276) — Supports Counts II, VI**

Mar. 5, 2026 email, Carthans to Chesnin: "Based on our records, we haven't received anything from OIG. I'll have the staff trace on it once again."

**C-15  (OGC-2026-0956 production p. 278) — Supports Count V**

Mar. 5, 2026 email, Carthans to Chesnin, confirming the accrual was never credited and restating the $184,721.00 restitution balance.

**C-16  (OGC-2026-0956 production p. 310) — Supports Count IV**

Mar. 20, 2026 email, Hillyard to D'Ecclesis: certified USPS mailing of the Board's decision to Plaintiff, coordinated with Congressional-inquiry messaging to Rep. Bishop's office.

**C-17  (OGC-2026-0956 production p. 314) — Supports Count IV**

Mar. 20, 2026 email, Hillyard/Smith/Kreydich: correction of an erroneous judicial-review deadline in the draft transmittal letter ("I was too fixated on my coffee").

**C-18  (OGC-2026-0956 production p. 317) — Supports Count IV**

Mar. 24, 2026 email, Hillyard to Teague: RRB Secretary's office lacked system access to confirm Plaintiff's debt-recovery status when finalizing Board Order 2026-28.

**C-19  (OGC-2026-0956 production p. 325) — Supports Count IV**

Mar. 24, 2026 certified letter, Hillyard to Plaintiff transmitting Board Order 2026-28 (final agency decision), copied to Congressional office and Plaintiff's then-counsel.

**C-20  (OGC-2026-0956 production p. 365) — Supports Count V**

Mar. 6, 2026 email, DOJ (Jones) to Plaintiff, characterizing RRB's accrual as "temporary and incorrect" and stating current restitution liability of $177,473.87.

**C-21  (OGC-2026-0956 production p. 413) — Supports Count III**

Apr. 16, 2026 email, Mavrothalasitis internal debrief: "the hearings officer and I thought this sounded outrageous and that's when the digging and brainstorming... started."

**C-22  (OGC-2026-0956 production p. 414) — Supports Count III**

Apr. 16, 2026 email (continued), describing the resulting expanded finding that Plaintiff "owed the entire 184K plus any annuities."

**EXHIBIT C-1**

| | |
|---|---|
| **From:** | Wilson, James |
| **To:** | Chorle, Erhard R |
| **Cc:** | Cameron, Kimberley M. |
| **Subject:** | FW: Macon Businessman Convicted of Stealing Disability Benefits - US Attorney |
| **Date:** | Thursday, October 20, 2022 8:33:51 AM |

Demetris Hill, the defendant in the case, was not one of the six indictments from June 2021. When I talk again to Paul I will follow up on the six.

**From:** Freeman, Michael P. (b) (6)(b) (6)(b) (6)

**Sent:** Thursday, October 20, 2022 9:23 AM

**To:** Perbohner, Robert <(b) (6)(b) (6)(b) (6)  Chaney, Ann L <(b) (6)(b) (6)(b) (6)  Marx, Natasha L <(b) (6)(b) (6)(b) (6)  Jayne, Thomas <(b) (6)(b) (6)(b) (6)  Cameron, Kimberley M. <(b) (6)(b) (6)(b) (6)(b) (6)  Wilson, James <(b) (6)(b) (6)(b) (6)  Chorle, Erhard R <(b) (6)(b) (6)(b) (6)  Russell, Nancy <(b) (6)(b) (6)(b) (6)  Munoz, Brigitte <(b) (6)(b) (6)(b) (6)  Thomson, Mark L. <(b) (6)(b) (6)(b) (6)  Neuendorf, Michele L. <(b) (6)(b) (6)(b) (6)(b) (6)  Kendall, Ryan S. <(b) (6)(b) (6)(b) (6)  Bragg, John <(b) (6)(b) (6)

**Cc:** Fadden, Daniel J. <(b) (6)(b) (6)(b) (6)  Cardenas, Arturo <(b) (6)(b) (6)(b) (6)  Blythe, Mark <(b) (6)(b) (6)(b) (6)  Kocur, Ana <(b) (6)(b) (6)

**Subject:** Macon Businessman Convicted of Stealing Disability Benefits - US Attorney

FYI, please see release at https://www.justice.gov/usao-mdga/pr/macon-businessman-convicted-stealing-disability-benefits .

**EXHIBIT C-2**

| | |
|---|---|
| **From:** | Dickman, Martin |
| **To:** | Chorle, Erhard R |
| **Subject:** | FW: Macon Businessman Convicted of Stealing Disability Benefits MACON, GA |
| **Date:** | Friday, October 21, 2022 11:11:11 AM |

FYI

**From:** Clancy, Vincent <(b) (6)(b) (6)(b) (6)
**Sent:** Friday, October 21, 2022 9:50 AM

**Subject:** Macon Businessman Convicted of Stealing Disability Benefits MACON, GA

https://www.justice.gov/usao-mdga/pr/macon-businessman-convicted-stealing-disability-benefits

Good Morning,

Press release for C-2019-3256, Demetris Hill.

To open the link, right click, then click on open Hyperlink.

Thanks,

Vince

**EXHIBIT C-3**

| | |
|---|---|
| **From:** | Moss, Daniel |
| **To:** | Bennett, Maxine |
| **Subject:** | decision for appeal 25-0189 |
| **Date:** | Thursday, September 18, 2025 10:29:00 AM |
| **Attachments:** | Letterhead format BHA cover denial to another unit for action.docx |
| | _HA-0001_____(03-22)RG_Appeals-RRA & RUIA.pdf |
| | _HA-0002_____(06-21)RG_Appeals-RRA_&_RUIA.pdf |
| | Memo Template-disability termination to RBD to adjust annuity .doc |
| | Decision 25-0189 TERM dis based on OIG.doc |

Hi Max,

Please date and release the attached whenever you have the chance.

Thanks,
Dan M.

**EXHIBIT C-4**

**FORM G-115f (1-92)**

UNITED STATES GOVERNMENT

# MEMORANDUM

RAILROAD RETIREMENT BOARD

**TO** : Megan Holm, Chief of Reconsideration Section
Retirement Benefits Division

**FROM** : Spiridoula (Litza) Mavrothalasitis
Assistant General Counsel/Director of Hearings and Appeals

**SUBJECT:** RRB No. A-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

The RRB previously re-instated the appellant's disability annuity effective January 1, 2023. The reinstatement of the appellant's disability annuity resulted in an accrual of $58,529.00, of which $4,075.20 was withheld to recover a Medicare debt, $200.00 was withheld due to a special assessment on a previous overpayment, and the remaining $54,253.80 was withheld to offset a Court ordered restitution of $184,721.00.

The hearings officer finds that the appellant's disability annuity should have been terminated effective May 2017. Therefore, no accrual was due to the appellant. Please take action to adjust the appellant's annuity status and set-up any resulting overpayment.

**From:** Mavrothalasitis, Spiridoula <(b) (6)(b) (6)(b) (6)(b) (6)
**Sent:** Wednesday, October 29, 2025 1:39 PM
**To:** Ndang, Shiri <(b) (6)(b) (6)
**Subject:** RE: [EXTERNAL] Filling a EEOC complaint

Hi Shiri.  Thank you.  I hope everything is going well on your end as well.

Mr. Hill today filed a board appeal.  Since BHA has to prepare the administrative record that the board will receive, can you do me a favor and send me the email Mr. Hill sent you, but can you attach it as a file, so I don't print out our internal RRB communication below.

You can just reply to this email, and instead of Attach File, go to INSERT in the menu above, OUTLOOK ITEM and find the email he sent you. That way I have just the clean email from him, that I can attach to the board documents?

Thank you very much.



**From:** Ndang, Shiri <(b) (6)(b) (6)
**Sent:** Wednesday, October 29, 2025 9:35 AM
**To:** Mavrothalasitis, Spiridoula <(b) (6)(b) (6)(b) (6)(b) (6)
**Cc:** OEO - Office of Equal Opportunity Group Mailbox <oeo@rrb.gov>
**Subject:** FW: [EXTERNAL] Filling a EEOC complaint

Litza,

Good morning.  Hope all is well on your end.

I am forwarding the email below from Demetris Hill to H&A since it appears that he is disputing the hearing officer's decision.

If you have any questions or wish to discuss further, please let me

**EXHIBIT C-6**

| | |
|---|---|
| **From:** | Arteaga, Pilar |
| **To:** | West, Natalie; Chesnin, Debra S |
| **Cc:** | Kocur, Ana |
| **Subject:** | EE Demetris Hill Sr. Paperwork Received- 12/17/2025 |
| **Date:** | Thursday, December 18, 2025 9:02:17 AM |
| **Attachments:** | SKM_368e25121807151.pdf |

Good Morning,
The attached paperwork was received via FedEx from Mr. Hill.
There is an open Board Appeal Assignment.

Please let me know if I should create a new assignment or if it should be routed to the Secretary's Office to be added to the Admin File.

Thanks in advance,
Pilar


Pilar Arteaga
Office of General Counsel
Office Manager
United States Railroad Retirement Board
844 N. Rush St.
Chicago, IL 60611
(b) (6)
Email: (b) (6)(b) (6)



*This e-mail message, including attachments, if any, may contain confidential or privileged material, including attorney-client privileged information, attorney work product information, and information subject to a Government privilege. If you believe you received this e-mail in error, please notify the sender immediately, delete this e-mail message including attachments, and destroy any copies of it. Please do not forward or disseminate this e-mail or its attachments without discussing with the sender.*

**From:** (b) (6)(b) (6)  <(b) (6)(b) (6)
**Sent:** Thursday, December 18, 2025 7:17 AM
**To:** Arteaga, Pilar <(b) (6)(b) (6)(b) (6)
**Subject:** [EXTERNAL] Message from KM_368e

**EXHIBIT C-7**

| | |
|---|---|
| **From:** | Chesnin, Debra S |
| **To:** | Arteaga, Pilar |
| **Subject:** | RE: Paperwork Received for Demetrius Hill Sr.- 12/29/2025 |
| **Date:** | Monday, December 29, 2025 11:13:00 AM |

## OGC-2026-0278

Pilar,

This should go to ILO numbered above (not the appeal). Thanks!

Debra

**From:** Arteaga, Pilar <(b) (6)(b) (6)(b) (6)
**Sent:** Monday, December 29, 2025 10:35 AM
**To:** Chesnin, Debra S <(b) (6)(b) (6)(b) (6)
**Cc:** Kocur, Ana <(b) (6)(b) (6)    West, Natalie <(b) (6)(b) (6)(b) (6)
**Subject:** Paperwork Received for Demetrius Hill Sr.- 12/29/2025

Good Morning,

The attached paperwork was received in the office from Mr. Hill.
Please let me know what assignment it should be uploaded to since there are 2 different assignments in the system for him.

Thanks in advance,
Pilar

Pilar Arteaga
Office of General Counsel
Office Manager
United States Railroad Retirement Board
844 N. Rush St.
Chicago, IL 60611
(b) (6)
Email: (b) (6)(b) (6)



*This e-mail message, including attachments, if any, may contain confidential or privileged material, including attorney-client privileged information, attorney work product information, and information subject to a Government privilege. If you believe you received this e-mail in error, please notify the sender immediately, delete this e-mail message including attachments, and destroy any copies of it. Please do not forward or disseminate this e-mail or its attachments without discussing with the sender.*

**From:** (b) (6)(b) (6)  <(b) (6)(b) (6)

**EXHIBIT C-8**

| | |
|---|---|
| **From:** | Chesnin, Debra S |
| **To:** | Moss, Daniel |
| **Cc:** | Mavrothalasitis, Spiridoula |
| **Subject:** | nice job! |
| **Date:** | Tuesday, January 6, 2026 8:31:00 AM |

Hi Dan,

Nice job on providing due process notification to the claimant that you expanded the scope of the appeal decision in the Hill case! Definitely a tricky thing to do!

Debra

**Debra Chesnin**

*General Attorney*

Office of General Counsel

United States Railroad Retirement Board

844 North Rush Street

Chicago, Illinois 60611

(b) (6)(b) (6) (direct line office phone)

(b) (6)(b) (6) (fax)

| | |
|---|---|
| **From:** | Chesnin, Debra S |
| **To:** | West, Natalie |
| **Subject:** | RE: memos |
| **Date:** | Wednesday, January 7, 2026 3:42:00 PM |
| **Attachments:** | image001.png |

Sure!

**From:** West, Natalie <(b) (6)(b) (6)(b) (6)
**Sent:** Wednesday, January 7, 2026 3:41 PM
**To:** Chesnin, Debra S <(b) (6)(b) (6)(b) (6)
**Subject:** memos

Debra,

I spoke with Ana this afternoon. She would like you to draft two memos to the Board by early next week.

1. Memo to Board on Hill FTCA matter
2. Memo to Board on (b) (3) (A)

Please let me know if you have any questions. Thanks,

Natalie



Natalie West
Assistant General Counsel
Government Law & Legal Services
U.S. Railroad Retirement Board
844 N. Rush Street
Chicago, IL  60611
Email: (b) (6)(b) (6)(b) (6)

**EXHIBIT C-10**

| | |
|---|---|
| **From:** | Moss, Daniel |
| **To:** | Mavrothalasitis, Spiridoula |
| **Subject:** | RE: Demetris Hill appeal 26-AP-0002 |
| **Date:** | Wednesday, January 14, 2026 4:52:00 PM |

Pizza is never too early for me!  Plus, we can just re-heat later too. Or, if it is too early for everyone else, I can pick up pizza around here closer to lunchtime and we can just have it after the meeting.

P.S.  You should write this down for your rating next year because you helped me a lot with this one including gathering evidence and consulting with the OIG!

**From:** Mavrothalasitis, Spiridoula <(b) (6)(b) (6)(b) (6)(b) (6)
**Sent:** Wednesday, January 14, 2026 1:03 PM
**To:** Moss, Daniel <(b) (6)(b) (6)(b) (6)
**Subject:** FW: Demetris Hill appeal 26-AP-0002
**Importance:** High

Nice Job Dan! I'm tempted to re-read your decision for fun reading.

Should we celebrate the nice compliments at our BHA meeting next week?
Do you think this is a good time for me to order that PIZZA again the night before, and we can warm it up the next day at the meeting? Or would it be too early to have it for breakfast lol?

**From:** Chesnin, Debra S <(b) (6)(b) (6)(b) (6)
**Sent:** Wednesday, January 14, 2026 12:57 PM
**To:** Mavrothalasitis, Spiridoula <(b) (6)(b) (6)(b) (6)(b) (6)
**Cc:** Kocur, Ana <(b) (6)(b) (6)
**Subject:** Demetris Hill appeal 26-AP-0002

Hi Litza,
I wanted to compliment both you and Dan Moss on doing such a nice job on the Hill appeal! It is a really complicated and unusual case!
Debra

**Debra Chesnin**
*General Attorney*
Office of General Counsel
United States Railroad Retirement Board
844 North Rush Street
Chicago, Illinois 60611
(b) (6)(b) (6) (direct line office phone)
(b) (6)(b) (6) (fax)

| | |
|---|---|
| **From:** | Brandenburg, Erin A. |
| **To:** | Kreydich, Sarah J.; Hillyard, Stephanie |
| **Subject:** | RE: Your Vote is Required - New Docket - 2026-AP-0002 - HILL, Demetrius |
| **Date:** | Monday, January 26, 2026 2:36:28 PM |

Thank you!

**From:** Kreydich, Sarah J. <(b) (6)(b) (6)(b) (6)
**Sent:** Monday, January 26, 2026 2:35 PM
**To:** Brandenburg, Erin A. <(b) (6)(b) (6)(b) (6) Hillyard, Stephanie
<(b) (6)(b) (6)(b) (6)
**Subject:** RE: Your Vote is Required - New Docket - 2026-AP-0002 - HILL, Demetrius

Hi Erin,

We replaced it.

Thanks!

Sarah

**From:** Brandenburg, Erin A. <(b) (6)(b) (6)(b) (6)
**Sent:** Monday, January 26, 2026 2:31 PM
**To:** Hillyard, Stephanie <(b) (6)(b) (6)(b) (6) Kreydich, Sarah J.
<(b) (6)(b) (6)(b) (6)
**Subject:** FW: Your Vote is Required - New Docket - 2026-AP-0002 - HILL, Demetrius

Hi Ladies,

I uploaded the wrong document for Issue 2. I tried to delete it and add the correct one, but it's not letting me (maybe I don't have permission). Could you replace the one that I uploaded with the attached? If not, I can create a third issue.

Thanks,
Erin

**From:** DCMSServiceAccount <(b) (6)(b) (6)(b) (6)(b) (6)
**Sent:** Wednesday, January 21, 2026 1:24 PM
**To:** Dist.forDCMS.CHO <(b) (6)(b) (6)(b) (6) Dist. for DCMS.LMO.appeal
<(b) (6)(b) (6)(b) (6)(b) (6) Dist.forDCMS.MMO <(b) (6)(b) (6)(b) (6)(b) (6)
**Subject:** Your Vote is Required - New Docket - 2026-AP-0002 - HILL, Demetrius

An issue has been docketed for voting.

**Docket Number:** 2026-AP-0002

**EXHIBIT C-12**

| | |
|---|---|
| **From:** | Carthans, Letitia C. |
| **To:** | Chesnin, Debra S |
| **Subject:** | FW: inquiry from the DOJ |
| **Date:** | Thursday, February 19, 2026 12:08:22 PM |
| **Attachments:** | memo re appeal to Retirement.pdf |

Good afternoon
You are correct that he should not receive credit for that amount as the accrual was not due.  I will have the examiner review his debt on FMIS to ensure it is correct.

Letitia C. Carthans
Director of Retirement & Survivor Benefits Division
(b) (6)(b) (6)  – RRB Cell Phone

---

**From:** Chesnin, Debra S <(b) (6)(b) (6)(b) (6)
**Sent:** Thursday, February 19, 2026 11:47 AM
**To:** Carthans, Letitia C. <(b) (6)(b) (6)(b) (6)
**Subject:** inquiry from the DOJ

Hi Letitia,

The DOJ is inquiring about the status of this case, particularly what happened with the accrual amount when the case was reversed. Mr. Hill is trying to claim credit for the $54,000 accrual amount originally withheld and applied to his restitution amount and saying that his restitution amount should be reduced by that amount. I think this is not accurate because the case was reversed.

Can you please have your staff look into this and let me know the status when you have a chance? It is not an emergency but if you could let me know by the middle of next week, that would be great. I am happy to answer any questions. Thank you!
Debra

**Debra Chesnin**
*General Attorney*
Office of General Counsel
United States Railroad Retirement Board
844 North Rush Street
Chicago, Illinois 60611
(b) (6)(b) (6) (direct line office phone)
(b) (6)(b) (6) (fax)

**EXHIBIT C-13**

| | |
|---|---|
| **From:** | Chesnin, Debra S |
| **To:** | Carthans, Letitia C. |
| **Subject:** | RE: inquiry from the DOJ |
| **Date:** | Thursday, March 5, 2026 10:56:00 AM |

Thank you! Much appreciated!

Debra

**From:** Carthans, Letitia C. <(b) (6)(b) (6)(b) (6)

**Sent:** Thursday, March 5, 2026 10:51 AM

**To:** Chesnin, Debra S <(b) (6)(b) (6)(b) (6)

**Subject:** RE: inquiry from the DOJ

RE:  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

The examiner never prepared the document that would have credited the debt with the erroneous accrual.  The restitution amount of $184,721.00 remains the same.

Please disregard my previous response – I got it mixed up with a different case.

Letitia C. Carthans
Director of Retirement & Survivor Benefits Division
(b) (6)(b) (6)     – RRB Cell Phone

**From:** Chesnin, Debra S <(b) (6)(b) (6)(b) (6)

**Sent:** Friday, February 27, 2026 5:13 PM

**To:** Carthans, Letitia C. <(b) (6)(b) (6)(b) (6)

**Subject:** Fw: inquiry from the DOJ

Hi Letitia,

Happy Friday! Sorry to bug you about this but can you please get back to me? I need to get back to DOJ. Thank you!

Debra

Get Outlook for iOS

**From:** Chesnin, Debra S

**Sent:** Wednesday, February 25, 2026 12:06:30 PM

**To:** Carthans, Letitia C. <(b) (6)(b) (6)(b) (6)

**Subject:** FW: inquiry from the DOJ

Hi Letitia,

Just following up on the below so I can get back to DOJ. Thank you!

Debra

**From:** Chesnin, Debra S

**Sent:** Thursday, February 19, 2026 12:10 PM

**To:** Carthans, Letitia C. <(b) (6)(b) (6)(b) (6)

**EXHIBIT C-14**

| | |
|---|---|
| **From:** | Carthans, Letitia C. |
| **To:** | Chesnin, Debra S |
| **Subject:** | RE: inquiry from the DOJ |
| **Date:** | Thursday, March 5, 2026 10:47:12 AM |

Morning
I've been out of the office all week.  Based on our records, we haven't received anything from OIG.  I'll have the staff trace on it once again.

Letitia C. Carthans
Director of Retirement & Survivor Benefits Division
(b) (6)(b) (6)  – RRB Cell Phone

---

**From:** Chesnin, Debra S <(b) (6)(b) (6)(b) (6)
**Sent:** Friday, February 27, 2026 5:13 PM
**To:** Carthans, Letitia C. <(b) (6)(b) (6)(b) (6)
**Subject:** Fw: inquiry from the DOJ

Hi Letitia,

Happy Friday! Sorry to bug you about this but can you please get back to me? I need to get back to DOJ. Thank you!

Debra

Get Outlook for iOS

---

**From:** Chesnin, Debra S
**Sent:** Wednesday, February 25, 2026 12:06:30 PM
**To:** Carthans, Letitia C. <(b) (6)(b) (6)(b) (6)
**Subject:** FW: inquiry from the DOJ

Hi Letitia,

Just following up on the below so I can get back to DOJ. Thank you!

Debra

---

**From:** Chesnin, Debra S
**Sent:** Thursday, February 19, 2026 12:10 PM
**To:** Carthans, Letitia C. <(b) (6)(b) (6)(b) (6)
**Subject:** RE: inquiry from the DOJ

Awesome! Thank you!

Debra

---

**From:** Carthans, Letitia C. <(b) (6)(b) (6)(b) (6)
**Sent:** Thursday, February 19, 2026 12:08 PM
**To:** Chesnin, Debra S <(b) (6)(b) (6)(b) (6)
**Subject:** FW: inquiry from the DOJ

**EXHIBIT C-15**

| | |
|---|---|
| **From:** | Carthans, Letitia C. |
| **To:** | Chesnin, Debra S |
| **Subject:** | RE: inquiry from the DOJ |
| **Date:** | Thursday, March 5, 2026 10:51:18 AM |

RE: 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

The examiner never prepared the document that would have credited the debt with the erroneous accrual. The restitution amount of $184,721.00 remains the same.

Please disregard my previous response – I got it mixed up with a different case.

Letitia C. Carthans
Director of Retirement & Survivor Benefits Division
(b) (6)(b) (6) – RRB Cell Phone

**From:** Chesnin, Debra S <(b) (6)(b) (6)(b) (6)
**Sent:** Friday, February 27, 2026 5:13 PM
**To:** Carthans, Letitia C. <(b) (6)(b) (6)(b) (6)
**Subject:** Fw: inquiry from the DOJ

Hi Letitia,

Happy Friday! Sorry to bug you about this but can you please get back to me? I need to get back to DOJ. Thank you!

Debra

Get Outlook for iOS

**From:** Chesnin, Debra S
**Sent:** Wednesday, February 25, 2026 12:06:30 PM
**To:** Carthans, Letitia C. <(b) (6)(b) (6)(b) (6)
**Subject:** FW: inquiry from the DOJ

Hi Letitia,

Just following up on the below so I can get back to DOJ. Thank you!

Debra

**From:** Chesnin, Debra S
**Sent:** Thursday, February 19, 2026 12:10 PM
**To:** Carthans, Letitia C. <(b) (6)(b) (6)(b) (6)
**Subject:** RE: inquiry from the DOJ

Awesome! Thank you!

Debra

**From:** Carthans, Letitia C. <(b) (6)(b) (6)(b) (6)
**Sent:** Thursday, February 19, 2026 12:08 PM
**To:** Chesnin, Debra S <(b) (6)(b) (6)(b) (6)
**Subject:** FW: inquiry from the DOJ

**EXHIBIT C-16**

| | |
|---|---|
| **From:** | Hillyard, Stephanie |
| **To:** | D'Ecclesis, John R. |
| **Subject:** | RE: [EXTERNAL] RE: Inquiry for Demetris Hill |
| **Date:** | Friday, March 20, 2026 9:29:00 AM |
| **Attachments:** | image001.png |

Correct.

**From:** D'Ecclesis, John R. **(b) (6)(b) (6)(b) (6)**
**Sent:** Friday, March 20, 2026 9:25 AM
**To:** Hillyard, Stephanie **(b) (6)(b) (6)(b) (6)**
**Subject:** RE: [EXTERNAL] RE: Inquiry for Demetris Hill

Yeah, I think so.

In the meantime, however, I can tell the Congressman that the "appeal is being processed and will be released next week." Correct?

**From:** Hillyard, Stephanie **(b) (6)(b) (6)(b) (6)**
**Sent:** Friday, March 20, 2026 9:16 AM
**To:** D'Ecclesis, John R. **(b) (6)(b) (6)(b) (6)(b) (6)**
**Subject:** RE: [EXTERNAL] RE: Inquiry for Demetris Hill

We'll copy PA on the release with an instruction to you to release the decision and cover letter to Ms. Sagul so that she knows the matter has been handled. I have no idea how it gets handled further by them. However, the response to Ms. Sagul's inquiry will be cancelled; there will be no further response from the Board.

The Secretary's office will mail a hard copy via certified USPS to the appellant, as usual. Does that make sense?

**From:** D'Ecclesis, John R. **(b) (6)(b) (6)**
**Sent:** Friday, March 20, 2026 8:24 AM
**To:** Hillyard, Stephanie **(b) (6)(b) (6)(b) (6)(b) (6)**
**Subject:** RE: [EXTERNAL] RE: Inquiry for Demetris Hill

Thanks, Stephanie, for the update.

So, how does this work? Does the Congressman's office get a copy of the decision, or is it incumbent upon the appellant to notify his office of the outcome?

John

**From:** Hillyard, Stephanie **(b) (6)(b) (6)**
**Sent:** Friday, March 20, 2026 8:19 AM

**EXHIBIT C-17**

| | |
|---|---|
| **From:** | Hillyard, Stephanie |
| **To:** | Smith,Tamra J. |
| **Cc:** | Kreydich, Sarah J. |
| **Subject:** | RE: Voting Is Complete - 2026-AP-0002 -HILL, Sr., Demetris |
| **Date:** | Friday, March 20, 2026 12:52:00 PM |

Ha! So much for being efficient.

---

**From:** Smith,Tamra J. (b) (6)(b) (6)(b) (6)
**Sent:** Friday, March 20, 2026 12:30 PM
**To:** Hillyard, Stephanie (b) (6)(b) (6)(b) (6)(b) (6)
**Cc:** Kreydich, Sarah J. (b) (6)(b) (6)(b) (6)
**Subject:** Re: Voting Is Complete - 2026-AP-0002 -HILL, Sr., Demetris

Stephanie, I think that is Debra's case, since it came from Natalie and doesn't look familiar. I think Debra is out today, possibly.

Get Outlook for iOS

---

**From:** Hillyard, Stephanie (b) (6)(b) (6)(b) (6)(b) (6)
**Sent:** Friday, March 20, 2026 9:24:25 AM
**To:** Smith,Tamra J. <(b) (6)(b) (6)(b) (6)
**Cc:** Kreydich, Sarah J. (b) (6)(b) (6)(b) (6)
**Subject:** RE: Voting Is Complete - 2026-AP-0002 -HILL, Sr., Demetris

The judicial review window should read March 24, 202**7.**

I was too fixated on my coffee....

---

**From:** Hillyard, Stephanie
**Sent:** Friday, March 20, 2026 8:59 AM
**To:** Smith,Tamra J. (b) (6)(b) (6)(b) (6)
**Cc:** Kreydich, Sarah J. (b) (6)(b) (6)(b) (6)
**Subject:** FW: Voting Is Complete - 2026-AP-0002 -HILL, Sr., Demetris

Hi Tamra,

The transmittal memo came from Natalie, so I'll just cut out the middleman and assume it came from you. Care to verify the court and judicial review window in the attached cover letter when you have a moment?

Have a great weekend!

---

**From:** DCMSServiceAccount (b) (6)(b) (6)(b) (6)(b) (6)
**Sent:** Thursday, March 19, 2026 4:43 PM
**To:** Dist. for DCMS.AdminBoard (b) (6)(b) (6)(b) (6)(b) (6)(b) (6)

**EXHIBIT C-18**

| | |
|---|---|
| **From:** | Hillyard, Stephanie |
| **To:** | Teague, Sharon |
| **Subject:** | FW: BO 2026-28, Hill |
| **Date:** | Tuesday, March 24, 2026 10:04:00 AM |
| **Attachments:** | 2026-AP-0002 Hill - BD DEC.pdf |
| | BO 2026-28 Hill.pdf |
| | 2026-AP-0002 Hill - CVR LET.pdf |

Hi Sharon,

Is Mr. Hill already in active debt recovery? I ask because we do not have access to systems that will illuminate the matter and I want to categorize it correctly on the docket.

Thanks for your insight,
Stephanie

**From:** Hillyard, Stephanie
**Sent:** Tuesday, March 24, 2026 9:51 AM
**To:** D'Ecclesis, John R. <(b) (6)(b) (6)(b) (6) Kocur, Ana <(b) (6)(b) (6) Mavrothalasitis, Spiridoula <(b) (6)(b) (6)(b) (6)(b) (6) Moss, Daniel <(b) (6)(b) (6)(b) (6)
**Cc:** Arteaga, Pilar <(b) (6)(b) (6)(b) (6) Cameron, Kimberley M. <(b) (6)(b) (6)(b) (6)(b) (6) Deoras, Monica <(b) (6)(b) (6)(b) (6) Heath, Tangy L. <(b) (6)(b) (6)(b) (6) Johnson, Kelli <(b) (6)(b) (6)(b) (6) Kendall, Ryan S. <(b) (6)(b) (6)(b) (6) Kreydich, Sarah J. <(b) (6)(b) (6)(b) (6) Marshall, Patricia <(b) (6)(b) (6)(b) (6)(b) (6) Mentkowski, Annie C. <(b) (6)(b) (6)(b) (6) Roellig, Jill <(b) (6)(b) (6) Russell, Nancy <(b) (6)(b) (6)(b) (6) West, Natalie <(b) (6)(b) (6)(b) (6) Wilson, James <(b) (6)(b) (6)(b) (6) Britton-Fraser, Beverly A. <(b) (6)(b) (6)(b) (6)(b) (6) Fittante, JoAnne <(b) (6)(b) (6)(b) (6) Teague, Sharon <(b) (6)(b) (6)(b) (6) Moreno Jr., Mario <(b) (6)(b) (6)(b) (6)
**Subject:** BO 2026-28, Hill

The Board approved release of the attached Board Order and decision. The Secretary's office will mail the decision to the appellant via certified USPS.

John, please release the cover letter and decision (both attached) to Ms. Sagul at Congressman Bishop's office in reply to her inquiry. The two documents constitute the final Board decision on the matter. Should Mr. Hill wish to appeal the decision, his legal options are outlined in the cover letter.

OLA, your office is copied for situational awareness.

Stephanie Hillyard
Secretary to the Board

**EXHIBIT C-19**



UNITED STATES OF AMERICA
**RAILROAD RETIREMENT BOARD**
844 NORTH RUSH STREET
CHICAGO, ILLINOIS 60611-1275

BOARD MEMBERS:

ERHARD R. CHORLÉ, CHAIRMAN
JOHN BRAGG, LABOR MEMBER
THOMAS JAYNE, MANAGEMENT MEMBER

March 24, 2026

CERTIFIED

Mr. Demetris Hill, Sr.
3123 Ridge Ave.
Macon, GA 31204

In reply refer to:
Appeal No. 2026-AP-0002

Dear Mr. Hill:

Enclosed is a copy of the decision of the Railroad Retirement Board on your application for benefits under the Railroad Retirement Act.

This is the final agency decision in this case. There is no further review of your case available within the agency. However, judicial review of the Board's decision may be initiated by filing a petition for review in any one of the following United States Courts of Appeals:

1. The United States Court of Appeals for the Seventh Circuit, located in Chicago, Illinois;

2. The United States Court of Appeals for the District of Columbia Circuit, located in Washington, D.C.; or

3. The United States Court of Appeals for the Eleventh Circuit, located in Atlanta, Georgia.

Section 8 of the Railroad Retirement Act (RRA) (45 U.S.C. § 231g) provides that a petition for review of a decision of the Board under the RRA with respect to an annuity, supplemental annuity, or lump-sum benefit must be filed within one year from the date of

**EXHIBIT C-20**

| | |
|---|---|
| **From:** | Jones, Kimberly (USAGAM) |
| **To:** | Demetrius Hill Sr. |
| **Subject:** | RE: [EXTERNAL] Re: Monthly Payment Plan |
| **Date:** | Friday, March 6, 2026 9:20:04 AM |

The RRB has confirmed that you did not receive any credit towards your restitution payment from the temporary and incorrect accrual.

Your current liability is $177,473.87.

*Kimberly H. Jones*

Department of Justice
United States Attorney's Office
FLU Legal Assistant, Civil Division
Middle District of Georgia
P.O. Box 1702
Macon, GA. 31202
(b) (6)
(b) (6)(b) (6)(b) (6)

---

**From:** Demetrius Hill Sr. <demetrius.hill@ymail.com>
**Sent:** Thursday, February 12, 2026 9:00 AM
**To:** Jones, Kimberly (USAGAM) <(b) (6)(b) (6)(b) (6)
**Subject:** Re: [EXTERNAL] Re: Monthly Payment Plan

Dear Ms. Jones,

I am writing in response to your email dated 2,11,2026 by Date of Kimberly's Email, e.g., February 3, 2026], which I received with considerable concern, particularly regarding the notice of delinquency and the potential for execution on the judgment. I wish to clarify several critical points and reiterate my position, as well as the documentation I have previously supplied.

Firstly, regarding your statement that the completed financial statement was not attached to my previous emails and that no documents confirming the Railroad Retirement Board's (RRB) payment of over $54,000 have been provided: I assure you that I have diligently submitted this documentation on multiple occasions. The financial statement is not yet completed due to health issues, related documents were initially sent in November 2025, and again on February 3, 2026, as part of my initial communication where I specifically highlighted the issue with the uncredited RRB payments. For your convenience and to prevent any further misunderstanding, I have re-attached supporting documents, to this email. These attachments include specific evidence related to the RRB payments, as well as

EXHIBIT C-21

| | |
|---|---|
| **From:** | Mavrothalasitis, Spiridoula |
| **To:** | Bennett, Maxine; Hill, Doris; Kelly, Anne Marie C.; Klotz, Daniel; Mavrothalasitis, Spiridoula; Moss, Daniel; Triplett, Ludean |
| **Subject:** | Board Decision - involving convicted felon Demetrius Hill |
| **Date:** | Thursday, April 16, 2026 5:18:52 PM |
| **Attachments:** | 2026-AP-0002 Hill - BD DEC.pdf |

Good afternoon,

A number of you are familiar with the appeal involving Mr. Hill.  Mr. Hill was convicted of theft of government property for collecting a disability annuity while engaging in work activity demonstrating he was not disabled from all regular employment – stealing $184,000.

In this appeal, DBD halted his disability annuity while he was in jail, but then reinstated it and gave him an accrual for a period of time during which he was in jail. DBD applied this accrual to the $184,000 he owed the RRB.   He complained about the withholding of his accrual. When it came to BHA, the hearings officer and I thought this sounded outrageous and that's when the digging and brainstorming involving a few of you (including Lycrecia if I'm not mistaken) started.  Ultimately the hearings officer decided that appellant should have never been reinstated in the first place and that he now owed the entire 184K plus any annuities he might have been paid when he was reinstated.

The Board affirmed the BHA decision and addressed a number of issues we do not normally see in decisions.  In this appeal we were already aware that appellant was trying to relitigate his conviction, generally saying the court got it wrong, and Dan was prepared prior to the hearing to respond to statements made by appellant trying to change the narrative of his conviction.  Dan's decision addresses this, stating, "Since the Courts ruled that the appellant engaged in substantial gainful activity, the hearings officer must follow this legal ruling."  The Board followed suit and expounded upon this. The Board spent a significant part of the decision discussing Dan's discussion of the court conviction and subsequent appeals, explaining that the court findings on certain issues appellant was trying to raise with the RRB was binding on the RRB.

In addition, the Board commented on the fact that appellant was provided due process and made fully aware of the issues on appeal, including the expansion of the issues to consider whether the disability annuity should have been reinstated in the first place.  This was particularly important because the hearings officer could have ruled without a hearing as a matter of law, but this would be an important one to hold a hearing on, given the issues. But more to the point, this stresses how important it is to set forth each issue you intend to address, and particularly to provide that to the appellant in advance so they have an opportunity to respond. Please keep this in

**EXHIBIT C-22**

mind – you do have the authority to expand the issues, if you feel it is warranted, as cited in the Regs. Just please be sure to provide the requisite notice as to the issues that you will be addressing, which in this case was provided in the Notice of Hearing.

The decision also walks through the hearings officer's findings, including the trial work period analysis.

Happy Reading.

Demetris Hill v. United States of America
U.S. District Court, N.D. Illinois, Eastern Division

## EXHIBIT F

Railroad Retirement Board Accounting and Restitution-Recovery Records
November 13, 2024 Reinstatement Letter (RRB Disability Benefits Division,
"Janice Epstein for Sherita Boots"), AR A161–A162 (Ex. 12)

Appendix to Complaint



**UNITED STATES OF AMERICA**
**RAILROAD RETIREMENT BOARD**
**DISABILITY BENEFITS DIVISION**
**844 NORTH RUSH STREET**
**CHICAGO, IL 60611-1275**
**WWW.RRB.GOV**

**OFFICE HOURS: M-T-TH-F 9:00 AM TO 3:30 PM**
**WEDS 9:00 AM TO 12:00 PM-CLOSED FEDERAL HOLIDAYS**

**TOLL-FREE NUMBER: 1-877-772-5772**

|ılllıııllıılıllllıııdıılllıı|

November 13, 2024

DEMETRIUS HILL SR
3123 RIDGE AVE
MACON, GA 31204

In reply refer to
Employee Name: Demetrius Hill Sr

RRB-MLN-AI3896D

Dear Mr. Hill:

You were previously awarded a total disability annuity under the Railroad Retirement Act (RRA), as well as a disability freeze and early Medicare benefits under the Social Security Act based on a determination that your medical condition made you disabled and prevented you from performing all types of substantial gainful work. Disability determinations are subject to review until an annuitant attains full retirement age (FRA). You will attain FRA in January 2035.

Based on a review of your earnings record, we have determined that you remain entitled to a total disability annuity, disability freeze, and hospital benefits. Your Part B Medicare benefits were terminated April 30, 2024, for nonpayment. You will be contacted shortly regarding adjustments to your past annuity payments that resulted from your work prior to FRA.

If a disability annuitant works, he or she is given a nine-month trial work period to test his or her ability to work and hold a job. The annuitant may work in as many as nine calendar months during which the work will not be used as the basis for determining that the disability ceased. The nine trial work months may be consecutive, or they may be separated by months in which the disabled annuitant does not work at all. A trial work month for total disability annuity and disability freeze benefit is any month that the annuitant performs work and earn $750.00 effective January 2013, $770.00 effective January 2014, $780.00 effective January 2015, $810.00 effective January 2016, $840.00 effective January 2017, $850.00 effective January 2017, $850.00 effective January 2018, $880.00 effective January 2019, $910.00 effective January 2020, $940.00 effective January 2021. $970.00 effective January 2022, $1,050.00 effective January 2023 and $1,110.00 effective January 2024.

After the trial work period, an annuitant's work and earnings are evaluated to determine if he or she is still disabled. A total disability annuity and disability freeze benefit will terminate after the nine-month trial work period is completed, if an annuitant continues to work and perform substantial gainful activity (SGA). Monthly earnings that average $1,550.00 effective January 1, 2024, after the deduction of impairment related work expenses (IRWE), are usually considered to be SGA. IRWE are reasonable out-of-pocket expenses for items or services, which the annuitant needs because of his or her impairment in order to work. Proof of payment is required for all IRWE claims and no deduction can made for any expense for which the annuitant will receive reimbursement from another source, such as medical insurance.

**EXHIBIT 12**

A161

UNITED STATES RAILROAD RETIREMENT BOARD  -  2

On January 19, 2023, you were found guilty of theft of government property and false claims. The fraud period was June 2013 through December 2022. You were given a judgment of $184,721.00, jail time of 33 months, and a fine of $10,000.00. The documents showed that you were the owner of a janitorial service called SparClean Premier Cleaning Solutions. This is an LLC business, and you were shown as the registered agent. We were not given much information about the duties you performed for the business and a dollar amount of the worth of your work was not given to us. You reported that your involvement in the business was minimal. You have the following earnings reported to the Social Security Administration:

$430.00 in 2014, $5,196.00 in 2015, $2,143.00 in 2018, $9,890.00 in 2019, and $4,382.00 in 2020.

Based solely on the self-employment earnings reported to the Social Security Administration, we do not find that you completed any trial work months for your annuity or disability freeze.

Lastly, the law dictates that employee disability annuitants, who work, are subject to disability earnings restrictions prior to attaining FRA. Effective January 2024, an employee disability annuity could not be paid for months in which he/she worked and earned $1,210.00 per month with an annual earnings limit of $15,125.00 after the deduction DRWE. DRWE, are reasonable out-of-pocket expenses for items or services, which the annuitant needs because of his or her impairment in order to work. Proof of payment is required for all DRWE claims and no deduction can made for any expense for which the annuitant will receive reimbursement from another source, such as medical insurance.

If your earnings from Spar Clean Premier Cleaning Solutions exceed $1,210.00 per month, or you begin new employment, notify us immediately. See the enclosed Form AB-31 for more information on how your work and earnings affects the payment of your annuity.

We have reviewed your annuity entitlement and work activity. Based on the information we have your annuity payments will be reinstated from December 1, 2022, the date they were suspended. Your judgment must be recovered. Your annuity payments will be reviewed. You will receive a separate letter concerning the results of the review.

If you have any questions about this letter, or need additional information, contact a RRB representative at our toll-free number.

Sincerely,

Janice Epstein for
Sherita Boots
Director of Disability Benefits Division

Enclosure
 Form AB-31

A162

Demetris Hill v. United States of America
U.S. District Court, N.D. Illinois, Eastern Division

# EXHIBIT G

## Social Security Administration Records

Detailed Earnings Statement (secure.ssa.gov)
Work Years 1985–2025, and Estimated Total Taxes Paid Summary
Corroborating the September 19, 2017 Fully Favorable ALJ Decision (Exhibit G, AR A065–A069)

Appendix to Complaint

**EXHIBIT G-1**

Social Security Administration Detailed Earnings Statement
Work Years 2010–2025

**1:05**    23m    66

**secure.ssa.gov**

| Work Year | Taxed Social Security Earnings | Taxed Medicare Earnings |
|---|---|---|
| 2025 | $0 | $0 |
| 2024 | $0 | $0 |
| 2023 | $0 | $0 |
| 2022 | $0 | $0 |
| 2021 | $0 | $0 |
| 2020 | $4,382 | $4,382 |
| 2019 | $9,890 | $9,890 |
| 2018 | $2,143 | $2,143 |
| 2017 | $0 | $0 |
| 2016 | $0 | $0 |
| 2015 | $5,196 | $5,196 |
| 2014 | $430 | $430 |
| 2013 | $0 | $0 |
| 2012 | $0 | $0 |
| 2011 | $0 | $0 |
| 2010 | $1,076 | $1,076 |

**EXHIBIT G-2**

Social Security Administration Detailed Earnings Statement
Work Years 1993–2012

| Year | | |
|------|--------|--------|
| 2012 | $0 | $0 |
| 2011 | $0 | $0 |
| 2010 | $1,076 | $1,076 |
| 2009 | $0 | $0 |
| 2008 | $0 | $0 |
| 2007 | $0 | $0 |
| 2006 | $2,618 | $3,534 |
| 2005 | $0 | $0 |
| 2004 | $10,400 | $10,400 |
| 2003 | $46,659 | $46,659 |
| 2002 | $78,762 | $78,762 |
| 2001 | $65,812 | $65,812 |
| 2000 | $50,192 | $50,192 |
| 1999 | $51,849 | $51,849 |
| 1998 | $44,836 | $44,836 |
| 1997 | $46,590 | $46,590 |
| 1996 | $22,264 | $22,264 |
| 1995 | $5,650 | $5,650 |
| 1994 | $6,487 | $6,487 |
| 1993 | $4,840 | $4,840 |

**EXHIBIT G-3**

Social Security Administration Detailed Earnings Statement & Estimated Total Taxes Paid Summary
Work Years 1985–1990

| Year | | |
|------|------|------|
| 1990 | $13,031 | $13,031 |
| 1989 | $12,965 | $12,965 |
| 1988 | secure.ssa.gov | $12,663 |
| 1987 | $1,904 | $1,904 |
| 1986 | $241 | $241 |
| 1985 | $330 | $330 |

1:05  23m

## Estimated Total Taxes Paid

**For Social Security**

| | |
|---|---|
| Paid by you | $33,215 |
| Paid by your employers | $30,484 |

**For Medicare**

| | |
|---|---|
| Paid by you | $7,780 |
| Paid by your employers | $7,143 |

▲ Back to Top

OMB No. 0960-0029

Privacy Policy

Privacy Act Statement

Accessibility Help

**EXHIBIT G-4**

Email Correspondence — Demetris Hill Sr. and Dawn R. Barto, Manager,
Railroad Retirement Board Duluth District Office (April 21–26, 2013)

---

**From: "Barto, Dawn" <Dawn.Barto@rrb.gov>**
**To: Demetrius Hill Sr. <demetrius.hill@ymail.com>**
**Sent: Friday, April 26, 2013 4:39 PM**
**Subject: RE: SSA Overpayment Recovery**

Demetrius,

I appears we will be issuing the overall minimum accrual to you. I will contact you when they notify me it is ready to be paid. Enjoy your weekend.

Dawn Barto, Manager Duluth DO 375

**From: Demetrius Hill Sr. [mailto:demetrius.hill@ymail.com]**
**Sent: Sunday, April 21, 2013 8:58 PM**
**To: Barto, Dawn**
**Subject: Re: SSA Overpayment Recovery**

To clarify; It is our understanding from Social security that I am only responsible for the portion paid to me which is 34,649.00 they have given me documentation. There is no need for RRB to pay any portion beyond that amount on my behalf to Social Security. I have made the neccessary arraingments for the amount paid to the child on my behalf, It is being discussed in District court. There for I am Formally appealing the additional disbursement of 18,750.00 to Social Security on my behalf as to per rail road act any tier one payments have to have the appropriate procedure to be intercepted. The funds should be paid to me asap. How ever I am greatful that my OM has been applied and the balance from acrual will be paid asap.

**From: "Barto, Dawn" <Dawn.Barto@rrb.gov>**
**To: Demetrius Hill Sr. <demetrius.hill@ymail.com>**
**Sent: Sunday, April 21, 2013 4:21 PM**
**Subject: RE: SSA Overpayment Recovery**

Demetrius,

I will forward your response to our Chicago office. I would assume they will not be releasing the overpayment until they can confirm with SSA how they are proceeding and I would guess it will be held up until the injunction is settled. I will keep you posted.

Dawn Barto, Manager Duluth DO 375

**From: Demetrius Hill Sr. [mailto:demetrius.hill@ymail.com]**
**Sent: Sunday, April 21, 2013 2:58 PM**
**To: Barto, Dawn**
**Subject: Re: SSA Overpayment Recovery**

I have a seperate agreement with social to repay the overpayment and do not I repeat do not want RRB to repay social security expecially the 18,000.00 paid on behalf of my child. I have a court injunction to enforce payment to me. Please respond asap. Thanks Dawn my number is 478-254-7557. That money is payable only to me.

**EXHIBIT G-4 (continued, p. 2)**
Email Correspondence — Demetris Hill Sr. and Dawn R. Barto, Manager,
Railroad Retirement Board Duluth District Office (April 21–26, 2013)

**From: "Barto, Dawn" <Dawn.Barto@rrb.gov>**
**To: "demetrius.hill@ymail.com" <demetrius.hill@ymail.com>**
**Sent: Sunday, April 21, 2013 12:25 PM**
**Subject: SSA Overpayment Recovery**

Demetrius,

Our Chicago Office has released a letter to you regarding the overall minimum. It appears SSA has withdrawn both your and the child's SS benefits after the letter had been sent.

Normally SSA will not approve a withdrawal until the recipient has refunded the overpayment or SS receives something from us telling them we have enough accrual to recover the overpayment. Since the overpayment is still posted to our records, it appears you did not refund the overpayment separately.

We can now take action to award you the overall minimum annuity as of 6/2011. SSA has posted an overpayment for you in the amount of $34,649.00 and $18,252.00 for the Child. The total overpayment on SS records is $52,901.00. SSA show that the you are responsible to repay the entire overpayment (including the amount paid to your child).

We are going to withhold the overpayment amount from the accrual due you due to your overall minimum entitlement. You will still be due an accrual of $2650.00 through 3/2013 and your regular OM of $2919.00 will be due as of 4/2013.

We want to make sure you know we are going to recover the SS overpayment from your RR accrual as we are not sure what you and SS have agreed upon.

Please let me know you thoughts on this or whether you have a separate agreement with SS regarding the overpayment. Thank you.

Dawn R. Barto, Manager Duluth District Office Railroad Retirement Board 515 W. 1st St., Rm. 125 Duluth, MN 55802 877-772-5772

Demetris Hill v. United States of America

U.S. District Court, N.D. Illinois, Eastern Division

## **EXHIBIT H**

Supporting Evidence of Damages

Sub-Exhibits H-1 through H-9

Appendix to Complaint

Demetris Hill v. United States of America
U.S. District Court, N.D. Illinois, Eastern Division

# EXHIBIT H-1

### Skin Care Physicians of Georgia, PC Billing Statement

Invoice No. A-240994; Acct. No. 122620. Statement dated January 26, 2026, for services rendered July 9, 2025. Patient balance: $165.63.

*Sub-exhibit within Exhibit H — Supporting Evidence of Damages*

**Skin Care Physicians of Georgia, PC**
308 Coliseum Drive Suite 200
Macon, GA 31217-3861

Any questions regarding your bill? Call (478) 314-0784
To pay your bill online visit
WWW.SKINCAREPHYSICIANSOFGA.COM

| **Pay By Credit Card** | | |
|---|---|---|
| ☐ MASTERCARD ● | ☐ VISA VISA | |
| Card Number | | Card Security Code |
| Exp. Date | Zip Code | Signature |
| Amount Paid | Pay This Amount $165.63 | Account No. 122620 |
| Charges and credits made after statement date will appear on next statement | | Statement Date 01/26/2026 |

ılıldıllıµ·ıµlı·ı·ılılıdµlıµılµllµlılµµ·ıµllµlllµµlılᵘlıµılıⁱ

DEMETRIS HILL , SR
3123 RIDGE AVE
MACON GA   31204-2311

0003 007596

**Pay By Check / Remit To:**

Skin Care Physicians of Georgia, PC
308 Coliseum Drive Suite 200
Macon, GA 31217-3861

ıµlⁱllµ·ıllllµlµ·ll·ldllµⁱⁱⁱµlⁱµlⁱlⁱµdllllⁱⁱµlᵈlⁱ

☐ *Please check box if above address is incorrect or insurance information has changed, and indicate change(s) on reverse side.*

# S T A T E M E N T

**Patient:** HILL , DEMETRIS SR

**Invoice #: A-240994**

| Date | Provider | Description | Charge | Payment | Adjustment | Insurance Pending | Patient Balance |
|---|---|---|---|---|---|---|---|
| **07/09/2025** 07/09/2025 | Cohen, David MD | *Loc: Skin Care Physicians of Georgia, PC* **99213 - OFFICE O/P EST LOW 20 MIN** *Patient Payment - Cash* *Self Pay* Patient Responsibility - 210.63 | $210.63 | -$45.00 | | | $165.63 |
| | | | | **Total due from Patient** | | | $165.63 |
| | | | | *Total due from insurance* | | | $0.00 |

| 0-30 Days | 31-60 Days | 61-90 Days | 91-120 Days | +120 Days |
|---|---|---|---|---|
| $165.63 | | | | |

**Office Announcements:**

1 of 1



Page 1 of 1

150312-5

Demetris Hill v. United States of America
U.S. District Court, N.D. Illinois, Eastern Division

# EXHIBIT H-2

## Collection Correspondence Re: Purported Federal Tax Lien

Correspondence from a private tax-resolution company (not the Internal Revenue
Service), recorded/mail-dated February 9, 2026 through March 25, 2026,
referencing a purported federal income tax lien of $59,802.00 and a proposed
settlement of $14,950.50. Submitted as evidence of the financial distress
alleged in the Complaint.

*Sub-exhibit within Exhibit H — Supporting Evidence of Damages*

County: **Bibb**
State: **GEORGIA**
Recorded Date: **2/9/2026**
PO Box 172465, Denver CO 80217

*Services offered by a private company, not the IRS.*

||||||barcode||||||

**Past Due Tax Notice**

Address Change? Please contact our
Customer Service Department

**Collection Status - CRITICAL**

| | |
|---|---|
| Mail Date: | **3/25/2026** |
| Rescind Date: | **4/8/2026** |

Taxpayer Name & Address

T3 P1 1019
82899

Demtrius Hill
3123 Ridge Ave
Macon GA 31204-2311

Taxpayer Hill;

We have tried to contact you multiple times. It is EXTREMELY IMPORTANT you contact us immediately to confirm your settlement potential amount of $14,950.50 on your Federal Case.

```
1. your eligibility verification is incomplete, we need:
2. confirmation if 2018 Federal tax return has been filed
3. confirmation if 2019 Federal tax return has been filed
4. other personal information, call the number above and use ID# 25MR06456097.
```

**CALL 800-621-9781**, we need the above information and to confirm your eligibility.

**AS YOU KNOW A FEDERAL INCOME TAX LIEN** has been filed against Demtrius Hill in the amount of $59,802.00.

**WE BELIEVE YOU WILL QUALIFY FOR A SETTLEMENT** of $14,950.50, but you need to call immediately to confirm your eligibility.

**IF NO ACTION IS TAKEN BY YOU**, this offer will be rescinded on 4/8/2026 and enforced collection activity including; bank levies, wage garnishments, liens, judgements and property and asset seizures may be taken against you.

**A STAY OF ENFORCEMENT** can be filed on your behalf which could suspend the enforcement actions against you but you MUST call to have this filed for you, timing is now URGENT.

Contact us immediately upon receipt of this notice but no later than 4/8/2026.

**Do Not Delay – Call Immediately**
# 800-621-9781

Se Habla Español
Monday – Friday

We are a private company not the government, do not represent or collect on behalf of any government agency. This notice was generated from a public lien filing regarding income tax, some values are potential. No results or services guaranteed.

Demetris Hill v. United States of America
U.S. District Court, N.D. Illinois, Eastern Division

# EXHIBIT H-3

## Aylo Health Billing Statement (April 12, 2026)

Guarantor No. 612632. Statement dated April 12, 2026. Amount due: $2,275.00.

*Sub-exhibit within Exhibit H — Supporting Evidence of Damages*





## YOUR BILL SUMMARY

| | |
|---|---|
| | Demetrius Hill |
| Guarantor Number: | 612632 |
| Statement Date: | 04/12/2026 |
| Account Balance: | $2,275.00 |
| Due Date: | Upon Receipt |

**AMOUNT DUE**     **$2,275.00**

## Hi, Demetrius! This is your bill from Aylo Health

Thank you for choosing Aylo Health for your primary care needs. Our goal is to make quality healthcare simple and convenient because we believe healthy people can do amazing things. We have billed your insurance, and the remaining balance is your responsibility.

### 1 MAKE A PAYMENT EASILY

Mobile Quick Pay

Make a quick and easy payment online with your smartphone.


Scan here!

### 2 OTHER AVAILABLE OPTIONS

 **Online Payment**

Enroll at www.aylohealth.com and click Pay My Bill.

 **Payment Plans**

If you are unable to pay your balance in full, you have the option of creating a payment plan. Call our office today for more information.

detailed summary on next page

---

Detach coupon below and return with your payment.



Aylo Health Billing
PO Box 746765
Atlanta, GA 30374-6765

 **One-Time Payment: www.aylohealth.com**

| | |
|---|---|
| Guarantor Number: | 612632 |
| Statement Date: | 04/12/2026 |
| Due Date: | Upon Receipt |
| **Amount Due** | **$2,275.00** |

 View and pay your statement online at:
www.aylohealth.com/paymybill

Demetrius Hill
3123 RIDGE AVE
MACON GA 31204-2311

Aylo Health Billing
PO Box 746765
Atlanta GA 30374-6765


0010 003951

Demetris Hill v. United States of America
U.S. District Court, N.D. Illinois, Eastern Division

# EXHIBIT H-4

**Aylo Health Billing Statement (May 10, 2026)**

Guarantor No. 612632. Statement dated May 10, 2026. Amount due: $1,730.00.

*Sub-exhibit within Exhibit H — Supporting Evidence of Damages*



## Hi, Demetrius! This is your bill from Aylo Health

Thank you for choosing Aylo Health for your primary care needs. Our goal is to make quality healthcare simple and convenient because we believe healthy people can do amazing things. We have billed your insurance, and the remaining balance is your responsibility.

 **YOUR BILL SUMMARY** ⌄

 Demetrius Hill

| | |
|---|---|
| Guarantor Number: | 612632 |
| Statement Date: | 05/10/2026 |
| Account Balance: | $1,730.00 |
| Due Date: | Upon Receipt |

**AMOUNT DUE**      **$1,730.00**

 **1** **MAKE A PAYMENT EASILY** ⌄

## Mobile Quick Pay

Make a quick and easy payment online with your smartphone.


Scan here!

**2** **OTHER AVAILABLE OPTIONS** ⌄

 **Online Payment**
Enroll at www.aylohealth.com and click Pay My Bill.

 **Payment Plans**
If you are unable to pay your balance in full, you have the option of creating a payment plan. Call our office today for more information.

*detailed summary on next page*

---

*Detach coupon below and return with your payment.*

 Aylo Health Billing
PO Box 746765
Atlanta, GA 30374-6765

 View and pay your statement online at:
www.aylohealth.com/paymybill

 **One-Time Payment: www.aylohealth.com**

| | |
|---|---|
| Guarantor Number: | 612632 |
| Statement Date: | 05/10/2026 |
| Due Date: | Upon Receipt |
| **Amount Due** | **$1,730.00** |

Demetrius Hill
3123 RIDGE AVE
MACON GA 31204-2311

Aylo Health Billing
PO Box 746765
Atlanta GA 30374-6765

0007 002364

Demetris Hill v. United States of America
U.S. District Court, N.D. Illinois, Eastern Division

# EXHIBIT H-5

**Gastroenterology Associates of Central GA, LLC Billing Statement and Itemized Charge History**

Acct. No. 8-4160918. Statement dated April 9, 2026. Amount due: $2,945.00. Includes itemized claims for services from Georgia Cardiology Associates, the Endoscopy Center of Middle Georgia, and related providers from 2021 through 2026.

*Sub-exhibit within Exhibit H — Supporting Evidence of Damages*

**Gastroenterology Associates of Central GA, LLC**
610 Third St.
Suite 100
Macon, GA 31201-3294
**RETURN SERVICE REQUESTED**

## Billing Statement

201567 - 1

**DEMETRIUS HILL**
3123 RIDGE AVE
MACON GA 31204-2311

0002 003807

### Bill Summary  *See following page(s) for itemized charges*

| | |
|---|---|
| Guarantor Name: | DEMETRIUS HILL |
| Account Number: | 8-4160918 |
| Statement Date: | 04/09/2026 |
| **Amount Due:** | **$2,945.00** |

**DUE BY 05/09/2026**

# $2,945.00

### Ways To Pay

**Pay Online**
Visit https://www.patientnotebook.com/gaocg

**Pay on Smartphone**
Scan QR Code

**Pay by Phone**
Call **478-464-2600 Option 6**

**Pay by Mail**
Complete the form below and return in the enclosed envelope. Make check payable to:
**Gastroenterology Associates of Central GA, LLC**

### Have Questions?

Billing Phone: 478-464-2600 Option 6
Email:

**Important Message**

Thank you for choosing Gastroenterology Associates of Central GA, LLC!



FLIP PAGE →

✂ *Paying With Check? Detach and return lower portion with payment*

**Please Circle Method of Payment:**

| CARD NUMBER | EXP. DATE | AMOUNT |
|---|---|---|
| SIGNATURE | | 3 DIGIT CCV |

| | |
|---|---|
| Name: | DEMETRIUS HILL |
| Account Number: | 8-4160918 |
| **Amount Due:** | **$2,945.00** |
| Payment Included | $ |

*If paying by check, make payments to:*

**Gastroenterology Associates of Central GA, LLC**
610 3RD ST STE 100
MACON GA 31201-3293

201567-1-28244195

4/9/26, 2:01 PM                                                   eCW (Youghn, Leighanne )

## HILL, DEMETRIUS **DOB:** 01/23/1968 (58 yo M) **Acc No.** 8-4160918

### Statement

| PATIENT NAME | IF PAYING BY CREDIT, FILL OUT BELOW. CHECK CARD USED |
|---|---|
| DEMETRIUS   HILL | [ ] MASTER CARD    [ ] VISA    [ ] DISCOVER |

| BILL DATE | ACCT | AMOUNT PAID | CARD NUMBER | AMOUNT PAID |
|---|---|---|---|---|
| 04/09/2026 | 8-4160918 | | | |

**SIGNATURE:**                                      **EXP.DATE:**

**AMOUNT ENCLOSED:**

DEMETRIUS   HILL
3123 RIDGE AVE

MACON  GA  31204-2311

**THIS IS A STATEMENT OF SERVICES RENDERED BY PROVIDER(S) WHO ARE MEMBERS OF:**

GEORGIA CARDIOLOGY ASSOCIATES

| DATE OF SERVICE | DESCRIPTION OF SERVICE | AMOUNT | |
|---|---|---|---|
| 02/03/2025 | Claim:756746, Provider: CHRISTINA BURGESS, NP | | |
| 02/03/2025 | Facility: 8 Gastroenterology Asso of Central GA | | |
| 02/03/2025 | 99204 Office o/p new mod 45 min | 478.00 | |
| 07/12/2021 | Patient Payment | 5.00 | |
| 02/01/2022 | Patient Payment | 5.00 | |
| 02/03/2025 | Patient Payment | 45.00 | |
| 02/12/2025 | HUMANA CHOICE MEDICARE PPO Payment | 108.74 | |
| 02/12/2025 | HUMANA CHOICE MEDICARE PPO Adjustment | 324.26 | |
| 03/04/2026 | HUMANA CHOICE MEDICARE PPO Payment | -108.74 | |
| 03/04/2026 | HUMANA CHOICE MEDICARE PPO Adjustment | -324.26 | |
| | Your Balance Due On These Services ... | | 423.00 |
| 03/11/2025 | Claim:764791, Provider: Carley Ebanks, MD | | |
| 03/11/2025 | Facility: Endoscopy Center Of Middle Ga LLC | | |
| 03/11/2025 | 45331 Sigmoidoscopy and biopsy | 769.00 | |
| 03/11/2025 | 43239 UPPER GI ENDOSCOPY BIOPSY | 1055.00 | |
| 04/01/2025 | HUMANA CHOICE MEDICARE PPO Payment | 158.95 | |
| 04/01/2025 | HUMANA CHOICE MEDICARE PPO Adjustment | 1665.05 | |
| 03/04/2026 | HUMANA CHOICE MEDICARE PPO Payment | -158.95 | |
| 03/04/2026 | HUMANA CHOICE MEDICARE PPO Adjustment | -1665.05 | |
| | Your Balance Due On These Services ... | | 1824.00 |
| 03/11/2025 | Claim:764808, Provider: Weijan Zhu, MD | | |
| 03/11/2025 | Facility: Pathology Division GACG | | |
| 03/11/2025 | 87426 Sarscov coronavirus ag ia | 160.00 | |
| 03/25/2025 | HUMANA CHOICE MEDICARE PPO Payment | 34.62 | |
| 03/25/2025 | HUMANA CHOICE MEDICARE PPO Adjustment | 125.38 | |
| 03/04/2026 | HUMANA CHOICE MEDICARE PPO Payment | -34.62 | |
| 03/04/2026 | HUMANA CHOICE MEDICARE PPO Adjustment | -125.38 | |
| | Your Balance Due On These Services ... | | 160.00 |
| 03/25/2025 | Claim:767540, Provider: CHRISTINA BURGESS, NP | | |

## HILL, DEMETRIUS **DOB:** 01/23/1968 (58 yo M) **Acc No.** 8-4160918

| Date | Description | | Amount |
|---|---|---|---|
| 03/25/2025 | Facility: 8 Gastroenterology Asso of Central GA | | |
| 03/25/2025 | 99214 Office o/p est mod 30 min | 314.00 | |
| 03/25/2025 | Patient Payment | | 45.00 |
| 04/01/2025 | Primary Insurance Payment | | 72.50 |
| 04/01/2025 | Primary Insurance Adjustment | | 196.50 |
| 03/04/2026 | HUMANA CHOICE MEDICARE PPO Payment | | -67.34 |
| 03/04/2026 | HUMANA CHOICE MEDICARE PPO Adjustment | | -196.50 |
| 03/06/2026 | Primary Insurance Payment | | -5.16 |
| | Your Balance Due On These Services ... | | 269.00 |
| 05/02/2025 | Claim:775436, Provider: CHRISTINA BURGESS, NP | | |
| 05/02/2025 | Facility: 8 Gastroenterology Asso of Central GA | | |
| 05/02/2025 | 99214 Office o/p est mod 30 min | 314.00 | |
| 05/02/2025 | Patient Payment | | 45.00 |
| 05/12/2025 | HUMANA CHOICE MEDICARE PPO Payment | | 72.50 |
| 05/12/2025 | HUMANA CHOICE MEDICARE PPO Adjustment | | 196.50 |
| 03/06/2026 | Primary Insurance Payment | | -72.50 |
| 03/06/2026 | Primary Insurance Adjustment | | -196.50 |
| | Your Balance Due On These Services ... | | 269.00 |

| DATE | PATIENT NAME | ACCT. NO. | PAY THIS AMOUNT | 2945.00 |
|---|---|---|---|---|
| 04/09/2026 | DEMETRIUS HILL | 8-4160918 | | |

| CURRENT | 30 DAYS | 60 DAYS | 90 DAYS | 120+ DAYS |
|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 0.00 | 2852.00 |

This is a statement for professional services rendered by your physician. You may receive a separate bill from the hospital for its services.

**MAKE CHECK PAYABLE TO:**

**IMPORTANT MESSAGE REGARDING YOUR ACCOUNT**

Demetris Hill v. United States of America
U.S. District Court, N.D. Illinois, Eastern Division

# EXHIBIT H-6

## Southeast Diabetes, Inc. Final Demand Notice

Acct. No. 23517. Dated June 11, 2026. Total past-due balance: $728.96.

*Sub-exhibit within Exhibit H — Supporting Evidence of Damages*

# SDI
## SOUTHEAST DIABETES, INC.
Insulin Pump Supplies

**Final Demand**

Jun 11, 2026

💻 Pay online at:
https://SoutheastDiabetes.hmebillpay.com/

📞 Pay by phone: (844) 620-5002

### Past Due Summary

| INVOICE # | DATE OF SERVICE | BALANCE |
|---|---|---|
| 467887 | 05/08/2025 | $703.96 |

**Account Number:**
23517

**Patient Name:**
Demetris Hill

| | | |
|---|---|---|
| | Late Fee | $25.00 |
| | **TOTAL PAST DUE:** | **$728.96** |

**Responsible Party:**
Demetris Hill

**TOTAL DUE**     **$728.96**

| Current | | Past Due | | Ready for Collections | |
|---|---|---|---|---|---|
| $0.00 | ➕ | $728.96 | ➕ | $0.00 | ➖ |

Dear Demetris Hill,

We have not received payment for the balance shown. We must now make a decision to forward your account to an attorney or collection agency for resolution.

Additionally, it is our responsibility to inform you that if payment is not received within 10 days of the date of this letter, your account may be filed with the credit bureau for failure to pay. Please avoid any further action by making payment immediately.

Sincerely,
Southeast Diabetes, Inc.

ℹ️ **Billing Questions**
**(844) 491-8879**

Monday - Thursday
8:00am - 5:00pm:
Friday
8:00am - 2:00pm CST

💻 Pay online at:
**https://SoutheastDiabetes.hmebillpay.com/**

📞 Pay by phone: **(844) 620-5002**

140421-PDS-1-L4-66642-9821

---

*PLEASE DETACH HERE AND RETURN BOTTOM PORTION*

**Payments not accepted at this address**
**Southeast Diabetes, Inc.**
PO Box 1259 Dept # 140418
Oaks, PA 19456



**Cards Accepted**
VISA
AMERICAN EXPRESS
DISCOVER

Pay now: **$728.96**

| Card Number | | Amount Enclosed | |
|---|---|---|---|
| Expiration Date | Security Code | Billing Zip Code | |
| Name On Card (print) | | Signature | |

Account #: 23517  Invoice(s): 467887

**Mail Payment to:**

Southeast Diabetes, Inc.
11 Inverness Center Pkwy
Birmingham AL 35242


**DEMETRIS HILL**
3123 RIDGE AVE
MACON GA 31204-2311

1 of 1

187762-20851-28469130

Demetris Hill v. United States of America
U.S. District Court, N.D. Illinois, Eastern Division

# EXHIBIT H-7

## Chase Card Services Settlement-Offer Correspondence

Dated February 9, 2026. Account ending in 3699. Unpaid balance: $10,998.70.
Proposed settlement: $4,399.48.

*Sub-exhibit within Exhibit H — Supporting Evidence of Damages*

**CHASE** ⬡

Card Services
PO Box 15548
Wilmington, DE 19886-5548

1-866-569-6809
Monday - Friday, 8 a.m. - 10 p.m. EST
We accept operator relay calls

86985 RCT 056 001 04126 NNNNNNNNNNNNN OOS001
**DEMETRIS HILL SR**
3123 RIDGE AVE
MACON GA 31204

February 09, 2026

## Action Needed: Please review this offer to pay your account for less than the unpaid balance

Your account ending in 3699
Unpaid Balance:    $10,998.70

Dear Demetris Hill Sr:

We want to offer you an opportunity to pay less than the unpaid balance. If you pay $4,399.48 on this account we will reduce your unpaid balance to zero. If we're currently reporting to the credit reporting agencies, we will notify them that the account has been paid for less than the full balance. If you can't make the payments within these timeframes, please call us to discuss other options.

**Here are the payment options; please choose one**
1: Make one payment of $4,399.48, or
2: Make two equal payments of $2,199.74 totaling $4,399.48, or
3: Make equal monthly payments of $1,466.50 totaling $4,399.48.

This agreement is not complete until finalized by us in our system which could take up to 10 days after your last agreement payment has cleared. Please contact us within 30 days of the date of this letter to accept the offer.

**Three Easy Ways to Pay**

chase.com
or the Chase Mobile® app

1-866-569-6809

Chase Card Services
PO Box 6294
Carol Stream, IL 60197-6294

THE LAW LIMITS HOW LONG YOU CAN BE SUED ON A DEBT. EVEN IF YOU MAKE A PAYMENT, BECAUSE OF THE AGE OF YOUR DEBT, WE WILL NOT SUE YOU FOR IT. IF YOU DO NOT PAY THE DEBT, WE MAY CONTINUE TO REPORT IT TO THE CREDIT REPORTING AGENCIES.

**See the reverse side for information that might apply to you depending on where you live.**

This is an attempt to collect a debt and any information obtained will be used for that purpose.

Demetris Hill v. United States of America
U.S. District Court, N.D. Illinois, Eastern Division

# EXHIBIT H-8

## Georgia Department of Revenue Statement of Taxpayer's Account(s)

Letter ID L0650583048. Issued February 14, 2026. Total balance due: $13,081.49
in tax, penalty, and interest.

Georgia Department of Revenue
**TAXPAYER SERVICES DIVISION**
P.O. BOX 105499
ATLANTA, GA 30348-5499
Telephone: (877) 423-6711

bf.201

Darcy Pyle, Director, Taxpayer Services Division          Frank M. O'Connell, State Revenue Commissioner

4535

| | Letter ID: | L0650583048 |
|---|---|---|
| **DEMETRIS AND KAMEO HILL** | Issued Date: | 14-Feb-2026 |
| 3123 RIDGE AVE | SSN: | ***-**-2916 |
| MACON GA 31204-2311 | | |

### STATEMENT OF TAXPAYER'S ACCOUNT(S)

This statement does not affect your rights to appeal or protest any of the listed periods. If you need additional help, please visit our website at https://gtc.dor.ga.gov or call us at (877) 423-6711.

## Why you are receiving this letter:

- Our records show you owe additional tax, penalty, and interest.
- The following page lists all of the transactions and periods included in the total due shown below.

| | |
|---|---:|
| **Tax - Credit** | $7,594.62 |
| **Penalty** | $1,769.76 |
| **Interest** | $3,717.11 |
| **Other** | $0.00 |
| **Balance** | **$13,081.49** |

## What you need to do:

- If you are in bankruptcy and the Georgia Department of Revenue has not been notified, please complete the information on the back of this letter.
- Do nothing for any tax liabilities in a period below that are currently in a payment plan or a pending protest or appeal.
- Otherwise please go to the Georgia Tax Center at https://gtc.dor.ga.gov and pay the full amount due or request a payment plan.

---

 **ITS-V (Rev. 8/15)**
**Integrated Tax System**
**Payment Voucher**


0906907011

DEMETRIS and KAMEO HILL
3123 RIDGE AVE
MACON GA 31204-2311

This payment voucher must be included with your payment. Do not reproduce for another payment.
To pay electronically, go to https://gtc.dor.ga.gov and use 75332697208 as your notice number.

| ID TYPE | TAX TYPE | VOUCHER TYPE |
|---|---|---|
| **01** | **99** | **08** |
| PAYMENT NO. | PERIOD END | VENDOR CODE |
| **75332697208** | | **070** |

Georgia Department of Revenue
*Taxpayer Services Division*
P. O. Box 740321
Atlanta, Georgia 30374-0321

**DO NOT STAPLE OR PAPER CLIP. REMOVE ALL CHECK STUBS.**

**AMOUNT DUE $**          13,081.49

**AMOUNT PAID $**

Demetris Hill v. United States of America

U.S. District Court, N.D. Illinois, Eastern Division

**EXHIBIT H-9**

Vallant Bank Loan Past-Due Notice

Dated July 1, 2026. Total past-due balance: $3,048.74

(principal $624.48, interest $446.16, charges/fees $1,978.10).

Sub-exhibit within Exhibit H — Supporting Evidence of Damages

# VALLANT BANK
BANK
Member FDIC

Page 1

| Tax ID | Date | Loan Number | Amount Due |
|--------|------|-------------|------------|
| On File | 07/01/2026 | 4006480400 | 3,048.74 |

DEMETRIS HILL
3123 RIDGE AVE
MACON GA 31204

Loan Past Due Notice    2

| | |
|---|---|
| Date Past Due | 06/01/2026 |
| Principal Due | 624.48 |
| Interest Due | 446.16 |
| Escrow Due | 0.00 |
| Charges/Fees Due | 1,978.10 |
| *Total Amt Due | 3,048.74 |

Homeownership counseling may help you. To obtain the number of a HUD-approved homeownership counseling agency near you, call 1-800-569-4287. The number for Military OneSource is 1-800-342-9647.

Demetris Hill v. United States of America
U.S. District Court, N.D. Illinois, Eastern Division

**EXHIBIT I**

United States v. Hill, No. 23-10289
(11th Cir. Oct. 4, 2024), 119 F.4th 862
Opinion Affirming Plaintiff's Convictions for Theft of
Government Property and False Claims to the Railroad Retirement Board

Appendix to Complaint

[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-10289

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DEMETRIS HILL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:21-cr-00043-TES-CHW-1

_____

2                    Opinion of the Court                    23-10289

Before BRANCH, GRANT, Circuit Judges, and CALVERT,* District Judge.

CALVERT, District Judge:

Demetris Hill appeals his convictions for theft of government property, in violation of 18 U.S.C. § 641, and making a false claim to the Railroad Retirement Board ("RRB"), in violation of 18 U.S.C. § 287. Hill contends that the government presented insufficient evidence at trial for a reasonable jury to convict him of either crime, that the district court constructively amended the indictment, and that the False Claims Act is void as applied for vagueness. After careful review of the evidence presented, and with the benefit of oral argument, we affirm Hill's convictions.

**I.**

Hill, a former railroad employee, began receiving monthly disability benefits from the RRB in 2012 on the basis that he was unable to perform substantial gainful activity was and disabled for regular employment. As a condition of receiving disability benefits, Hill was required to report any change in employment status to the RRB, including any ownership in a family business. He certified in writing that he understood this obligation. The RRB paid disability benefits to Hill until October 2022.

On July 8, 2021, Hill was charged in a 60-count indictment

---

* Honorable Victoria Calvert, United States District Judge for the Northern District of Georgia, sitting by designation.

for theft of government money or property under 18 U.S.C. § 641. Hill was subsequently charged in a superseding indictment with one count of theft of government property, one count of making false claims to the government in violation of 18 U.S.C. § 287, and one count of wire fraud in violation of 18 U.S.C. § 1343. The government alleged that while receiving his monthly disability payments from the RRB, Hill helped his former wife, Kameo Hill, start a janitorial business called SparClean Premier Cleaning Solutions ("SparClean"). Hill proceeded to a jury trial and made a motion for a judgment of acquittal after the government presented its case. The district court reserved ruling and the jury found Hill guilty of theft of government property and making false claims to the government but acquitted him of wire fraud. The district court subsequently denied Hill's motion for judgment of acquittal. Hill was sentenced to 33 months for each conviction, to be served concurrently, followed by three years of supervised release on the theft of government property conviction and two years of supervised release on the false claims conviction, to be served concurrently. Hill then filed a timely appeal of his convictions.

After a limited remand from this Court, the district court granted Hill's motion for a sentence reduction and reduced his term of imprisonment to 27 months. As Hill challenged his convictions and not his sentence, the district court's sentence reduction does not affect our consideration of his appeal.

## II.

We review both a challenge to the sufficiency of the

evidence and the district court's denial of a motion for a judgment of acquittal de novo. *See United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011). In considering the sufficiency of the evidence, we view the evidence in the light most favorable to the government, with all inferences and credibility choices made in the government's favor, and affirm the conviction if, based on this evidence, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* It is not necessary that the evidence presented at trial excludes every reasonable hypothesis of innocence or is wholly inconsistent with every conclusion except that of a defendant's guilt. *Id.*

When jury instructions are challenged for the first time on appeal, we review for plain error under Federal Rule of Criminal Procedure 52(b). *United States v. Felts*, 579 F.3d 1341, 1343 (11th Cir. 2009). We also apply plain-error review when determining whether the district court's unobjected-to instruction constructively amended a defendant's indictment. *United States v. Madden*, 733 F.3d 1314, 1316 (11th Cir. 2013). To obtain relief under Rule 52(b), Hill bears the burden of showing "that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [his] substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (citations omitted). Where a party expressly accepts a jury instruction, "such action constitutes invited error" and "serve[s] to waive [his] right to challenge the accepted instruction on appeal." *United States v. Silvestri*, 409 F.3d 1311, 1337 (11th Cir.

23-10289                Opinion of the Court                        5

2005).

We ordinarily review a constitutional challenge to a federal statute de novo. *See United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011). But where the challenge is raised for the first time on appeal, we review it only for plain error. *See United States v. Valois*, 915 F.3d 717, 729 n.7 (11th Cir. 2019). Under plain-error constitutional review, "an error cannot be plain unless the issue has been specifically and directly resolved by the explicit language of a statute or rule or on point precedent from the Supreme Court or this Court." *United States v. Sanchez*, 940 F.3d 526, 537 (11th Cir. 2019); *see United States v. Moore*, 22 F.4th 1258, 1266 (11th Cir. 2022) ("[T]here can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving [the issue].") (quoting *United States v. Hesser*, 800 F.3d 1310, 1325 (11th Cir. 2015) (quotations and internal citations omitted).

### III.

Hill raises four arguments on appeal. First, he argues that the government did not provide sufficient evidence for the jury to convict him of theft of government property. Second, he argues that the government did not provide sufficient evidence for the jury to convict him of making a false claim to the government. Third, he argues that the trial court's deliberate ignorance instruction resulted in a constructive amendment of the indictment and invalidates his convictions. And finally, he argues that the False Claims Act is void for vagueness as applied to his conviction. The Court considers each argument in turn.

### A.

Hill challenges the sufficiency of evidence for his conviction for theft of government property under 18 U.S.C. § 641. A conviction for theft of government property requires the government to satisfy three elements: "(1) that the money or property belonged to the government; (2) that the defendant fraudulently appropriated the money or property to his own use or the use of others; and (3) that the defendant did so knowingly and willfully with the intent either temporarily or permanently to deprive the owner of using the property." *United States v. McRee*, 7 F.3d 976, 980 (11th Cir. 1993) (en banc). Hill argues that the government failed to meet its burden with respect to the first and third elements, and that without the first element, the second element is not met. Specifically, he argues that the government failed to show that he was not entitled to the RRB payments and that he knew that he was not entitled to those payments. We disagree and find that the government presented sufficient evidence on both elements.

First, the government presented sufficient evidence that Hill was not entitled to disability payments from the RRB. Under the Railroad Retirement Act of 1974 ("Act"), 45 U.S.C. §§ 231 to 231v, which is administered by the RRB, railroad workers are entitled to receive monthly disability benefits if their "permanent physical or mental condition is such that they are unable to engage in any regular employment." 45 U.S.C. § 231a(a)(1)(v). The Act provides that "[s]uch satisfactory proof shall be made from time to time as prescribed by the Board, of the disability . . . and of the continuance

of such disability." 45 U.S.C. § 231a(a)(3). "If the individual fails to comply with the requirements prescribed by the Board as to proof of the continuance of the disability . . . , his right to [the disability annuity] shall . . . cease[.]" 45 U.S.C. § 231a(a)(3).

The RRB has promulgated regulations that define "unable to engage in any regular employment" as "unable to do any substantial gainful activity because of a medically determinable physical or mental impairment[.]" 20 C.F.R. § 220.26; *see* 20 C.F.R. § 220.112(a). "[S]ubstantial gainful activity," in turn, means "work activity that involves doing significant physical or mental activities . . . that the claimant does for pay or profit[.]" 20 C.F.R. § 220.141(a), (b). The regulations clarify, however, that work is "substantial gainful activity" even if "done on a part-time basis" and "whether or not a profit is realized." *See* 20 C.F.R. § 220.141(a); 20 C.F.R. § 220.141(b).

The RRB regulations also instruct the decisionmaker to consider the characteristics of the work, explaining that "[i]f the claimant's duties require use of the claimant's experience, skills, supervision and responsibilities, or contribute substantially to the operation of a business, this tends to show that the claimant has the ability to work at the substantial gainful activity level." 20 C.F.R. § 220.142(a). "[E]arnings," too, "may show the claimant has done substantial gainful activity." 20 C.F.R. § 220.143. And for self-employed recipients, "[s]upervisory, managerial, advisory or other significant personal services that the claimant performs as a self-employed person may show that the claimant is able to do

8                    Opinion of the Court                    23-10289

substantial gainful activity." 20 C.F.R. § 220.142(d). In the self-employment context, the RRB looks beyond the earnings of the business and "will consider the claimant's activities and their value to the claimant's business," because "the amount of income the claimant actually receives may depend upon a number of different factors like capital investment, profit sharing agreements, etc." 20 C.F.R. § 220.144(a). ("The Board will evaluate the claimant's work activity on the value to the business of the claimant's services regardless of whether the claimant receives an immediate income for his or her services.").

The RRB regulations also contain reporting requirements. "Any annuitant receiving an annuity based on disability must report to the Board any work and earnings[.]" 20 C.F.R. § 220.162(a). A disability annuity recipient must "promptly tell" the RRB if his impairment improves, if he returns to work, if he increases the amount of work he performs, or if his earnings increase. *See* 20 C.F.R. § 220.175(b), (c). Recipients are required to file an earnings report for any month in which their earnings exceed $400. 20 C.F.R. § 220.162(b). This reporting duty is critical because the RRB "conducts continuing disability reviews to determine whether or not the annuitant continues to meet the disability requirements of the law." 20 C.F.R. § 220.186(a); *see* 20 C.F.R. § 220.140 ("If the claimant is able to engage in substantial gainful activity, the Board will find that the claimant is not disabled for any regular employment under the [Act]."). If a recipient is not disabled, then under the Act "his right to an annuity by reason of such disability shall . . . cease[.]" 45 U.S.C. § 231a(a)(3); *see* 20 C.F.R.

23-10289                Opinion of the Court                9

§ 220.176 ("The Board must first consider whether the annuitant has worked and, by doing so, demonstrated the ability to engage in substantial gainful activity. If so, the disability will end.").

The Act and the regulations conditioned Hill's eligibility on whether he engaged in substantial gainful activity and whether he reported his activity accurately. The government presented sufficient evidence for the jury to find both that Hill participated in substantial gainful activity that rendered him ineligible for the annuity, and likewise failed to disclose it to the RRB, despite knowledge of his reporting obligations. Having received the money anyway, Hill knowingly deprived the government of its property.

At trial, the government presented sufficient evidence for the jury to find that Hill contributed substantially to the operation of SparClean and demonstrated his ability to engage in regular employment. First, Hill was an equity owner of SparClean and entitled to a percentage of its profits. Second, he was its chief financial officer, was an authorized signer on its checking account, and helped procure loans on its behalf. Third, he told Morris Bank that he would repay a personal loan with his "business income," which he represented was "$125,000." Finally, Hill attended business meetings with SparClean's prospective clients, prepared written job proposals for SparClean's prospective clients, coached his ex-wife on how to conduct SparClean's business affairs, took measurements of prospective clients' properties, and performed physical cleaning activities himself.

Hill argues that the evidence was insufficient to establish that he was no longer entitled to the annuity benefit because there was no evidence regarding his earnings and whether it exceeded the cap for eligibility set by the RRB. However, Hill's eligibility depended on whether he was able to work. *See* 45 U.S.C. § 231a(a)(1)(v) (establishing the RRB disability annuity for individuals whose "permanent physical or mental condition is such that they are unable to engage in any regular employment."). Earnings are one factor the RRB considers to determine whether a claimant has performed substantial gainful activity, but for self-employed individuals, the RRB considers the value of the work to the business regardless of earnings. *See* 20 C.F.R. § 220.143 ("[E]arnings *may* show the claimant has done substantial gainful activity.") (emphasis added); 20 C.F.R. § 220.144(a) ("The Board will evaluate the claimant's work activity on the value to the business of the claimant's services regardless of whether the claimant receives an immediate income for his or her services."); 20 C.F.R. § 220.142(a) ("If the claimant's duties require use of the claimant's experience, skills, supervision and responsibilities, or contribute substantially to the operation of a business, this tends to show that the claimant has the ability to work at the substantial gainful activity level.").

Furthermore, Hill is incorrect that there was no evidence related to his earnings. The jury heard evidence of the $125,000 income that he declared to Morris Bank—far more than the RRB earnings cap of $11,875 for 2019—and his representation that he would use "business income" to repay a $106,250 personal loan

that he applied for. At trial, Hill argued that the government failed to prove the source of the $125,000 income that he declared to Morris Bank, suggesting that it could have come from a source other than SparClean that would not impact his RRB eligibility such as a stock portfolio, a mutual fund, or his savings. However, in reviewing the sufficiency of evidence, the Court must "accept all reasonable inferences that tend to support the government's case." *United States v. Moran*, 57 F.4th 977, 981 n.4 (11th Cir. 2023). A rational jury could reasonably infer that the $125,000 income Hill reported to Morris Bank was, as he represented it, "business income" from the business he owned. This evidence, along with the rest of the evidence presented at trial and the reasonable inferences raised, credited by the jury, provides sufficient evidence that Hill exceeded the earnings cap and disqualified himself from receiving disability payments. *See United States v. Peters*, 403 F.3d 1263, 1268 (11th Cir. 2005) ("[W]e are bound by the jury's credibility determinations, and by its rejection of the inferences raised by the defendant.").

Hill also challenges the sufficiency of the government's evidence that he acted with knowledge by arguing that he did not know that he was disentitled to the payments because the RRB neither stopped giving him the payments nor changed his eligibility. We disagree and find the government met its burden.

When Hill submitted his application to the RRB, he declared: "I understand that I am responsible for reporting events that would affect my annuity." As a condition for receiving the

12                    Opinion of the Court                    23-10289

annuities, Hill declared and acknowledged the following requirements:

> *I agree to immediately notify the RRB, if,* . . . [1] *I perform work, including self-employment, for a family owned controlled or managed business, including a business operated, managed or owned by me, a family member,* friend or close associate *whether for pay or not* and without regard to how the business is organized (e.g., sole proprietorship, partnership, corporation, LLC, etc.); [2] *I become a corporate officer* of, own or operate a corporation, (including a corporation owned by a family member or friend), *whether for pay or not*; [or] [3] I receive anything of value in lieu of salary or wages for any work that I perform.

Hill further acknowledged that failure to report any work to the RRB was a federal crime: "I know that if . . . I fail to . . . report employment of any kind to the RRB, I am committing a crime which is punishable under Federal law."

After his application was approved and he began receiving the annuity payments in 2012, Hill received annual written reminders that he was required to report to the RRB any work he performed so that the RRB could determine whether he remained eligible to continue receiving monthly disability benefits. Despite his acknowledgements and annual reminders, Hill failed to report

23-10289                    Opinion of the Court                    13

that he was an equity owner in SparClean and that he was its chief financial officer. By failing to report his involvement with SparClean, the RRB lacked any foundation to make a redetermination as to his continued eligibility. Therefore, Hill knowingly concealed information that he was required to report to the RRB while continuing to receive a benefit that he was not entitled to. *See United States v. Slaton*, 801 F.3d 1308, 1316 (11th Cir. 2015) (affirming § 641 conviction because the evidence showed that defendant misrepresented or concealed information that would have allowed the government agency to determine whether he was entitled to disability benefits).

Hill's reliance on *United States v. Moore*, 504 F.3d 1345 (11th Cir. 2007), is unpersuasive. In *Moore*, the Court held that the district court erred in denying a Rule 29 motion of acquittal because the government failed to present evidence of "any knowledge that [the defendants] were not entitled to keep receiving" government benefits. *Id*. at 1349. In contrast, Hill was told initially and reminded annually that he was required to report employment and could face criminal penalties if he did not. Furthermore, the trial court allowed Hill to argue his lack of knowledge and instructed the jury on a good-faith defense. The jury rejected Hill's contention. Construing the evidence in the light most favorable to the verdict, there was sufficient evidence of Hill's knowledge.

We affirm Hill's conviction for theft of government property.

14                    Opinion of the Court                    23-10289

**B.**

Hill also challenges the sufficiency of the evidence underlying his conviction for making a false claim to the government in violation of 18 U.S.C. § 287. In order to obtain a conviction for making false claims to the government, "the government must establish that: (1) the defendant presented a claim against the United States to an agency or department thereof; (2) such claim was false, fictitious, or fraudulent; and (3) the defendant knew that the claim was false, fictitious, or fraudulent." *United States v. Hesser,* 800 F.3d 1310, 1320 (11th Cir. 2015).

Although Hill admits that he failed to report work and earnings, he asserts that the government failed to prove that he affirmatively presented a false claim to the RRB after he initially applied for the disability payments. He further argues that the trial court erred in holding that Hill's receipt of the monthly disability payments via direct deposit into his account was sufficient evidence that he submitted a false claim. We hold that there was sufficient evidence that Hill made false claims to the government.

As the Court has already discussed, there was sufficient evidence to find that Hill was not entitled to the RRB payments because he engaged in substantial gainful activity and failed to comply with the reporting requirements. At trial, the evidence showed that Hill received his RRB annuity payments via direct deposit each month. Yet he never informed the RRB of his affiliation with SparClean and never tried to stop the payments. Thus, the issue before the Court is whether receiving direct

deposits can satisfy the "making or presenting" actus reus of 18 U.S.C. § 287.

It is well established that endorsing a check for which you are not entitled can constitute a false claim against the government. *See Peterson v. Weinberger*, 508 F.2d 45, 54 (5th Cir. 1975) (holding that endorsing and depositing checks to which defendant was not entitled constitutes making a false claim);[1] *accord United States v. Branker*, 395 F.2d 881, 889 (2d Cir. 1968); *United States v. Allen*, 13 F.3d 105, 108 (4th Cir. 1993).

Hill argues that his passive conduct of receiving benefits without making an affirmative request does not equate to presenting a claim to the government. But as a condition of receiving the annuity payments, Hill knew that he had a duty to report employment or business ownership of any kind. Therefore, every time Hill received an RRB payment via direct deposit to his bank account while failing to disclose his involvement with SparClean, he presented a false claim. *See Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 187 (2016) ("When, as here, a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements, those omissions can be a basis for liability if they render the defendant's representations misleading[.]"); *McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down by the close of business on September 30, 1981.

16 Opinion of the Court 23-10289

2005) ("When a violator of government regulations is ineligible to participate in a government program and that violator persists in presenting claims for payment that the violator knows the government does not owe, that violator is liable, under the Act, for its submission of those false claims[.]").

Hill's argument that he did not present a false claim because he received the annuity payments via direct deposit instead of a physical check he endorsed and deposited is unpersuasive. Liability for making a false claim is not dependent on *how* the government pays the benefit. Rather, what matters is what the claimant did to get that payment. Hill knew that he had a continuing obligation to inform the RRB about his self-employment and failed to do so. For years, he continued to receive and spend monthly payments into his account and did not take any steps to alert the RRB of his changed circumstances or stop the deposits. For these reasons there was sufficient evidence that Hill made false claims to the government, and we affirm his conviction.

## C.

Hill next argues that the deliberate avoidance jury instruction amended the indictment's charge that he "knowingly" violated the law. "Where a party expressly accepts a jury instruction, such action constitutes invited error and serves to waive his right to challenge the accepted instruction on appeal." *United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012) (quotation marks and alteration omitted). We have held that when "a party responds to a court's proposed jury instructions with the

23-10289                Opinion of the Court                17

words 'the instruction is acceptable to us,' such action constitutes invited error. These words serve to waive a party's right to challenge the accepted instruction on appeal." *Silvestri*, 409 F.3d at 1337 (quotation omitted).

Hill accepted the deliberate avoidance pattern instruction at the charge conference and did not object after the charges were read to the jury. Thus, Hill's acceptance constitutes invited error and he has waived his right to challenge the deliberate avoidance instruction now.

**D.**

Finally, Hill argues that his conviction is invalid because 18 U.S.C. § 287 is unconstitutionally vague as applied to him. This argument was not raised in the district court and so it is subject to plain-error review under Rule 52(b). *See United States v. Gallardo*, 977 F.3d 1126, 1139 n.9 (11th Cir. 2020) ("[A] defendant forfeits an argument he failed to raise below in the district court and we review for plain error only[.]"). Hill asserts that § 287's decree that "whoever *makes* or *presents* . . . any claim upon . . . the United States . . . *knowing such claim to be false* . . . shall be imprisoned" did not provide adequate notice that his conduct was a crime. He argues that the words "makes," "presents," and "knowing such claim to be false" are impermissibly vague because "[n]othing in the wording of the statute gives an ordinary person of common intelligence fair notice that continuing to *receive* benefits—to which you have been properly determined to be eligible—and never making an affirmative claim to the government that you are still

18                    Opinion of the Court                 23-10289

entitled to those benefits" could result in prosecution.

"An error cannot be plain unless the issue has been specifically and directly resolved by the explicit language of a statute or rule or on point precedent from the Supreme Court or this Court." *Sanchez*, 940 F.3d at 537; *see Moore*, 22 F.4th at 1266 (same). Hill has identified no case holding that § 287 is unconstitutionally vague—either facially or as applied to particular conduct. Moreover, as explained above, because Hill accepted the direct deposits without reporting his self-employment, he did more than just receive benefits. Accordingly, the district court did not err, plainly or otherwise, by entering judgment on the jury's verdict finding Hill guilty of making a false claim to the government.

## IV.

The district court's judgment is **AFFIRMED**.